

1　**RIMAC MARTIN**, P.C.
2　JOSEPH M. RIMAC SBN 72381
　　WILLIAM REILLY SBN 177550
3　1051 Divisadero Street
　　San Francisco, CA 94115
4　Telephone: (415) 561-8440
　　Facsimile: (415) 561-8430
5
　　Attorneys for Defendant
6　LOOKSMART LTD.
7
8　　　　　　　**UNITED STATES DISTRICT COURT**
9　　　　　　**NORTHERN DISTRICT OF CALIFORNIA**
10　　　　　　　　**SAN FRANCISCO DIVISION**
11
12　WEBOOST MEDIA S.R.L., a Societa a　　） Case No.:　**CV. 13 5304**
　　responsabilita limitata,　　　　　　　）
13　　　　　　　　　　　　　　　　　　）
14　　　　　　　　Plaintiff,　　　　　　　） **NOTICE OF REMOVAL OF CIVIL**
　　　　　　　　　　　　　　　　　　　） **ACTION TO UNITED STATES DISTRICT**
15　v.　　　　　　　　　　　　　　　　） **COURT (DIVERSITY)**
　　　　　　　　　　　　　　　　　　　）
16　LOOKSMART LTD., a Delaware corporation,）
　　and DOES 1 through 100,　　　　　　　）
17　　　　　　　　　　　　　　　　　　）
18　　　　　　　　Defendants.　　　　　　　）
　　　　　　　　　　　　　　　　　　　）
19　　　　　　　　　　　　　　　　　　　）
　　　　　　　　　　　　　　　　　　　）
20　　　　　　　　　　　　　　　　　　　）

21　　　　**TO THE JUDGE OF THE UNITED STATES DISTRICT COURT AND TO**

22　**PLAINTIFF AND ITS ATTORNEYS OF RECORD:**

23　　　　Defendant LOOKSMART LTD ("Removing Defendant") hereby removes this action to

24　the United States District Court for the Northern District of California  pursuant to 28 U.S.C. §

25　1332, 1441, and 1446 on the grounds that (1) there is complete diversity of citizenship between

26　plaintiff, an entity organized under the laws of Italy with its principal place of business in Italy,

27　　　　　　　　　　　　　　　　- 1 -
28　　　　　　　　　　　　NOTICE OF REMOVAL
　　　　　　　　　　　　　Case No. CGC 13-534683



1 | and defendant LOOKSMART LTD, a citizen of the State of Delaware, incorporated in the State
2 | of Delaware and having its principal place of business in San Francisco, California; (2) the
3 | amount in controversy exceeds the jurisdictional minimum of $75,000 set forth in section
4 | 1332(a); and (3) the foregoing facts were true at the time of the Complaint in this matter was
5 | filed and remain true as of the date of the filing of this notice of this removal.

## I.  NATURE OF THE ACTION

7 | 1.  On October 3, 2013, Plaintiff filed the action entitled WEBOOST MEDIA S.R.L.,
8 | v. LOOKSMART LTD, and DOES 1 through 100, inclusive, Case No. CGC 13-534685 ("the
9 | Complaint") in the Superior Court of the State of California, in and for the County of San
10 | Francisco.  Removing Defendant is the only defendant named in the Complaint.

11 | 2.  A true and correct copy of the Summons and Complaint is attached hereto as
12 | **Exhibit A.**

13 | 3.  Plaintiff alleges a claim against Removing Defendant for breach of contract with
14 | respect to a commercial contract.  In addition to the breach of contract claim, Plaintiff has
15 | alleged tort claims against Removing Defendant for fraudulent concealment, negligent
16 | interference with prospective economic advantage, intentional interference with prospective
17 | economic advantage, intentional interference with contractual relations and violation of Cal. Bus.
18 | & Prof. Code § 17200.

19 | 4.  Because the action was filed in the Superior Court of the State of California,
20 | County of San Francisco, procedurally, the United States District Court for the Northern District
21 | of California is a proper venue.

## II.  TIMELINESS AND TECHNICAL REQUIREMENTS OF REMOVAL

23 | 5.  This complaint was filed on October 3, 2013 and served on LOOKSMART LTD.
24 | on October 17, 2013.

- 2 -

1  6.  This removal is timely under 28 U.S.C. § 1446(b) in that removal is sought prior

2  to service of the summons and complaint and hence before 30 days from the date of service of

3  the summons and complaint.

4  7.  Written notice of the filing of this Notice of Removal has been given to all

5  adverse parties and a copy is concurrently being filed with the Clerk of the Superior Court of the

6  State of California, County of San Francisco, in accordance with the provisions of 28 U.S.C. §

7  1446(d).

8  **III.  REMOVAL BASED ON DIVERSITY OF CITIZENSHIP**

9  8.  This Court has jurisdiction over this action under the provisions of 28 U.S.C. §

10  1332, and is one which may be removed pursuant to the provisions of 28 U.S.C. § 1441(b) in that

11  it is a civil action between citizens of different states and the matter in controversy exceeds the

12  sum of $75,000, exclusive of interest and costs, as explained more fully below.

13  9.  Plaintiff WEBOOST MEDIA S.R.L. is a business entity "organized and existing

14  under the laws of Italy, with its principal place of business in Rome, Italy." (Complaint ¶ 1).

15  10.  LOOKSMART LTD is, and at the time of the filing of this action was, a citizen

16  of the State of Delaware, incorporated in the State of Delaware and having its principal place of

17  business in the State of California.

18  11.  This Court's jurisdictional minimum of an amount in controversy in excess of

19  $75,000 is satisfied based on the following facially apparent allegations in the Complaint:

20  (a)  WEBOOST MEDIA S.R.L prays for "Restitution" and alleges that it "paid

21  LookSmart a total of $105,273.92" and attaches invoices supporting that allegation to the

22  Complaint as Exhibit B. (Complaint ¶ 18).

23  (b)  WEBOOST MEDIA S.R.L. prays for "Compensatory damages" and

24  alleges that "LookSmart led to nearly $400,000 in direct losses to WeBoost." (Complaint, ¶ 24).

25  (c)  WEBOOST MEDIA S.R.L claims it is entitled to an award of punitive and

26  exemplary damages against Removing Defendant. (Complaint, page 13). "Where both actual

27

- 3 -

28  NOTICE OF REMOVAL
Case No. CGC 13-534683

1   and punitive damages are recoverable under a complaint each must be considered to the extent

2   claimed in determining jurisdictional amount." *Bell v. Preferred Life Assurance Society*, 320

3   U.S. 238, 240, 64 S.Ct. 5, 88 L.Ed. 15 (1943). Considering the allegations in the complaint,

4   plaintiff's request for punitive damages must be included in calculating whether the jurisdictional

5   limit is met in this case for purposes of removal.

6        12.    In light of the above, the amount in controversy in this case exceeds the

7   jurisdictional minimum of $75,000. *Sanchez v. Monumental Life Ins. Co.*, 102 F. 3d 398, 404

8   (9th Cir., 1996) [citing *Tapscott v. MS Dealer Serv. Corp.*, 77 F3d 1353, 1357 (11th Cir., 1996.).

9       13.    Based on the above, diversity jurisdiction exists because this is a civil action

10   between citizens of different states and plaintiff has demanded damages in excess of $75,000. 28

11   U.S.C. § 1332(a); also see *Crum v. Circus Enters* 231 F.3d 1129 at 1131 (9th Cir. 2000).

12

                              Respectfully submitted,

13

                              **RIMAC MARTIN, P.C.**

14

15   Dated: November 14, 2013

16                               By:   */s/ William Reilly*

17                               Attorneys for Defendant
                                LOOKSMART LTD

18

19

20

21

22

23

24

25

26

27

                              - 4 -

28                           NOTICE OF REMOVAL
                          Case No. CGC 13-534683

## PROOF OF SERVICE

### STATE OF CALIFORNIA, COUNTY OF SAN FRANCISCO

I am employed in the County of San Francisco. I am over the age of eighteen years and not a party to the within entitled action. My business address is 1051 Divisadero Street, San Francisco, CA 94115.

On November 14, 2013, I served the foregoing document(s) described as **NOTICE OF REMOVAL OF CIVIL ACTION TO UNITED STATES DISTRICT COURT (DIVERSITY)** on the interested party(ies) in this action as follows:

> Matthew D. Taylor
> Andrew B. Holmes
> HOLMES, TAYLOR & JONES LLP
> 801 S. Figueroa Street, Suite 2170
> Los Angeles, CA 90017
> Tel: 213.985.2200
> abholmes@htjlaw.com
> matthew.taylor@htjlaw.com

(x) **BY MAIL:** By placing a true copy thereof enclosed in a sealed envelope(s) addressed as above, and placing each for collection and mailing on that date following ordinary business practices. I am readily familiar with this business's practice for collecting and processing correspondence for mailing. On the same day that correspondence is placed for collection and mailing, it is deposited in the ordinary course of business with the U.S. Postal Service in San Francisco, California, in a sealed envelope with postage fully prepaid.

( ) **BY OVERNIGHT DELIVERY**: I enclosed the documents in an envelope or package provided by an overnight delivery carrier and addressed as noted below. I placed the envelope or package for collection and overnight delivery at an office or a regularly utilized drop box of the overnight delivery carrier.

( ) **BY MESSENGER SERVICE:** I served the documents by placing them in an envelope or package addressed to the person(s) at the address(es) listed above, and providing them to a professional messenger service for service.

( ) **BY FACSIMILE:** Based on agreement of the parties to accept service by fax transmission, I faxed the documents to the persons at the fax numbers listed below. The telephone number of the sending fax machine was 415.561.8440. The sending facsimile machine issued a transmission report confirming the transmission was complete and without error.

( ) **BY E-MAIL:** Based on an agreement of the parties to accept electronic service, I caused the documents to be sent to the person(s) at the electronic service address(es) above.

(x) **STATE**: I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

( ) **FEDERAL**: I declare that I am employed in the office of a member of the bar of this Court at whose direction the service was made. I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

PROOF OF SERVICE

***

CASE NO. CGC 13-534683

Executed on November 14, 2013, at San Francisco, California.

/s/ Robin A. Hale
Robin A. Hale

# EXHIBIT A

# SUMMONS
## (CITACION JUDICIAL)

FOR COURT USE ONLY
(SOLO PARA USO DE LA CORTE)

**NOTICE TO DEFENDANT:**
*(AVISO AL DEMANDADO):*
LOOKSMART LTD., a Delaware corporation, and DOES 1 through 100

**YOU ARE BEING SUED BY PLAINTIFF:**
*(LO ESTÁ DEMANDANDO EL DEMANDANTE):*
WEBOOST MEDIA S.R.L., a Società a responsabilità limitata

NOTICE! You have been sued. The court may decide against you without your being heard unless you respond within 30 days. Read the information below.

You have 30 CALENDAR DAYS after this summons and legal papers are served on you to file a written response at this court and have a copy served on the plaintiff. A letter or phone call will not protect you. Your written response must be in proper legal form if you want the court to hear your case. There may be a court form that you can use for your response. You can find these court forms and more information at the California Courts Online Self-Help Center (www.courtinfo.ca.gov/selfhelp), your county law library, or the courthouse nearest you. If you cannot pay the filing fee, ask the court clerk for a fee waiver form. If you do not file your response on time, you may lose the case by default, and your wages, money, and property may be taken without further warning from the court.

There are other legal requirements. You may want to call an attorney right away. If you do not know an attorney, you may want to call an attorney referral service. If you cannot afford an attorney, you may be eligible for free legal services from a nonprofit legal services program. You can locate these nonprofit groups at the California Legal Services Web site (www.lawhelpcalifornia.org), the California Courts Online Self-Help Center (www.courtinfo.ca.gov/selfhelp), or by contacting your local court or county bar association. NOTE: The court has a statutory lien for waived fees and costs on any settlement or arbitration award of $10,000 or more in a civil case. The court's lien must be paid before the court will dismiss the case.
*¡AVISO! Lo han demandado. Si no responde dentro de 30 días, la corte puede decidir en su contra sin escuchar su versión. Lea la información a continuación.*

*Tiene 30 DÍAS DE CALENDARIO después de que le entreguen esta citación y papeles legales para presentar una respuesta por escrito en esta corte y hacer que se entregue una copia al demandante. Una carta o una llamada telefónica no lo protegen. Su respuesta por escrito tiene que estar en formato legal correcto si desea que procesen su caso en la corte. Es posible que haya un formulario que usted pueda usar para su respuesta. Puede encontrar estos formularios de la corte y más información en el Centro de Ayuda de las Cortes de California (www.sucorte.ca.gov), en la biblioteca de leyes de su condado o en la corte que le quede más cerca. Si no puede pagar la cuota de presentación, pida al secretario de la corte que le dé un formulario de exención de pago de cuotas. Si no presenta su respuesta a tiempo, puede perder el caso por incumplimiento y la corte le podrá quitar su sueldo, dinero y bienes sin más advertencia.*

*Hay otros requisitos legales. Es recomendable que llame a un abogado inmediatamente. Si no conoce a un abogado, puede llamar a un servicio de remisión a abogados. Si no puede pagar a un abogado, es posible que cumpla con los requisitos para obtener servicios legales gratuitos de un programa de servicios legales sin fines de lucro. Puede encontrar estos grupos sin fines de lucro en el sitio web de California Legal Services, (www.lawhelpcalifornia.org), en el Centro de Ayuda de las Cortes de California, (www.sucorte.ca.gov) o poniéndose en contacto con la corte o el colegio de abogados locales. AVISO: Por ley, la corte tiene derecho a reclamar las cuotas y los costos exentos por imponer un gravamen sobre cualquier recuperación de $10,000 ó más de valor recibida mediante un acuerdo o una concesión de arbitraje en un caso de derecho civil. Tiene que pagar el gravamen de la corte antes de que la corte pueda desechar el caso.*

| | |
|---|---|
| The name and address of the court is: | **CASE NUMBER:** |
| *(El nombre y dirección de la corte es):* | *(Número del Caso):* CGC - 13 - 534683 |
| SUPERIOR COURT OF CALIFORNIA | |
| FOR THE COUNTY OF SAN FRANCISCO | |

Civic Center Courthouse
400 McAllister Street
San Francisco, CA 94102-4514

The name, address, and telephone number of plaintiff's attorney, or plaintiff without an attorney, is:
*(El nombre, la dirección y el número de teléfono del abogado del demandante, o del demandante que no tiene abogado, es):*
Matthew D. Taylor (SBN 220032) TEL- 213-985-2200
HOLMES, TAYLOR & JONES LLP
801 S. Figueroa Street, Suite 2170 Los Angeles, CA 90017

DATE: OCT 0 3 2013    CLERK OF THE COURT    Clerk, by _____ M.A. MORAN, Deputy
*(Fecha)*    *(Secretario)*    *(Adjunto)*

*(For proof of service of this summons, use Proof of Service of Summons (form POS-010).)*
*(Para prueba de entrega de esta citatión use el formulario Proof of Service of Summons, (POS-010)).*

**NOTICE TO THE PERSON SERVED:** You are served
1. ☐ as an individual defendant.
2. ☐ as the person sued under the fictitious name of *(specify):*
3. ☑ on behalf of *(specify):* Looksmart LTD., a Delaware corporation.
   under: ☑ CCP 416.10 (corporation)   ☐ CCP 416.60 (minor)
   ☐ CCP 416.20 (defunct corporation)   ☐ CCP 416.70 (conservatee)
   ☐ CCP 416.40 (association or partnership)   ☐ CCP 416.90 (authorized person)
   ☐ other *(specify):*
4. ☐ by personal delivery on *(date):*

Page 1 of 1

Form Adopted for Mandatory Use
Judicial Council of California
SUM-100 (Rev. July 1, 2009)

**SUMMONS**

American LegalNet, Inc.
www.FormsWorkflow.com

Code of Civil Procedure §§ 412.20, 465
www.courtinfo.ca.gov

1  **HOLMES, TAYLOR & JONES LLP**
   Matthew D. Taylor (SBN 220032)
2  E-mail: matthew.taylor@htjlaw.com
   Andrew B. Holmes (SBN 185401)
3  E-mail: abholmes@htjlaw.com
   801 S. Figueroa Street, Suite 2170
4  Los Angeles, California 90017
   Telephone: (213) 985-2200
5
   Attorneys for Plaintiff WEBOOST MEDIA
6  S.R.L.

7

8              SUPERIOR COURT OF THE STATE OF CALIFORNIA

9                      COUNTY OF SAN FRANCISCO

10

11
   WEBOOST MEDIA S.R.L., a Società a          Case No. **GC 13-53468**
12 responsabilità limitata,

13                                            **COMPLAINT FOR:**
                    Plaintiff,
14                                            **1.) BREACH OF CONTRACT**

15          v.                                **2.) BREACH OF THE COVENANT
                                                  OF GOOD FAITH AND FAIR
16                                                DEALING**
   LOOKSMART LTD., a Delaware corporation,
17 and DOES 1 through 100,                    **3.) FRAUDULENT CONCEALMENT**

18                  Defendants.               **4.) NEGLIGENT INTERFERENCE
                                                  WITH PROSPECTIVE
19                                                ECONOMIC ADVANTAGE**

20                                            **5.) INTENTIONAL
                                                  INTERFERENCE WITH
21                                                PROSPECTIVE ECONOMIC
                                                  ADVANTAGE**
22
                                             **6.) INTENTIONAL
23                                                INTERFERENCE WITH
                                                  CONTRACTUAL RELATIONS**
24
                                             **7.) VIOLATION OF CAL. BUS. &
25                                                PROF. CODE § 17200**

26

27

28

                              COMPLAINT

F I L E D
Superior Court of California
County of San Francisco

OCT-09 2013

CLERK OF THE COURT
BY: _____
                Deputy Clerk

1  Plaintiff WeBoost Media S.r.l., by and through its counsel of record, alleges as follows:

2  **THE PARTIES**

3  1.    Plaintiff WeBoost Media S.r.l. ("WeBoost Media") is a *Società a responsabilità*
4  *limitata*, organized and existing under the laws of Italy, with its principal place of business in
5  Rome, Italy. WeBoost Media is the successor in interest to WeBoost S.r.l ("WeBoost") through a
6  merger completed on April 12, 2013.

7  2.    Defendant LookSmart, Ltd. ("LookSmart") is a corporation organized and existing
8  under the laws of Delaware, with its principal place of business in San Francisco County,
9  California.

10  3.    The true names and capacities of defendants Does 1-100 are presently unknown to
11  Plaintiff, and Plaintiff will seek leave of court to amend this complaint to allege such names and
12  capacities as soon as they are ascertained.

13  **JURISDICTION AND VENUE**

14  4.    Plaintiff is informed and believes, and on that basis alleges, that this Court has
15  jurisdiction over Defendant LookSmart by virtue of the facts that LookSmart (1) is registered to
16  do business in the State of California; (2) does business in the State of California and, more
17  particularly, in this judicial district; (3) entered into a contract with Plaintiff to be performed in
18  this judicial district and (4) committed a wrongful breach of contract in this judicial district; and
19  (5) that WeBoost and LookSmart contractually agreed to consent to the exclusive jurisdiction of
20  the state and federal courts located in San Francisco County, California.

21  5.    Venue is proper in San Francisco County because, *inter alia*, (1) the contract at
22  issues was made and to be performed in this County; (2) Defendants' breach occurred in this
23  County; (3) Plaintiff's cause of action arose in this County; and (4) the Parties contractually
24  agreed that San Francisco County would be the exclusive jurisdiction to resolve any disputes
25  arising from the economic relationship described herein.

26  6.    Jurisdiction in this matter is unlimited because the amount in controversy exceeds
27  $25,000.

28

## FACTUAL ALLEGATIONS

7. Defendant LookSmart is a publicly traded online advertising company. Among other things, LookSmart is in the business of acting as an intermediary between online "publishers" (companies that create and maintain online content from which they desire to generate advertising revenue) and online "advertisers" (companies seeking to promote their products online by means of "pay-per-click" advertising.)

8. In addition to serving as an intermediary, LookSmart also itself acts as an online publisher by maintaining its own network of affiliate websites, which it uses to display advertisements from other companies in order to generate revenue. As part of its business relationship with WeBoost, giving rise to the present lawsuit, LookSmart acted both as publisher and intermediary.

9. "Pay-per-click" is an internet advertising model used to direct online consumer traffic to commercial websites where, it is hoped, consumers will ultimately purchase products and services. Website operators, acting as publishers, display clickable links from advertisers. Each time someone viewing the website clicks on the link, the advertiser is charged a fixed sum of money. A portion of this "pay-per-click" fee is then paid to the publisher from whose website the click originated with the intermediary (the company that placed the advertisement) receiving the remainder.

10. The biggest intermediary in the pay-per-click advertising market is Google, which operates Google AdSense. Generally speaking, online publishers employ Google to locate and place appropriate on-line advertisements on their websites. In exchange, any "pay-per-click" revenues that are generated when a customer clicks on one of these advertisements are shared between the publisher and Google. According to Google's website, the standard terms of its AdSense agreement provides that publishers receive between 51% and 68% of this advertising revenue, depending on the AdSense product utilized, with Google receiving the remainder.

11. Plaintiff WeBoost, which is based in Rome, Italy, owns and operates an international network of websites. WeBoost's primary source of income is the revenue it generates through the placement of advertisements on its websites. In other words, WeBoost is

3

1   what's known in the online advertising world as a "publisher." Many of the websites that

2   WeBoost operates are intended to assist on-line shoppers in comparing prices across a variety of

3   on-line retailers. Such websites often contain links directly to the retailer selling a particular

4   product. When a consumer clicks on a particular link, a "pay-per-click" fee is generated which is

5   then divided between WeBoost and the intermediary that placed the advertisement.

6       12.  Prior to entering into its business relationship with LookSmart, Google was by far

7   WeBoost's most important advertising intermediary and Google AdSense was the primary

8   means by which WeBoost generated advertising revenue from its various website properties.

9   Consistent with Google's standard terms, WeBoost's contract with Google provided that

10  WeBoost would receive between 51% and 68% of the revenue generated from pay-per-click

11  advertisements appearing on WeBoost websites. This agreement further allowed Google to

12  make deductions from WeBoost's AdSense account to the extent it determined that the clicks

13  originating on WeBoost's sites were illegitimate, or what's known in the on-line advertising

14  industry as "click fraud."

15      13.  "Click-fraud" is a form of fraud by which a person, automated script or computer

16  program initiates a "click" on an online advertisement by imitating a legitimate online consumer.

17  Clicks generated by click-fraud do not truly reflect a potential customer who is actually

18  interested in the product being advertised but rather are initiated for the sole purpose of

19  generating the fees resulting from "pay-per-click" advertising.

20      14.  LookSmart is acutely aware of the risks that click-fraud presents to the on-line

21  advertising business. In its most recent 10-K filing, LookSmart specifically identified click fraud

22  as one of the significant risks facing its business:

23          Invalid clicks are an ongoing problem for the Internet search advertising industry,
            and we are exposed to the risk of invalid clicks on our search advertising
24          customers' text advertisements coming from within our distribution network.
            Invalid clicks occur when a person or robotic software causes a click on a paid
25          listing to occur for some reason other than to view the underlying content. Invalid
            clicks are commonly referred to as "click fraud"...
26
            ... We have in the past been subject to advertiser complaints and litigation
27          regarding invalid clicks, and we may be subject to search advertising customer
            complaints, claims, litigation or inquiries in the future. We have from time to time
28          credited invoices or refunded revenue to our customers due to invalid traffic, and

                                      4

we expect to continue to do so in the future. If our systems to detect invalid traffic are insufficient, or if we find new evidence of past invalid clicks, we may have to issue credits or refunds retroactively to our search advertisers, and we may still have to pay revenue share to our distribution network partners. This could negatively affect our profitability and hurt our brand . . . (April 1, 2013 10-K at pg. 10.)

15. Beginning in approximately December, 2008 and continuing for a period of approximately four years, WeBoost built a strong and profitable partnership with Google which was based largely on the legitimacy of the "pay-per-click" traffic generated on WeBoost websites and the absence of significant "click-fraud" traffic. Immediately prior to entering into its agreement with LookSmart, WeBoost generated approximately 57% of its total online advertising revenue through Google AdSense.

16. While a certain small percentage of click fraud is considered unavoidable and tolerated within the on-line pay-per-click advertising industry, prior to entering into its agreement with LookSmart in the fall of 2011, the monthly deductions made by Google to WeBoost's AdSense account, which reflected the amount of pay-per-click traffic that Google considered illegitimate, averaged less than .5% of total pay-per-click traffic generated on WeBoost's websites.

17. On or about October 31, 2011, WeBoost and LookSmart entered into an agreement by which LookSmart agreed to serve as both a publisher and intermediary with respect to WeBoost advertisements. Specifically, LookSmart and WeBoost agreed that LookSmart would display clickable advertisements promoting various WeBoost websites on LookSmart's own family of websites. WeBoost was to pay LookSmart based upon the total number of clicks on these advertisements, with LookSmart sending WeBoost monthly invoices detailing the total number of clicks generated by these advertisements and the total amount owing as a result. The price paid by WeBoost for each click varied based upon fluctuating market conditions but generally ranged between $.01 and $.05. As part of this transaction, WeBoost executed a copy of LookSmart's standard "Terms and Conditions." A copy of this agreement is attached hereto as Exhibit A.

18. Between approximately December 2011 and June 2012 WeBoost paid LookSmart a total of $105,273.92 pursuant to seven (7) separate invoices that were sent to it by LookSmart. At all times, WeBoost believed that it was paying LookSmart for legitimate, non-fraudulent pay-per-click traffic that had originated on various websites owned and operated by WeBoost. A true and correct copy of the seven (7) invoices that were paid by WeBoost is attached as Exhibit B.

19. However, beginning in approximately May, 2012, WeBoost first became aware that a significant portion of the clicks that LookSmart was billing it for did not appear to be legitimate and were being identified by Google as illegitimate "click fraud."

20. Between April 2012 and July 2012, Google deducted nearly $250,000 from WeBoost's AdSense account due to suspicious "click-fraud" activity, substantially all of which originated from LookSmart affiliated websites. Moreover, on or about July 3, 2012, Google notified WeBoost that an additional $191,000 in gross-revenue (the amount prior to Google taking its share) was being deducted from WeBoost's AdSense account due to suspicious "click-fraud" activity originating on a particular WeBoost website- www.pay-it-less.co.uk. Based upon the WeBoost's agreement with Google, this deduction led directly to an additional loss of approximately $130,000 by WeBoost.

21. WeBoost is informed and believes and based thereon alleges that the source of substantially all of this "click fraud" traffic was LookSmart, itself. Substantially all of the fraudulent clicks generated on www.pay-it-less.co.uk can be traced directly to traffic originating from websites owned and controlled by LookSmart. Moreover, LookSmart has a strong financial incentive to generate click fraud traffic due to the fact that the amount it bills WeBoost is based upon the number of clicks generated on its websites. The more traffic LookSmart generated for WeBoost, legitimate or otherwise, the more money it received.

22. To the extent that LookSmart, itself, is not directly responsible for generating the "click-fraud" traffic at issue, LookSmart had a duty and responsibility to take all reasonable and necessary steps to detect "click-fraud" traffic originating on its websites, to notify WeBoost of such "click-fraud" traffic in a timely manner and to appropriately reduce the amount of clicks for which it was billing WeBoost on a monthly basis to ensure that WeBoost was not being billed

1  for fraudulent traffic.  WeBoost is informed and believes that based thereon alleges that
2  LookSmart did none of these things.

3      23.  In addition to the deductions described above, between August 2012 and December
4  2012, Google deducted additional sums from WeBoost's AdSense account totaling
5  approximately $12,500 as additional compensation for the unusually high volume of "click
6  fraud" traffic that had originated from WeBoost's websites, substantially all of which could
7  again be directly traced to fraudulent traffic originating from LookSmart's own websites.

8      24.  Thus, in total, the fraudulent traffic WeBoost purchased from LookSmart led to
9  nearly $400,000 in direct losses to WeBoost in the form of unilateral deductions by Google to
10  WeBoost's AdSense account.

11      25.  Prior to doing business with LookSmart, WeBoost had never been subjected to
12  substantial deductions or other punitive measures taken by Google or any other purchaser of
13  WeBoost's "pay-per-click" traffic due to "click-fraud" activity.  Rather, the only deductions
14  WeBoost had experienced were routine monthly adjustments that averaged less than .5% of
15  WeBoost's total pay-per-click traffic.

16      26.  In addition to these direct, out-of-pocket damages, the sale of fraudulent traffic by
17  WeBoost has significantly damaged WeBoost's business relationship with Google, which was by
18  far WeBoost's most significant business partner.  As a result of the high volume of "click fraud"
19  appearing on WeBoost's websites, almost all of which could be directly traced from LookSmart,
20  WeBoost's AdSense account came to have a significantly negative balance which forced on
21  December 2012 WeBoost to abandon using this account.

22      27.  The deterioration of this business relationship with Google has forced WeBoost to
23  utilize alternative pay-per-click intermediaries which has significantly decreased the profitability
24  of its business operations.  WeBoost has only recently begun to rebuild its relationship with
25  Google and has yet to obtain the levels of usage and profit with Google that it had obtained prior
26  to entering into its relationship with LookSmart.

27

28

## FIRST CAUSE OF ACTION

### (Breach of Contract Against Defendant LookSmart and Does 1-20)

28. Plaintiff hereby incorporates, as though fully set forth herein, the allegations contained in paragraphs 1 through 27.

29. On or about October 31, 2011, WeBoost and LookSmart entered into an agreement by which LookSmart agreed to serve as both a publisher and intermediary with respect to WeBoost advertisements. Specifically, LookSmart agreed to display clickable advertisements promoting various WeBoost websites on LookSmart's own family of websites. LookSmart was to provide WeBoost with monthly invoices billing WeBoost based upon the total number of clicks generated by these advertisements. The price paid by WeBoost to LookSmart for each click varied based upon fluctuating market conditions but generally ranged between $.01 and $.05. As part of this transaction, WeBoost executed a copy of LookSmart's standard "Terms and Conditions." A copy of this agreement is attached hereto as Exhibit A.

30. This Agreement provided that LookSmart would invoice WeBoost monthly based upon "clicks on Advertising content." WeBoost understood this representation to mean that it would only be invoiced for legitimate clicks on its advertising content and not for illegitimate clicks arising from "click-fraud."

31. WeBoost has performed all conditions, covenants and promises required on his part to be performed in accordance with the terms and conditions of this Agreement.

32. LookSmart has breached the Agreement by generating and billing WeBoost for illegitimate "click-fraud" traffic in addition to clicks that may have been initiated by legitimate prospective customers.

33. As a direct and proximate result of Defendants' breach of contract, WeBoost has suffered damages in an amount to be determined at trial.

## SECOND CAUSE OF ACTION

### (Breach of Covenant of Good Faith And Fair Dealing
### Against LookSmart and Does 1-100)

34. Plaintiff hereby incorporates, as though fully set forth herein, the allegations contained in paragraphs 1 through 33.

35. Implied in the Agreement between WeBoost and LookSmart described above is a covenant of good faith and fair dealing. The covenant provides that no party will do anything that will have the effect of impairing, destroying or injuring the rights of the other party to receive the benefits of their agreement. The law implies a covenant in all agreements that each party will do all things reasonably contemplated by the terms of the agreement to accomplish its purpose.

36. By performing the acts described above, and specifically by providing WeBoost with online advertising traffic arising from illegitimate "click-fraud" rather than from legitimate prospective customer, LookSmart has breached the covenant of good faith and fair dealing by violating the spirit of the Agreement.

37. As a direct and proximate result of LookSmart's breach of the covenant of good faith and fair dealing, WeBoost has suffered damages in an amount to be determined according to proof at trial.

## THIRD CAUSE OF ACTION

### (Fraudulent Concealment

### Against LookSmart and Does 1-100)

38. Plaintiff hereby incorporates, as though fully set forth herein, the allegations contained in paragraphs 1 through 37.

39. LookSmart actively concealed from WeBoost the fact that a significant portion of the pay-per-click traffic that was being generated on LookSmart's websites and for which WeBoost was paying LookSmart was not legitimate pay-per-click traffic at all but rather illegitimate "click-fraud."

40. WeBoost was unaware of the fact that a significant portion of the pay-per-click traffic that was being generated on LookSmart's websites and for which WeBoost was paying LookSmart was not legitimate pay-per-click traffic at all but rather illegitimate "click-fraud."

9

41. LookSmart intended to deceive WeBoost by concealing this fact.

42. WeBoost reasonably relied upon LookSmart's deception in the good faith belief that it was paying LookSmart for legitimate pay-per-click traffic.

43. As a direct and proximate result of LookSmart's concealment of this information, WeBoost has suffered damages in an amount to be determined at trial.

## FOURTH CAUSE OF ACTION

### (Negligent Interference With Prospective Economic Advantage
### Against LookSmart and Does 1-100)

44. Plaintiff hereby incorporates, as though fully set forth herein, the allegations contained in paragraphs 1 through 43.

45. At all relevant times, WeBoost and Google were in an economic relationship that was likely to have resulted in a future economic benefit to WeBoost.

46. LookSmart knew or should have known of WeBoost's existing relationship with Google which WeBoost used to generating advertising revenue from its family of websites.

47. LookSmart knew or should have known that the economic relationship between Google and WeBoost would be disrupted if LookSmart failed to act with reasonable care.

48. LookSmart failed to act with reasonable care.

49. LookSmart engaged in wrongful conduct by negligently and/or intentionally providing WeBoost websites with illegitimate "click-fraud" traffic by either generating such click-fraud traffic itself in order to increase the payments that were purportedly owed to it by WeBoost and/ or by failing to take reasonable care to prevent others from generating click-fraud traffic.

50. As a proximate result of LookSmart's actions, WeBoost's economic relationship with Google was disrupted.

51. As a proximate result of LookSmart's actions, WeBoost has suffered damages in an amount that will be determined according to proof at trial.

## FIFTH CAUSE OF ACTION

### (Intentional Interference With Prospective Economic Advantage
### Against LookSmart and Does 1-100)

52. Plaintiff hereby incorporates, as though fully set forth herein, the allegations contained in paragraphs 1 through 51.

53. At all relevant times, WeBoost and Google were in an economic relationship that was likely to have resulted in a future economic benefit to WeBoost.

54. LookSmart knew of WeBoost's existing economic relationship with Google which WeBoost used to generating advertising revenue from its family of websites.

55. LookSmart intended to disrupt the economic relationship between Google and WeBoost.

56. LookSmart engaged in wrongful conduct by intentionally providing WeBoost websites with illegitimate "click-fraud" traffic by generating such click-fraud traffic itself in order to increase the payments that were purportedly owed to it by WeBoost.

57. As a proximate result of LookSmart's actions, WeBoost's economic relationship with Google was disrupted.

58. As a proximate result of LookSmart's actions, WeBoost has suffered damages in an amount that will be determined according to proof at trial.

## SIXTH CAUSE OF ACTION

### (Intentional Interference With Contractual Relations
### Against LookSmart and Does 1-100)

59. Plaintiff hereby incorporates, as though fully set forth herein, the allegations contained in paragraphs 1 through 58.

60. WeBoost and Google had entered into a contract by which they had agreed to share the advertising revenues generated by Google placing advertisements on various WeBoost websites.

61. LookSmart knew of WeBoost's existing contract with Google.

1      62.    LookSmart intended to disrupt the contract between WeBoost and Google
2 economic relationship between Google and WeBoost.

3      63.    LookSmart's conduct, as more fully described above, prevented WeBoost from
4 fully performing under its contract with Google and/or made performance of such contract more
5 expensive or difficult.

6      64.    As a proximate result of LookSmart's actions, WeBoost has suffered damages in
7 an amount that will be determined according to proof at trial.

8

9                       **SEVENTH CAUSE OF ACTION**

10      **(Violation of Cal. Bus. & Prof Code §17200 Against LookSmart and Does 1-100)**

11      65.    Plaintiff hereby incorporates, as though fully set forth herein, the allegations
12 contained in paragraphs 1 through 64.

13      66.    Pursuant to §§ 17200 et seq. of the California Business and Professions Code,
14 unfair business practices include any unlawful, unfair or fraudulent business practice. The
15 fraudulent and unlawful conduct of LookSmart as alleged herein is an unlawful, unfair and
16 fraudulent practice within the provisions of § 17200 et seq. of the California Business and
17 Professions Code, and, accordingly, constitutes a violation of §§ 17200 et seq. of the California
18 Business and Professions Code.

19      67.    Upon information and belief, LookSmart has a business practice of generating
20 fraudulent pay-per-click traffic known as "click-fraud" and of billing its customers for such
21 illegitimate traffic and such business practice is unlawful, unfair and fraudulent and violates
22 California law as alleged herein.

23      68.    As a direct and proximate result of the unfair business practices of LookSmart as
24 herein alleged, WeBoost incurred damages in an amount that will be determined according to
25 proof at trial.

26

27

28

1

## PUNITIVE DAMAGES

2       LookSmart's conduct as alleged herein was malicious, oppressive, and perpetrated with a

3  conscious and reckless disregard for WeBoost's interests and welfare, thereby justifying the

4  imposition of punitive damages in an amount sufficient to punish and to make an example of

5  LookSmart as to deter future wrongful conduct.

6

7

## PRAYER FOR RELIEF

8       WHERFORE, Plaintiff prays judgment against Defendant as follows:

9       1.   Compensatory damages in an amount sufficient to compensate WeBoost for its

10  monetary losses;

11      2.   Restitution;

12      3.   Exemplary damages;

13      4.   Pre-judgment and post-judgment interest, as collectable by law;

14      5.   Attorneys fees and court costs, as collectable by law; and

15      6.   Any other relief that the Court deems proper.

16

17

18

19  DATED:   SEPTEMBER 30, 2013        **HOLMES, TAYLOR & JONES LLP**

20

21                          By: _____
                                  Matthew D. Taylor
22                              Attorney for Plaintiff WEBOOST MEDIA S.R.L.

23

24

25

26

27

28

# Exhibit A



**looksmart**
SEARCH MARKETING
Demand Quality. Expect Results.

## TERMS AND CONDITIONS (as of July 22, 2009) – ADS (COST PER CLICK)

### 1. Introduction

These Terms and Conditions are entered into by you ("Advertiser") and LookSmart, Ltd. ("LookSmart") regarding the display and distribution of advertisement(s) by LookSmart ("Advertisements") These Terms and Conditions together with any executed insertion order (an "Insertion Order") will be known as the "Agreement". The display and distribution of Advertisements will also be subject to the policies and requirements set forth in the LookSmart Advertiser Center, currently located at https://adcenter.looksmart.com/help/faq#terms, as modified from time to time by LookSmart. By continuing to allow LookSmart to display and distribute Advertisements after such modified Terms and Conditions have been posted, you agree to these Terms and Conditions, as modified.

### 2. Advertisements and Advertising Content

LookSmart will display the Advertisements, text links, graphical links, or other advertising content provided or approved by Advertiser together with the related keywords (the "Advertising Content"). Advertiser agrees that its Advertisements will conform to LookSmart's specifications and editorial guidelines located at https://adcenter.looksmart.com/help/faq#guidelines.
Advertiser is solely responsible for creating the Advertising Content and Advertiser represents that it will choose keywords that do not violate any third party's trademarks, other intellectual property rights or other rights and/or will obtain licenses to use any third party trademarks as keywords. Advertiser grants to LookSmart and members of the LookSmart Network [as defined below] (i) the right to display, perform, transmit and promote the Advertising Content and to make internal copies as necessary to perform the foregoing; and (ii) users of LookSmart's distribution network members' websites [collectively, the "LookSmart Network"] the right to access and use the Advertising Content and any content and/or services directly linked to the Advertising Content. LookSmart and LookSmart Network members may reject or remove any particular Advertisement or Advertising Content for any or no reason.

### 3. Distribution

Advertiser understands that the Advertisements may appear on various site(s) within the LookSmart Network. The breadth of distribution of the Advertising Content may change during the term of this Agreement for any reason or no reason, including that LookSmart may change the members of the LookSmart Network from time to time without notice, and LookSmart may adopt or discontinue one or more modes of distribution or may change or discontinue sites, site pages or methods or modes of advertisement delivery. Because of the variety of types of distribution on the LookSmart Network and its frequent changes, we cannot guarantee that your Advertisement(s) will appear in any particular type of placement, or position, or that it will be displayed in any particular context or in response to any particular behavior. LookSmart will discount your bid(s) to the greatest extent possible while still achieving the highest possible position for your Advertisements (given your bid amount) on the LookSmart Network, if possible. LookSmart cannot ensure the correct bid pricing to

achieve the highest possible position (given your bid amount). In all cases LookSmart will not exceed Advertiser's maximum bid(s). With respect to keyword-targeted Advertisements, Advertising Content may appear for the specific keywords Advertiser selects, as well as for variations on those keywords, as determined by LookSmart's matching technology.

### 4. Term; Cancellation or Termination

For accounts with an Insertion Order, the term of this Agreement will be set forth in the Insertion Order. If there is no Insertion Order, the term will end when terminated by either party in accordance with the terms and conditions of this Agreement. Unless otherwise set forth in the relevant Insertion Order, either party may terminate the Agreement at any time for any reason or no reason upon giving written notice to the other party, with such termination to be effective as soon as LookSmart can remove all of Advertising Content from the LookSmart Network, but no later than five (5) business days after a party gives written notice. LookSmart may terminate this Agreement immediately with or without notice to Advertiser (i) if LookSmart is unable to successfully charge Advertiser's credit card for any amount described in Section 5, for credit card accounts; or (ii) if any amount invoiced to Advertiser has not been paid when due, for invoice accounts.

### 5. Billing; Payment

#### a. Invoice Accounts

LookSmart will invoice Advertiser monthly for clicks on Advertising Content. Payment in full will be due thirty (30) days after the date of the invoice. If LookSmart, in its sole discretion, determines that Advertiser's credit condition warrants, LookSmart may require additional information and/or advance payment. If Advertiser wishes to increase or exceed the budget amount in an approved Insertion Order, Advertiser will submit an electronic mail message to LookSmart to document Advertiser's agreement to such increase.

#### b. Credit Card Accounts

Advertiser must maintain a valid credit card in its online account. Advertiser authorizes LookSmart to charge its credit card for all charges to its account, including any recurring payments. Advertiser understands that this authorization is valid until the effective time of termination of this Agreement. Advertiser is responsible for maintaining up-to-date credit card information in its account. If Advertiser's credit card expires, Advertiser will continue to be responsible for payment of charged amounts until Advertiser either changes its credit card information or terminates the Agreement. Advertiser agrees to retain, either by printing or otherwise saving, a copy of this Agreement, which provides the terms of this authorization. LookSmart will charge amounts to Advertiser's credit card based on the amount of clicks on its Advertisements as determined by LookSmart's click tracking technology. If LookSmart is unable to charge Advertiser's credit card because Advertiser's credit card is no longer valid, or for any other reason, LookSmart may in its sole discretion (i) reduce Advertiser's campaign budgets so that Advertiser's remaining account budget is

# looksmart
### SEARCH MARKETING

Demand Quality. Expect Results.

less than the remaining account balance; (ii) suspend Advertiser's Advertisements from the LookSmart Network; or (iii) terminate this Agreement in accordance with Section 4.

c. All Accounts

All fees described in this Agreement exclude any and all sales, use, property, license, value added, excise or similar tax (and any related duties, tariffs, imposts and similar charges) that may be due as a result of the transactions contemplated by this Agreement. Advertiser will be responsible for paying all such taxes and charges. Advertiser will have thirty (30) business days from the date of an invoice or charge to dispute that invoice or charge; after that time Advertiser will be deemed to have waived any objections to the invoice or charge. Invoices and charges will be determined solely based on LookSmart's click tracking technology. Advertiser may use a third party to track clicks on Advertisements. In the event that the third party's measurements or clicks on Advertisements differ from those tracked by LookSmart by more than ten (10) percent over an invoiced or charged period, within the thirty (30) day period following the end of such period LookSmart and Advertiser will participate in a reconciliation effort between the third party and LookSmart regarding the discrepancy, make a good faith effort to resolve such discrepancy and, if any changes are made to LookSmart's tracking as a result, amend the invoice or credit the account accordingly. Refunds (if any) are at the discretion of LookSmart and will be granted only in the form of advertising credit on the LookSmart Network. Advertiser will dispute any invoice or charge within its section, and agrees not to dispute any charges with its credit card company or otherwise initiate chargeback proceedings if such dispute or chargeback would cause Advertiser to be in violation of this section.

**5. Collections**

In the event of any legal action to collect amounts owed by Advertiser under this Agreement, LookSmart will be entitled to reimbursement for all costs incurred, including reasonable court costs and attorney's fees and expenses.

**7. Online Account**

LookSmart will provide a password-protected online account to allow Advertiser to monitor the performance of campaigns and make changes to elements of campaigns. Advertiser is solely responsible for controlling access to the password-protected account and for maintaining the confidentiality of the password, and will be responsible to pay for any charges or traffic fees incurred as a result of changes made through the online account.

**8. Limitation of Liability**

EXCEPT WITH RESPECT TO OBLIGATIONS UNDER SECTIONS 9 AND 12 BELOW, (I) UNDER NO CIRCUMSTANCES WILL EITHER PARTY BE LIABLE TO THE OTHER PARTY, WHETHER IN CONTRACT, TORT OR OTHERWISE, FOR INDIRECT, INCIDENTAL, CONSEQUENTIAL, SPECIAL OR EXEMPLARY DAMAGES (EVEN IF SUCH DAMAGES ARE FORESEEABLE, AND WHETHER OR NOT THE INDEMNIFIED PARTY HAS BEEN ADVISED OF THE POSSIBILITY OF SUCH DAMAGES) ARISING FROM THIS AGREEMENT AND (II) NEITHER PARTY WILL BE LIABLE TO THE OTHER PARTY FOR MORE

THAN THE TOTAL AMOUNT PAID OR PAYABLE (PLUS APPLICABLE FEES AND COSTS) TO LOOKSMART UNDER THIS AGREEMENT.

**9. Indemnification**

Each party agrees to indemnify, defend and hold harmless the other party, its subsidiaries, affiliates, partners, officers, directors, employees and agents, from any and all liability, damages and settlements due to third party claims or causes of action, including reasonable legal fees and expenses (collectively "Liabilities"), arising out of or related to the indemnifying party's breach of any of its representations or warranties in this Agreement. Advertiser agrees to indemnify, defend and hold harmless LookSmart, its subsidiaries, affiliates, partners, officers, directors, employees and agents, from any Liabilities arising from all content or material on any website associated with any Advertising Content, Advertiser's website(s) and Advertiser's order processing, billing, fulfillment, shipment, collection and other customer support associated with any products or services offered, sold or licensed through any website associated with any Advertising Content.

**10. Representations and Warranties**

Advertiser represents and warrants that (i) Advertiser holds the necessary corporate power, permits and rights to grant all right granted to LookSmart under this Agreement; (ii) neither the use, reproduction, distribution, or transmission of the Advertising Content, nor any material or service available on or through Advertiser's website will (a) violate any foreign, federal, state or local law or regulation or any rights of any third party, (b) contain any material that is harmful, abusive, hateful, obscene or threatening nor (c) constitute false or fraudulent advertisement and that a reasonable basis exists for all claims concerning the performance of products and services offered; (iii) the Advertising Content complies with LookSmart's advertising guidelines (https://adcenter.looksmart.com/help/faqs/guidelines); (iv) Advertiser's execution of this Agreement, and its performance of obligations and duties hereunder, will not violate any agreement to which Advertiser is a party or is otherwise bound; and (v) Advertiser possesses all authorizations, approvals, consents, licenses, permits, certificates or other rights and permissions necessary to display its website(s) and purchase, display and distribute (and allow others to display and distribute) Advertising Content for such website(s).

**11. LookSmart Representations and Warranties**

LookSmart represents and warrants that it holds the necessary rights to use the LookSmart Network for display and reproduction of the Advertising Content for the purpose of this Agreement. LOOKSMART MAKES NO OTHER REPRESENTATIONS, AND HEREBY EXPRESSLY DISCLAIMS, ALL WARRANTIES, EXPRESS OR IMPLIED, REGARDING LOOKSMART'S SERVICES OR ANY PORTION THEREOF, INCLUDING ANY IMPLIED WARRANTY OF MERCHANTABILITY, NONINFRINGEMENT OR FITNESS FOR A PARTICULAR PURPOSE AND ANY IMPLIED WARRANTIES ARISING FROM COURSE OF DEALING OR COURSE OF PERFORMANCE. Without limiting the generality of the foregoing, LookSmart specifically disclaims any warranty regarding (i) the number of persons who will access the Advertising Content and (ii)

# looksmart
## SEARCH MARKETING

**Demand Quality. Expect Results.**

any benefit Advertiser might obtain from including the Advertising Content within the LookSmart Network. The performance estimates, if any, on the Insertion Order are not guarantees, and actual performance may be higher or lower than the estimates provided. LookSmart cannot warrant that the display of the Advertising Content or the link to the advertiser web content will be uninterrupted or error-free. LookSmart cannot guarantee that an Advertisement will be displayed in response to any given keyword search. LookSmart specifically disclaims any warranty regarding the location and prominence of Advertisements within the LookSmart Network, including within any search results displayed thereon.

### 12. Confidentiality

The terms and conditions of this Agreement, as well as any click-through or user data derived from this Agreement or its performance, are confidential to LookSmart, and Advertiser agrees not to disclose them to any third party under any circumstances, except as required by law and with prior written notice to LookSmart. Neither party will issue any press release or public announcement of the terms or existence of this Agreement without the prior written consent of the other party, except that LookSmart may reference Advertiser as a client and include Advertiser's name in marketing materials.

### 13. Jurisdiction: Choice of Law

The parties irrevocably consent to the exclusive jurisdiction of the state and federal courts located in San Francisco County, California in connection with any action arising under this Agreement. This Agreement will be interpreted, construed and enforced in all respects in accordance with laws of California, without regard to its conflicts of laws provisions or to the actual state or country of incorporation or residence of the parties.

### 14. Miscellaneous

In the event of any express conflict between the provisions of the Insertion Order and these Terms and Conditions, the provisions of the Insertion Order will apply. LookSmart will not be liable for delay or default in displaying Advertisements if such delay or default is caused by conditions beyond its reasonable control including without limitation casualty, network or telecoms failures and acts of God. In the event that any provision of this Agreement conflicts with the law under which this Agreement is to be construed, or if any such provision is held invalid by a court with jurisdiction over the parties to this Agreement, such provision will be deemed to be restated to reflect as nearly as possible the original intentions of the parties in accordance with applicable law, and the remainder of this Agreement will remain in full force and effect. The failure of either party to insist upon or enforce strict performance by the other party, of any provision of this Agreement, or to exercise any rights under this Agreement, will not be construed as a waiver or relinquishment of such party's right to enforce any such provision or right in any other instance. Advertiser may not assign this Agreement, in whole or in part. LookSmart and Advertiser are independent contractors, and neither LookSmart nor Advertiser is an agent, representative or partner of the other. Except as set forth in Section 1 above, this Agreement may only be modified, or any rights under it waived, by a written document or online agreement executed by both parties.

If Advertiser and LookSmart have signed a separate agreement for the delivery of relevant advertising that is still in effect, then in the event of any express conflict between the provisions of that other agreement and these Terms and Conditions, such provisions of this Agreement will govern.

| COMPANY: WEBOOST S.r.l. | LookSmart, Ltd. |
|---|---|
| By: ALESSANDRO CAVALLO | By: |
| Signature: V.le Bruno Buozzi 102 00197 ROMA | Signature: |
| Title: CEO | Title: |
| Date: | Date: 3/11/10 |

LookSmart, Ltd.

Page 3 of 3

# Exhibit B

# looksmart

(415) 348-7564
billing@looksmart.net

**Invoice**

| WeBoost | WeBoost |
|---|---|
| Alessandro Cavallo | Alessandro Cavallo |
| Viale Bruno Buozzi 102 | Viale Bruno Buozzi 102 |
| Rome 00197 | Rome 00197 |
| Italy | Italy |

| Invoice No. | PO No. | Customer No. | Sales Rep | Invoice Date | Due Date | Account ID |
|---|---|---|---|---|---|---|
| INV0052307 | | 1288411 | | 11/30/11 | 12/30/11 | |

| Clicks | Product | | CPC | Cost |
|---|---|---|---|---|
| 97163 | November 2011—Looklistings:WeBoost | | 0.04000 | 4,061.58 |

**REMIT ADDRESS:**
LookSmart, Ltd.
P.O. Box 7298
San Francisco, CA
94120-7298

| | |
|---|---|
| Subtotal | $4,061.58 |
| Agency Discount | $0.00 |
| Other | 0.00 |
| Total Due | $4,061.58 |

**BILLING AND PAYMENTS:**
To pay by credit card, please call: (415) 348-7564
(Please do not send credit card information by email)

For billing questions, please email: billing@looksmart.net

INV0052307
1288411

**WIRE INSTRUCTIONS:**
City National Bank, San Francisco, CA
Account No: 432-826008
ABA or Routing No.: 122-016-066

# looksmart

(415) 348-7564
billing@looksmart.net

| WeBoost | WeBoost |
|---|---|
| Alessandro Cavallo | Alessandro Cavallo |
| Viale Bruno Buozzi 102 | Viale Bruno Buozzi 102 |
| Rome 00197 | Rome 00197 |
| Italy | Italy |

| Invoice No. | PO No. | Customer No. | Sales Rep | Invoice Date | Due Date | Account ID |
|---|---|---|---|---|---|---|
| INV0052376 | | 1288411 | | 12/31/11 | 01/30/12 | |

| Clicks | Product | | | | CPC | Cost |
|---|---|---|---|---|---|---|
| 1160792 | December 2011—Looklistings:WeBoost | | | | 0.02000 | 23,479.17 |

| | | |
|---|---|---|
| **REMIT ADDRESS:** | Subtotal | $23,479.17 |
| LookSmart, Ltd. | Agency Discount | $0.00 |
| P.O. Box 7298 | Other | 0.00 |
| San Francisco, CA | **Total Due** | **$23,479.17** |
| 94120-7298 | | |

**BILLING AND PAYMENTS:**
To pay by credit card, please call: (415) 348-7564
(Please do not send credit card information by email)

For billing questions, please email: billing@looksmart.net

INV0052376
1288411

**WIRE INSTRUCTIONS:**
City National Bank, San Francisco, CA
Account No: 432-826008
ABA or Routing No.: 122-016-066

# looksmart

Invoice

(415) 348-7584
billing@looksmart.net

| WeBoost | WeBoost |
| Alessandro Cavallo | Alessandro Cavallo |
| Viale Bruno Buozzi 102 | Viale Bruno Buozzi 102 |
| Rome 00197 | Rome 00197 |
| Italy | Italy |

| Invoice No. | PO No. | Customer No. | Sales Rep | Invoice Date | Due Date | Account ID |
|---|---|---|---|---|---|---|
| INV0052461 | | 1288411 | | 01/31/12 | 03/01/12 | |

| Clicks | Product | | | | CPC | Cost |
|---|---|---|---|---|---|---|
| 2327695 | January 2012--LookListings:WeBoost | | | | 0.01000 | 23,284.91 |

| | | |
|---|---|---|
| Subtotal | | $23,284.91 |
| Agency Discount | | $0.00 |
| Other | | 0.00 |
| Total Due | | $23,284.91 |

**REMIT ADDRESS:**
LookSmart, Ltd.
P.O. Box 7298
San Francisco, CA
94120-7298

**BILLING AND PAYMENTS:**
To pay by credit card, please call: (415) 348-7584
(Please do not send credit card information by email)

For billing questions, please email: billing@looksmart.net

INV0052461
1288411

**WIRE INSTRUCTIONS:**
City National Bank, San Francisco, CA
Account No: 432-626008
ABA or Routing No.: 122-016-066

# looksmart

Invoice

(415) 348-7584
billing@looksmart.net

| WeBoost | WeBoost |
|---|---|
| Alessandro Cavallo | Alessandro Cavallo |
| Viale Bruno Buozzi 102 | Viale Bruno Buozzi 102 |
| Rome 00197 | Rome 00197 |
| Italy | Italy |

| Invoice No. | PO No. | Customer No. | Sales Rep | Invoice Date | Due Date | Account ID |
|---|---|---|---|---|---|---|
| INV0052518 | | 1288411 | | 02/29/12 | 03/30/12 | |

| Clicks | Product | | | CPC | Cost |
|---|---|---|---|---|---|
| 1551739 | February 2012--Looklistings:WeBoost | | | 0.01000 | 15,519.95 |

| | | |
|---|---|---|
| **REMIT ADDRESS:** | Subtotal | $15,519.95 |
| LookSmart, Ltd. | Agency Discount | $0.00 |
| P.O. Box 7298 | Other | 0.00 |
| San Francisco, CA | **Total Due** | **$15,519.95** |
| 94120-7298 | | |

**BILLING AND PAYMENTS:**
To pay by credit card, please call: (415) 348-7584
(Please do not send credit card information by email)

For billing questions, please email: billing@looksmart.net

INV0052518
1288411

**WIRE INSTRUCTIONS:**
City National Bank, San Francisco, CA
Account No: 432-626008
ABA or Routing No.: 122-016-066

# looksmart

Invoice

(415) 348-7564
billing@looksmart.net

| WeBoost<br>Alessandro Cavello<br>Viale Bruno Buozzi 102<br>Rome 00197<br>Italy | WeBoost<br>Alessandro Cavello<br>Viale Bruno Buozzi 102<br>Rome 00197<br>Italy |
|---|---|

| Invoice No. | PO No. | Customer No. | Sales Rep | Invoice Date | Due Date | Account ID |
|---|---|---|---|---|---|---|
| INV0052586 | | 1268411 | | 03/31/12 | 04/30/12 | — |

| Clicks | Product | | | CPC | Cost |
|---|---|---|---|---|---|
| 1797165 | March 2012–Looklistings:WeBoost | | | 0.01000 | 17,978.41 |

**REMIT ADDRESS:**
LookSmart, Ltd.
P.O. Box 7298
San Francisco, CA
94120-7298

| | |
|---|---|
| Subtotal | $17,978.41 |
| Agency Discount | $0.00 |
| Other | 0.00 |
| Total Due | $17,978.41 |

**BILLING AND PAYMENTS:**
To pay by credit card, please call: (415) 348-7564
(Please do not send credit card information by email)

For billing questions, please email: billing@looksmart.net

INV0052586
1268411

**WIRE INSTRUCTIONS:**
City National Bank, San Francisco, CA
Account No: 432-626008
ABA or Routing No.: 122-016-066

# looksmart

**Invoice**

(415) 348-7564
billing@looksmart.net

| WeBoost | WeBoost |
|---|---|
| Alessandro Cavallo | Alessandro Cavallo |
| Viale Bruno Buozzi 102 | Viale Bruno Buozzi 102 |
| Rome 00197 | Rome 00197 |
| Italy | Italy |

| Invoice No. | PO No. | Customer No. | Sales Rep | Invoice Date | Due Date | Account ID |
|---|---|---|---|---|---|---|
| INV0052644 | | 1288411 | | 04/30/12 | 05/30/12 | |

| Clicks | Product | | CPC | Cost |
|---|---|---|---|---|
| 1217301 | April 2012--Looklistings:WeBoost | | 0.01000 | 12,179.37 |

**REMIT ADDRESS:**
LookSmart, Ltd.
55 2nd Street, 7th Floor
San Francisco, CA
94105

| | |
|---|---|
| Subtotal | $12,179.37 |
| Agency Discount | $0.00 |
| Other | 0.00 |
| Total Due | $12,179.37 |

**BILLING AND PAYMENTS:**
To pay by credit card, please call: (415) 348-7573
(Please do not send credit card information by email)

For billing questions, please email: billing@looksmart.net

INV0052644
1288411

**WIRE INSTRUCTIONS:**
City National Bank, San Francisco, CA
Account No: 432-626008
ABA or Routing No.: 122-016-066

# looksmart

(415) 348-7564
billing@looksmart.net

| WeBoost | WeBoost |
|---------|---------|
| Alessandro Cavallo | Alessandro Cavallo |
| Viale Bruno Buozzi 102 | Viale Bruno Buozzi 102 |
| Rome 00197 | Rome 00197 |
| Italy | Italy |

| Invoice No. | PO No. | Customer No. | Sales Rep | Invoice Date | Due Date | Account ID |
|-------------|--------|--------------|-----------|--------------|----------|------------|
| INV0052710 | | 1288411 | | 05/31/12 | 06/30/12 | |

| Clicks | Product | | CPC | Cost |
|--------|---------|---|-----|------|
| 876464 | May 2012--Looklistings:WeBoost | | 0.01000 | 8,770.54 |

| | | |
|---|---|---|
| **REMIT ADDRESS:** | Subtotal | $8,770.54 |
| LookSmart, Ltd. | Agency Discount | $0.00 |
| 55 2nd Street, 7th Floor | Other | 0.00 |
| San Francisco, CA | **Total Due** | **$8,770.54** |
| 94105 | | |

**BILLING AND PAYMENTS:**
To pay by credit card, please call: (415) 348-7573
(Please do not send credit card information by email)

For billing questions, please email: billing@looksmart.net

INV0052710
1288411

**WIRE INSTRUCTIONS:**
City National Bank, San Francisco, CA
Account No: 432-626008
ABA or Routing No.: 122-016-066

## NOTICE TO PLAINTIFF

A Case Management Conference is set for:

DATE: MAR-05-2014

TIME: 10:30AM

PLACE: **Department 610**
**400 McAllister Street**
**San Francisco, CA 94102-3680**

All parties must appear and comply with Local Rule 3.

CRC 3.725 requires the filing and service of a case management statement form CM-110 no later than 15 days before the case management conference.

However, it would facilitate the issuance of a case management order

**without an appearance** at the case management conference if the case management statement is filed, served and lodged in Department 610

twenty-five (25) days before the case management conference.

Plaintiff must serve a copy of this notice upon each party to this action with the summons and complaint. Proof of service subsequently filed with this court shall so state.

### ALTERNATIVE DISPUTE RESOLUTION POLICY REQUIREMENTS

IT IS THE POLICY OF THE SUPERIOR COURT THAT EVERY CIVIL
CASE PARTICIPATE IN EITHER MEDIATION, JUDICIAL OR NON-
JUDICIAL ARBITRATION, THE EARLY SETTLEMENT PROGRAM OR
SOME SUITABLE FORM OF ALTERNATIVE DISPUTE RESOLUTION
PRIOR TO A TRIAL.
(SEE LOCAL RULE 4)

Plaintiff must serve a copy of the Alternative Dispute Resolution Information Package on each defendant along with the complaint. All counsel must discuss ADR with clients and opposing counsel and provide clients with a copy of the Alternative Dispute Resolution Information Package prior to filing the Case Management Statement.

**[DEFENDANTS: Attending the Case Management Conference does not take the place of filing a written response to the complaint. You must file a written response with the court within the time limit required by law. See Summons.]**

Superior Court Alternative Dispute Resolution Coordinator
400 McAllister Street, Room 103
San Francisco, CA 94102
(415) 551-3876

See Local Rules 3.3, 6.0 C and 10 B re stipulation to judge pro tem.

CM-010

ATTORNEY OR PARTY WITHOUT ATTORNEY (Name, State Bar number, and address):
HOLMES, TAYLOR & JONES LLP
Matthew D. Taylor (SBN 220032)
801 S. Figueroa Street, Suite 2170
Los Angeles, CA 90017
TELEPHONE NO.: 213-985-2200       FAX NO.:
ATTORNEY FOR (Name): Plaintiff WEBOOST MEDIA, S.R.L.

FOR COURT USE ONLY

**F I L E D**
Superior Court of California
County of San Francisco

OCT. 03 2013

CLERK OF THE COURT
BY _____Mary An Moran_____
Deputy Clerk

SUPERIOR COURT OF CALIFORNIA, COUNTY OF **SAN FRANCISCO**
STREET ADDRESS: 400 McAllister Street
MAILING ADDRESS: (Same)
CITY AND ZIP CODE: San Francisco, CA 94102-4514
BRANCH NAME: Civic Center Courthouse

CASE NAME: WEBOOST MEDIA S.R.L. v. LOOKSMART, LTD.

| CIVIL CASE COVER SHEET | | Complex Case Designation | CASE NUMBER: |
|---|---|---|---|
| ☒ Unlimited (Amount demanded exceeds $25,000) | ☐ Limited (Amount demanded is $25,000 or less) | ☐ Counter  ☐ Joinder | CGC 13-534683 |
| | | Filed with first appearance by defendant (Cal. Rules of Court, rule 3.402) | JUDGE:   DEPT: |

*Items 1–6 below must be completed (see instructions on page 2).*

1. Check one box below for the case type that best describes this case:

| Auto Tort | Contract | Provisionally Complex Civil Litigation |
|---|---|---|
| ☐ Auto (22) | ☒ Breach of contract/warranty (06) | (Cal. Rules of Court, rules 3.400–3.403) |
| ☐ Uninsured motorist (46) | ☐ Rule 3.740 collections (09) | ☐ Antitrust/Trade regulation (03) |
| **Other PI/PD/WD (Personal Injury/Property Damage/Wrongful Death) Tort** | ☐ Other collections (09) | ☐ Construction defect (10) |
| ☐ Asbestos (04) | ☐ Insurance coverage (18) | ☐ Mass tort (40) |
| ☐ Product liability (24) | ☐ Other contract (37) | ☐ Securities litigation (28) |
| ☐ Medical malpractice (45) | **Real Property** | ☐ Environmental/Toxic tort (30) |
| ☐ Other PI/PD/WD (23) | ☐ Eminent domain/Inverse condemnation (14) | ☐ Insurance coverage claims arising from the above listed provisionally complex case |
| **Non-PI/PD/WD (Other) Tort** | ☐ Wrongful eviction (33) | types (41) |
| ☐ Business tort/unfair business practice (07) | ☐ Other real property (26) | **Enforcement of Judgment** |
| ☐ Civil rights (08) | **Unlawful Detainer** | ☐ Enforcement of judgment (20) |
| ☐ Defamation (13) | ☐ Commercial (31) | **Miscellaneous Civil Complaint** |
| ☐ Fraud (16) | ☐ Residential (32) | ☐ RICO (27) |
| ☐ Intellectual property (19) | ☐ Drugs (38) | ☐ Other complaint (not specified above) (42) |
| ☐ Professional negligence (25) | **Judicial Review** | **Miscellaneous Civil Petition** |
| ☐ Other non-PI/PD/WD tort (35) | ☐ Asset forfeiture (05) | ☐ Partnership and corporate governance (21) |
| **Employment** | ☐ Petition re: arbitration award (11) | ☐ Other petition (not specified above) (43) |
| ☐ Wrongful termination (36) | ☐ Writ of mandate (02) | |
| ☐ Other employment (15) | ☐ Other judicial review (39) | |

2. This case ☐ is ☒ is not complex under rule 3.400 of the California Rules of Court. If the case is complex, mark the factors requiring exceptional judicial management:
   a. ☐ Large number of separately represented parties   d. ☐ Large number of witnesses
   b. ☐ Extensive motion practice raising difficult or novel   e. ☐ Coordination with related actions pending in one or more courts issues that will be time-consuming to resolve        in other counties, states, or in a federal court
   c. ☐ Substantial amount of documentary evidence   f. ☐ Substantial postjudgment judicial supervision

3. Remedies sought (check all that apply): a. ☒ monetary  b. ☐ nonmonetary; declaratory or injunctive relief   c. ☒ punitive
4. Number of causes of action (specify): Seven (7)
5. This case ☐ is ☒ is not a class action suit.
6. If there are any known related cases, file and serve a notice of related cases. (You may use form CM-015.)
Date: September 30, 2013
Matthew D. Taylor
_____(TYPE OR PRINT NAME)_____                ▶ _____
                                                       (SIGNATURE OF PARTY OR ATTORNEY FOR PARTY)

**NOTICE**
- Plaintiff must file this cover sheet with the first paper filed in the action or proceeding (except small claims cases or cases filed under the Probate Code, Family Code, or Welfare and Institutions Code). (Cal. Rules of Court, rule 3.220.) Failure to file may result in sanctions.
- File this cover sheet in addition to any cover sheet required by local court rule.
- If this case is complex under rule 3.400 et seq. of the California Rules of Court, you must serve a copy of this cover sheet on all other parties to the action or proceeding.
- Unless this is a collections case under rule 3.740 or a complex case, this cover sheet will be used for statistical purposes only.
Page 1 of 2

Form Adopted for Mandatory Use
Judicial Council of California
CM-010 [Rev. July 1, 2007]

**CIVIL CASE COVER SHEET**

Cal. Rules of Court, rules 2.30, 3.220, 3.400–3.403, 3.740;
Cal. Standards of Judicial Administration, std. 3.10

BY FAX



## look smart
S E A R C H   M A R K E T I N G

Demand Quality. Expect Results.

### TERMS AND CONDITIONS (as of July 22, 2009) - ADS (COST PER CLICK)

#### 1. Introduction

These Terms and Conditions are entered into by you ("Advertiser") and LookSmart, Ltd. ("LookSmart") regarding the display and distribution of advertisement(s) by LookSmart ("Advertisements") These Terms and Conditions together with any executed insertion order (an "Insertion Order") will be known as the "Agreement". The display and distribution of Advertisements will also be subject to the policies and requirements set forth in the LookSmart Advertiser Center, currently located at https://adcenter.looksmart.com/help/faq#terms, as modified from time to time by LookSmart. By continuing to allow LookSmart to display and distribute Advertisements after such modified Terms and Conditions have been posted, you agree to these Terms and Conditions, as modified.

#### 2. Advertisements and Advertising Content

LookSmart will display the Advertisements, text links, graphical links, or other advertising content provided or approved by Advertiser together with the related keywords (the "Advertising Content"). Advertiser agrees that its Advertisements will conform to LookSmart's specifications and editorial guidelines located at https://adcenter.looksmart.com/help/faq#guidelines. Advertiser is solely responsible for creating the Advertising Content and Advertiser represents that it will choose keywords that do not violate any third party's trademarks, other intellectual property rights or other rights and/or will obtain licenses to use any third party trademarks as keywords. Advertiser grants to LookSmart and members of the LookSmart Network (as defined below) (i) the right to display, perform, transmit and promote the Advertising Content and to make internal copies as necessary to perform the foregoing; and (ii) users of LookSmart's distribution network members' websites (collectively, the "LookSmart Network") the right to access and use the Advertising Content and any content and/or services directly linked to the Advertising Content. LookSmart and LookSmart Network members may reject or remove any particular Advertisement or Advertising Content for any or no reason.

#### 3. Distribution

Advertiser understands that the Advertisements may appear on various site(s) within the LookSmart Network. The breadth of distribution of the Advertising Content may change during the term of this Agreement for any reason or no reason, including that LookSmart may change the members of the LookSmart Network from time to time without notice, and LookSmart may adopt or discontinue one or more modes of distribution or may change or discontinue sites, site pages or methods or modes of advertisement delivery. Because of the variety of types of distribution on the LookSmart Network and its frequent changes, we cannot guarantee that your Advertisement(s) will appear in any particular type of placement, or position, or that it will be displayed in any particular context or in response to any particular behavior. LookSmart will discount your bid(s) to the greatest extent possible while still achieving the highest possible position for your Advertisements (given your bid amount) on the LookSmart Network, if possible. LookSmart cannot ensure the correct bid pricing to

achieve the highest possible position (given your bid amount). In all cases LookSmart will not exceed Advertiser's maximum bid(s). With respect to keyword-targeted Advertisements, Advertising Content may appear for the specific keywords Advertiser selects, as well as for variations on those keywords, as determined by LookSmart's matching technology.

#### 4. Term; Cancellation or Termination

For accounts with an Insertion Order, the term of this Agreement will be set forth in the Insertion Order. If there is no Insertion Order, the term will end when terminated by either party in accordance with the terms and conditions of this Agreement. Unless otherwise set forth in the relevant Insertion Order, either party may terminate the Agreement at any time for any reason or no reason upon giving written notice to the other party, with such termination to be effective as soon as LookSmart can remove all of Advertising Content from the LookSmart Network, but no later than five (5) business days after a party gives written notice. LookSmart may terminate this Agreement immediately with or without notice to Advertiser (i) if LookSmart is unable to successfully charge Advertiser's credit card for any amount described in Section 5, for credit card accounts; or (ii) if any amount invoiced to Advertiser has not been paid when due, for invoice accounts.

#### 5. Billing; Payment

##### a. Invoice Accounts

LookSmart will invoice Advertiser monthly for clicks on Advertising Content. Payment in full will be due thirty (30) days after the date of the invoice. If LookSmart, in its sole discretion, determines that Advertiser's credit condition warrants, LookSmart may require additional information and/or advance payment. If Advertiser wishes to increase or exceed the budget amount in an approved Insertion Order, Advertiser will submit an electronic mail message to LookSmart to document Advertiser's agreement to such increase.

##### b. Credit Card Accounts

Advertiser must maintain a valid credit card in its online account. Advertiser authorizes LookSmart to charge its credit card for all charges to its account, including any recurring payments. Advertiser understands that this authorization is valid until the effective time of termination of this Agreement. Advertiser is responsible for maintaining up-to-date credit card information in its account. If Advertiser's credit card expires, Advertiser will continue to be responsible for payment of charged amounts until Advertiser either changes its credit card information or terminates the Agreement. Advertiser agrees to retain, either by printing or otherwise saving, a copy of this Agreement, which provides the terms of this authorization. LookSmart will charge amounts to Advertiser's credit card based on the amount of clicks on its Advertisements as determined by LookSmart's click tracking technology. If LookSmart is unable to charge Advertiser's credit card because Advertiser's credit card is no longer valid, or for any other reason, LookSmart may in its sole discretion (i) reduce Advertiser's campaign budgets so that Advertiser's remaining account budget is

less than the remaining account balance; (ii) suspend Advertiser's Advertisements from the LookSmart Network; or (iii) terminate this Agreement in accordance with Section 4.

**c. All Accounts**

All fees described in this Agreement exclude any and all sales, use, property, license, value added, excise or similar tax (and any related duties, tariffs, imposts and similar charges) that may be due as a result of the transactions contemplated by this Agreement. Advertiser will be responsible for paying all such taxes and charges. Advertiser will have thirty (30) business days from the date of an invoice or charge to dispute that invoice or charge; after that time Advertiser will be deemed to have waived any objections to the invoice or charge. Invoices and charges will be determined solely based on LookSmart's click tracking technology. Advertiser may use a third party to track clicks on Advertisements. In the event that the third party's measurements for clicks on Advertisements differ from those tracked by LookSmart by more than ten (10) percent over an invoiced or charged period, within the thirty (30) day period following the end of such period LookSmart and Advertiser will participate in a reconciliation effort between the third party and LookSmart regarding the discrepancy, make a good faith effort to resolve such discrepancy and, if any changes are made to LookSmart's tracking as a result, amend the invoice or credit the account accordingly. Refunds (if any) are at the discretion of LookSmart and will be granted only in the form of advertising credit on the LookSmart Network. Advertiser will dispute any invoice in accordance with this section, and agrees not to dispute any charges with its credit card company or otherwise initiate chargeback proceedings if such dispute or chargeback would cause Advertiser to be in violation of this section.

**6. Collections**

In the event of any legal action to collect amounts owed by Advertiser under this Agreement, LookSmart will be entitled to reimbursement for all costs incurred, including reasonable court costs and attorney's fees and expenses.

**7. Online Account**

LookSmart will provide a password-protected online account to allow Advertiser to monitor the performance of campaigns and make changes to elements of campaigns. Advertiser is solely responsible for controlling access to the password-protected account and for maintaining the confidentiality of the password, and will be required to pay for any charges or traffic fees incurred as a result of changes made through the online account.

**8. Limitation of Liability**

EXCEPT WITH RESPECT TO OBLIGATIONS UNDER SECTIONS 9 and 12 BELOW, (I) UNDER NO CIRCUMSTANCES WILL EITHER PARTY BE LIABLE TO THE OTHER PARTY, WHETHER IN CONTRACT, TORT OR OTHERWISE, FOR INDIRECT, INCIDENTAL, CONSEQUENTIAL, SPECIAL OR EXEMPLARY DAMAGES (EVEN IF SUCH DAMAGES ARE FORESEEABLE, AND WHETHER OR NOT THE INDEMNIFIED PARTY HAS BEEN ADVISED OF THE POSSIBILITY OF SUCH DAMAGES) ARISING FROM THIS AGREEMENT AND (II) NEITHER PARTY WILL BE LIABLE TO THE OTHER PARTY FOR MORE

THAN THE TOTAL AMOUNT PAID OR PAYABLE (PLUS APPLICABLE FEES AND COSTS) TO LOOKSMART UNDER THIS AGREEMENT.

**9. Indemnification**

Each party agrees to indemnify, defend and hold harmless the other party, its subsidiaries, affiliates, partners, officers, directors, employees and agents, from any and all liability, damages and settlements due to third party claims or causes of action, including reasonable legal fees and expenses (collectively "Liabilities"), arising out of or related to the indemnifying party's breach of any of its representations or warranties in this Agreement. Advertiser agrees to indemnify, defend and hold harmless LookSmart, its subsidiaries, affiliates, partners, officers, directors, employees and agents, from any Liabilities arising from all content or material on any website associated with any Advertising Content, Advertiser's website(s) and Advertiser's order processing, billing, fulfillment, shipment, collection and other customer support associated with any products or services offered, sold or licensed through any website associated with any Advertising Content.

**10. Representations and Warranties**

Advertiser represents and warrants that (i) Advertiser holds the necessary corporate power, permits and rights to grant all right granted to LookSmart under this Agreement; (ii) neither the use, reproduction, distribution, or transmission of the Advertising Content, nor any material or service available on or through Advertiser's website will (a) violate any foreign, federal, state or local law or regulation or any rights of any third party, (b) contain any material that is harmful, abusive, hateful, obscene or threatening nor (c) constitute false or fraudulent advertisement and that a reasonable basis exists for all claims concerning the performance of products and services offered; (iii) the Advertising Content complies with LookSmart's advertising guidelines (https://adcenter.looksmart.com/help/faq#guidelines); (iv) Advertiser's execution of this Agreement, and its performance of obligations and duties hereunder, will not violate any agreement to which Advertiser is a party or is otherwise bound; and (v) Advertiser possesses all authorizations, approvals, consents, licenses, permits, certificates or other rights and permissions necessary to display its website(s) and purchase, display and distribute (and allow others to display and distribute) Advertising Content for such website(s).

**11. LookSmart Representations and Warranties**

LookSmart represents and warrants that it holds the necessary rights to use the LookSmart Network for display and reproduction of the Advertising Content for the purpose of this Agreement. LOOKSMART MAKES NO OTHER REPRESENTATIONS, AND HEREBY EXPRESSLY DISCLAIMS, ALL WARRANTIES, EXPRESS OR IMPLIED, REGARDING LOOKSMART'S SERVICES OR ANY PORTION THEREOF, INCLUDING ANY IMPLIED WARRANTY OF MERCHANTABILITY, NONINFRINGEMENT OR FITNESS FOR A PARTICULAR PURPOSE AND ANY IMPLIED WARRANTIES ARISING FROM COURSE OF DEALING OR COURSE OF PERFORMANCE. Without limiting the generality of the foregoing, LookSmart specifically disclaims any warranty regarding (i) the number of persons who will access the Advertising Content and (ii)

any benefit Advertiser might obtain from including the Advertising Content within the LookSmart Network. The performance estimates, if any, on the Insertion Order are not guarantees, and actual performance may be higher or lower than the estimates provided. LookSmart cannot warrant that the display of the Advertising Content or the link to the advertiser web content will be uninterrupted or error-free. LookSmart cannot guarantee that an Advertisement will be displayed in response to any given keyword search. LookSmart specifically disclaims. any warranty regarding the location and prominence of Advertisements within the LookSmart Network, including within any search results displayed thereon.

## 12. Confidentiality
The terms and conditions of this Agreement, as well as any click-through or user data derived from this Agreement or its performance, are confidential to LookSmart, and Advertiser agrees not to disclose them to any third party under any circumstances, except as required by law and with prior written notice to LookSmart. Neither party will issue any press release or public announcement of the terms or existence of this Agreement without the prior written consent of the other party, except that LookSmart may reference Advertiser as a client and include Advertiser's name in marketing materials.

## 13. Jurisdiction; Choice of Law
The parties irrevocably consent to the exclusive jurisdiction of the state and federal courts located in San Francisco County, California in connection with any action arising under this Agreement. This Agreement will be interpreted, construed and enforced in all respects in accordance with laws of California, without regard to its conflicts of laws provisions or to the actual state or country of incorporation or residence of the parties.

## 14. Miscellaneous
In the event of any express conflict between the provisions of the Insertion Order and these Terms and Conditions, the provisions of the Insertion Order will apply. LookSmart will not be liable for delay or default in displaying Advertisements if such delay or default is caused by conditions beyond its reasonable control including without limitation casualty, network or telecoms failures and acts of God. In the event that any provision of this Agreement conflicts with the law under which this Agreement is to be construed, or if any such provision is held invalid by a court with jurisdiction over the parties to this Agreement, such provision will be deemed to be restated to reflect as nearly as possible the original intentions of the parties in accordance with applicable law, and the remainder of this Agreement will remain in full force and effect. The failure of either party to insist upon or enforce strict performance by the other party, of any provision of this Agreement, or to exercise any rights under this Agreement, will not be construed as a waiver or relinquishment of such party's right to enforce any such provision or right in any other instance. Advertiser may not assign this Agreement, in whole or in part. LookSmart and Advertiser are independent contractors, and neither LookSmart nor Advertiser is an agent, representative or partner of the other. Except as set forth in Section 1 above, this Agreement may only be modified, or any rights under it waived, by a written document or online agreement executed by both parties.

If Advertiser and LookSmart have signed a separate agreement for the delivery of relevant advertising that is still in effect, then in the event of any express conflict between the provisions of that other agreement and these Terms and Conditions, such provisions of this Agreement will govern.

| COMPANY: WEBOOST S.r.l. | LookSmart, Ltd. |
|---|---|
| By: ALESSANDRO GAWILO | By: |
| Signature: V.le Bruno Buozzi 102 | Signature: |
| Title: CEO    00197 ROMA | Title: |
| Date: 7.10.2011 | Date: $\frac{7}{31}/10$ $3721$ |

| From: | Marshall Jensen <mjensen@looksmart.net> |
| Sent: | Saturday, October 26, 2013 8:24 PM |
| To: | William Reilly |
| Subject: | FW: Summons received from WeBoost |
| Attachments: | WeBoost Summons received 2013-10-17.pdf; 030113 WeBoost Legal Letter.pdf |

Bill:

As discussed, attached (two files) is the recent WeBoost summons / complaint, as well as an initial letter sent to LookSmart back in March. As far as I know, no one at LookSmart responded in any manner to the March letter. They chose to ignore it and then the summons showed up last week. I appreciate you initial thoughts and read on the situation. Of course we do have additional materials - internal records on how traffic / clicks were routed, etc. But I thought it made sense to start with just the two attached files.

In addition to your high-level thoughts on the best approach for the case and how you would price your services, below is what I feel may be two gating issues to assess - or at least these are the areas where I personally feel I currently don't have sufficient insight:

1) Procedurally and tactically, how do we best get an extension? I guess I know we can, and I guess it starts with a call to plaintiffs counsel, etc. But we need to do it. No way, if we really need to respond / document our defense would 30 days (starting on 10/17 I believe) be enough time. Pulling data, analysis and presenting the records would take time. Perhaps largely, internal LookSmart staff's time and not yours, but either way time.

How much extension time can / should we request? How do we best do this while, with a verbal conversation, simultaneously probing plaintiff's counsel for what ammo they truly believe they have (the written allegations are pretty general) and where they might settle, etc.

2) In this context, what would it take to prove an "intentional tort"?. WeBoost's case (or at a minimum at least claiming damages above $110K) appears to largely hinge on stating Section 8 of LookSmart's standard Terms of Service is not valid under California law. They point out we can't agree to contractually cap damages when an "intentional tort" is involved. Sure, but, right or wrong, I think the few people still at LookSmart who were around at LookSmart during the relevant period sincerely believe there was no intentional fraud or misrepresentation of any sort. At all. LookSmart just sold not top-notch product.

To continue my analogy, yes, LookSmart sold WeBoost Grade [B or C] beef - but basically at prices that generally reflected grade [ B or C] beef and without any representation they were selling Grade A. Then, when WeBoost resold the Beef to Google / Ad Sense, sometimes at a 400-500% mark-up, eventually Google complained and penalized them. But LookSmart was not telling WeBoost to represent to Google they were buying Grade A. Nothing on that scenario would be "Intentional" or "Fraudulent". Or at least that seems to be the current theory internally at LookSmart. I am still working with them to sweep archived emails of current and ex-employees for a reference such as "Hey WeBoost, we are happy to sell you this Grade A beef which we know Google will love to purchase at a 400% mark-up - special deal for you". I am sarcastic here to some degree in the sense that, real world, if LookSmart believed the traffic were worth a 400% mark-up to Google, they would have charged more. LookSmart does price differently for Grade A beef v. Grade [B/C]. But, unfortunately, my analogy kind of breaks down here. There is no USDA-set standard for traffic

1

grading (defining Grade A v. B, etc.). And metrics like click through ratios which, conceptually, should define the distinction between "Grade A" and "Grade B" are in truth pretty subjective.

The bottom line is LookSmart employees seem to believe, while they definitely sold "Grade [B/C]" meat, this is just a traffic "arbitrager" (maintains websites for traffic but not even really attempting to sell product / services) trying to shake-down LookSmart when, essentially, they got caught by Google selling traffic to Google deemed not to meet Google's requirements (which also are somewhat subjective). I think it is fair to say, over the relevant time period, Google cracked down on many parties in this respect. It was / is a macro trend. But, again, I am essentially just repeating the views of a few LookSmart account reps, etc. I am still trying to gather the relevant information to form a meaningful personal opinion.

I guess that is it. let's find a time this week to speak via phone or meet in-person at you office? Tuesday and Wednesday are a little challenging for me. I have meetings in Palo Alto those days but might have a chance to meet later in the day in SF. Other days are more open.

By the way, while I am obviously currently working on an "embedded" basis with LookSmart and therefore contacting you solely in this capacity. LookSmart would be your client as you know. That said, here is a link to our consulting practice ; http://dmwhexagon.com/services. As you can see, along with one of my two partners, I am attorney by training. But surely not a litigator. And our business model to not to engage in a purely legal capacity but "interdisciplinary" - I thought our spin / shtick on the website might clarify a bit how I approach working with clients like LookSmart.

Thanks again for your time, Bill.

Marshall
415-370-7887

# Law Office of Matthew D. Taylor

801 S. Figueroa St., Suite 2170
Los Angeles, California 90017
T 213-254-2435/ matthew.taylor@mdtesq.com

March 1, 2013

By Email and U.S. Mail

Looksmart, Ltd.
Attn: Legal Department
555 California Street
Floor 3, Unit 325
San Francisco, CA 94101

To Whom It May Concern:

I have been retained to represent WeBoost S.r.l. (hereafter "WeBoost") in connection with a dispute that has arisen under that certain online advertising agreement dated October 31, 2011 between Looksmart and WeBoost (hereafter, the "Agreement.") A copy of the Agreement is attached hereto for your reference.

Pursuant to the Agreement and certain Insertion Orders sent by WeBoost to Looksmart pursuant to the Agreement, WeBoost purchased a series of on-line traffic from Looksmart for eventual resale by WeBoost to third parties such as Google and Yahoo!. Unfortunately, the overwhelming majority of the on-line traffic that WeBoost purchased from Looksmart under the Agreement has turned out to be fraudulent, specifically "click-fraud" traffic. WeBoost has successfully traced the source of this "click-fraud" traffic to one specific server account that can be directly linked to Looksmart and has little doubt of their ability to prove Looksmart's role in this fraud should it become necessary to do so.

As a direct result of Weboost's purchase of this fraudulent traffic from Looksmart, WeBoost has incurred significant economic losses as more fully described herein. As an initial matter, WeBoost seeks immediate reimbursement of the roughly €77,000 ($110,000) that it has already paid to Looksmart pursuant to the Agreement. WeBoost has also been forced to incur downward adjustments by Google, its most important client, totaling approximately €194,000 ($278,000) and to pay Google approximately €83,000 ($119,000) as general compensation for fraudulent click traffic that WeBoost purchased from Looksmart and subsequently resold to Google.

In addition to these direct out-of-pocket damages that have already been incurred, the click fraud has resulted in significant reputational damage to WeBoost which will continue to harm WeBoost well into the future. The company currently estimates these future damages to be approximately €200,000 ($287,000). The most significant portion of these damages are a result of Google's decision to "declass" WeBoost to a "standard" rather than "premium" level client based upon the fraudulent traffic that was sold to Google by WeBoost and then resold by WeBoost to Google.

Google's declassification has had the effect of permanently blacklisting WeBoost as a provider of fraudulent on-line traffic and subjecting them to additional fees and higher charge back rates going forward. As Google is WeBoost's most significant client, these future damages are substantial.

While it is WeBoost's sincere hope that this dispute can be amicably resolved without the need for filing suit, if no such resolution is reached and WeBoost is forced to commence litigation, Looksmart will be liable to WeBoost for the aforementioned damages based upon legal theories of breach of contract, breach of the covenant of good faith and fair dealing, fraud, unfair business practices and related claims. The sort of clear-cut fraud alleged here also brings with it a substantial risk of punitive damages against Looksmart should the case proceed to trial.

Moreover, any attempt by Looksmart to rely on the provisions of Section 8 of the Agreement in order to limit its liability is misplaced. Although this provision purports to limit Looksmart's liability, whether grounded in tort or contract law, to no more than the total amount paid by WeBoost to Looksmart under the Agreement, such efforts to contractually limit intentional tort liability are unenforceable in California.

California Civil Code § 1668 provides that "[a]ll contracts which have for their object, directly or indirectly, to exempt anyone from responsibility for his own fraud, or willful injury to the person or property of another, or violation of law, whether willful or negligent, are against the policy of the law." Thus, it is our opinion that it is highly unlikely that a court would agree to limit any consequential damages owed by Looksmart to WeBoost pursuant to this provision and that Looksmart would be liable to WeBoost for all damages naturally flowing from Looksmart's fraud, in a total amount presently estimated to be in excess of $750,000.

Please contact me at your earliest convenience to discuss these matters further. If no response to this letter is received within 10 days, WeBoost intends to immediately file suit.

Very truly yours,

Matthew D. Taylor