**HOLMES, TAYLOR & JONES LLP**
Matthew D. Taylor (SBN 220032)
matthew.taylor@htjlaw.com
Andrew B. Holmes (SBN: 185401)
abholmes@htjlaw.com
801 South Figueroa Street, Suite 2170
Los Angeles, California 90017
Tel: (213) 985-2200
Fax: (213) 973-6282

Attorney for Plaintiff WEBOOST MEDIA S.R.L.

# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF CALIFORNIA
### SAN FRANCISCO DIVISION

| | |
|---|---|
| WEBOOST MEDIA S.R.L., a Società a responsabilità limitata,<br><br>Plaintiff,<br><br>vs.<br><br>LOOKSMART LTD., a Delaware corporation, and DOES 1 through 100,<br><br>Defendants. | Case No. 3:13-CV-05304 SC<br><br>[Hon. Samuel Conti]<br><br>**PLAINTIFF'S OPPOSITION TO MOTION TO DISMISS OR IN THE ALTERNATIVE PARTIAL SUMMARY JUDGMENT**<br><br>Date: February 7, 2014<br>Time: 10:0 a.m.<br>Courtroom: 1 (17th Floor) |

Holmes, Taylor & Jones LLP
801 South Figueroa Street, Suite 2170
Los Angeles, California 90017

# MEMORANDUM OF POINTS AND AUTHORITIES

## I. INTRODUCTION

Defendant's motion to dismiss is premised on the notion that they can twist an ambiguous exculpatory clause, contained in their own, one-sided, form agreement, to shield themselves from all liability arising from their alleged commission of fraud and other intentional torts.

Not only does the contractual provision at issue – Section 8 of LookSmart's standard "Terms and Conditions" – not say what LookSmart claims it says, but to the extent that it attempts to limit Plaintiff's recovery of damages arising from any of the intentional torts alleged, it directly violates California Civil Code § 1668 and is therefore unenforceable.

Moreover, simply taking LookSmart's Terms and Conditions at face value, the exculpatory clause specifically exempts any liability between the parties arising under the indemnification provision, which itself makes LookSmart liable for "any and all liability, damages and settlements due to third-party claims . ." It is precisely this sort of "third-party claim," specifically the nearly $400,000 in unilateral deductions made by Google to Plaintiff's AdSense account, for which WeBoost is now seeking indemnification from LookSmart. As a result, Section 9 is not even implicated by the present lawsuit.

LookSmart's motion is without merit and WeBoost respectfully requests that the Court deny the motion in its entirety.

## II. FACTUAL OVERVIEW

Plaintiff WeBoost Media, S.r.l. ("WeBoost) is an on-line advertising company based in Rome, Italy. (Complaint ¶ 1.) On or about October 31, 2011, WeBoost entered into a commercial relationship with defendant LookSmart, Ltd. ("LookSmart"), also an online advertiser, by which LookSmart agreed to use its own family of websites to display clickable advertisements promoting various WeBoost websites. (Complaint ¶ 17.)

WeBoost agreed to pay LookSmart a "pay-per-click" fee based upon the total number of clicks generated on LookSmart sites, with LookSmart sending WeBoost monthly invoices

1  detailing the total number of clicks generated by these advertisements and the total amount
2  owing as a result. (*Id*.) The price paid by WeBoost for each click varied based upon
3  fluctuating market conditions but generally ranged between $.01 and $.05. (*Id*.) As part of
4  this transaction, WeBoost executed a copy of LookSmart's standard "Terms and
5  Conditions." (*Id*.)

   Between approximately December 2011 and June 2012 WeBoost paid LookSmart a total of $105,273.92 pursuant to seven (7) separate invoices that were sent to it by LookSmart. (Complaint ¶ 18.) At all times, WeBoost believed that it was paying LookSmart for legitimate, non-fraudulent "pay-per-click" traffic that had originated on various websites owned and operated by WeBoost. (*Id*.) In fact, the vast majority of pay-per-click traffic that WeBoost purchased from LookSmart was ultimately determined to be "click-fraud" traffic, which WeBoost alleges originated from LookSmart, itself. (Complaint ¶¶ 20-21.)

   "Click-fraud" is a form of fraud by which a person, automated script or computer program initiates a "click" on an online advertisement by imitating a legitimate online consumer. (Complaint ¶ 13.) Clicks generated by click-fraud do not truly reflect a potential customer who is actually interested in the product being advertised but rather are initiated for the sole purpose of generating the fees resulting from "pay-per-click" advertising. (*Id*.) WeBoost has alleged that LookSmart was fully aware that WeBoost was paying it for fraudulent traffic and that LookSmart actively concealed this fact from WeBoost. (Complaint ¶¶ 39-40.)

   Section 8 of LookSmart's standard "Terms and Conditions" provided, in relevant part, that:

   > EXCEPT WITH RESPECT TO OBLIGATIONS UNDER SECTIONS 9 AND 12 BELOW, (I) UNDER NO CIRCUMSTANCES WILL EITHER PARTY BE LIABLE TO THE OTHER PARTY, WHETHER IN CONTRACT, TORT OR OTHERWISE, FOR INDIRECT, INCIDENTAL, CONSEQUENTIAL, SPECIAL OR EXEMPLARY DAMAGES (EVEN IF SUCH DAMAGES ARE FORESEEABLE, AND WHETHER OR NOTE THE INDEMNIFIED PARTY HAS BEEN ADVISED OF THE POSSIBILTY OF SUCH DAMAGES) ARISING FROM THIS AGREEMENT AND (II) NEITHER PARTY WILL BE LIABLE TO THE OTHER PARTY FOR MORE THAN THE TOTAL

AMOUNT PAID OR PAYABLE (PLUS APPLICABLE FEES AND COSTS) TO LOOKSMART UNDER THIS AGREEMENT.

Section 9 of the Terms and Conditions, provided, in relevant part, that:

> Each party agrees to indemnify, defend and hold harmless the other party . . . from any and all liability, damages and settlements due to third party claims or causes of action, including reasonably legal fees and expenses (collectively "Liabilities") arising out of or related to the indemnifying party's breach of any of its representations or warranties in this Agreement.

## III. ARGUMENT

### A. Legal Standard On a Motion to Dismiss.

The Federal Rules of Civil Procedure govern the sufficiency of a pleading in federal actions, even those based on diversity jurisdiction. *FSLIC v. Texas Real Estate Counselors, Inc.* 955 F.2d 261, 269–270 (5th Cir. 1992). In federal actions based on state law claims (diversity or supplemental jurisdiction cases) although state law determines whether the claims exist and what defenses are recognized, the manner in which such claims or defenses are raised is governed by the Federal Rules. *Taylor v. United States*, 821 F.2d 1428, 1433 (9th Cir. 1987).

Pleadings in federal courts "must be construed so as to do justice." Fed. Rule Civ. Proc. 8(e). A complaint is sufficient if it gives the defendant "fair notice of what the ... claim is and the grounds upon which it rests." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). The Federal Rules are designed to minimize disputes over pleading technicalities. See *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (noting that "Rule 8 marks a notable and generous departure from the hyper-technical, code-pleading regime of a prior era."). In determining the sufficiency of a pleading, allegations of material fact are taken as true and construed in the light most favorable to the pleader. See *Erickson v. Pardus*, 551 U.S. 89, 94 (2007). "Each allegation must be simple, concise, and direct. No technical form is required." Fed. Rule Civ. Proc. 8(d)(1).

///
///
///
///

B.  Section 8 of The "Terms And Conditions" Agreement Between LookSmart and WeBoost Is Properly Interpreted As An Attempt By LookSmart To Limit WeBoost's Recovery Of Damages, Regardless of Which Cause of Action Gives Rise To Such Damages.

As a preliminary matter, WeBoost and LookSmart have dramatically different views as to the proper interpretation of Section 8 of the "Terms and Conditions" agreement. LookSmart argues that this provision effectively precludes WeBoost from asserting six (6) of the seven (7) causes of action presently alleged, and that with respect to the remaining causes of action for breach of contract, it serves to limit the total damages Plaintiff is allowed to recover to $105,273.92, the amount that Plaintiff has paid LookSmart to date.

However, the language of Section 8 simply doesn't support this interpretation. There is nothing in Section 8 indicating that claims against LookSmart arising under contract law should be treated differently from those arising under tort law or other applicable legal theories. In fact, quite to the contrary: Section 8 purports to exclude "indirect, incidental, consequential, special or exemplary damages" and specifically states that this exclusion should apply "whether in contract, tort or otherwise . . ."

LookSmart's argument that Section 8 acts to fully dispose of six causes of action against it only makes sense if it is interpreted to prohibit WeBoost from collecting *any* damages, whatsoever, from LookSmart. However, this interpretation would result in Section 8 being internally inconsistent. If part "I" of Section 8 precludes either party from recovering *any* type of damages from the other ("whether in contract, tort or otherwise") while part "II" limits the amount of damages recoverable to that amount "paid or payable" to LookSmart under the Agreement, the two subparts directly contradict each other.

A more sensible interpretation, and one which renders the provision internally coherent, is that Section 8 was intended by LookSmart to limit its liability, regardless of legal theory giving rise to such liability, to "the total amount paid or payable . . . to LookSmart under [the] agreement." This interpretation is consistent with California Civil

Code § 1652, which provides that "[r]epugnancy in a contract must be reconciled, if possible, by such an interpretation as will give some effect to the repugnant clauses . . ."

C. Under California Law, An Exculpatory Contract Cannot Be Used To Shield a Defendant from Liability From Intentional Conduct Such as Fraud or Other Intentional Torts.

Assuming that Plaintiff's interpretation is correct, and that Section 8 was intended by LookSmart to limit its liability, regardless of the legal theory giving rise to such liability, the question then becomes whether it is enforceable. Plaintiff contends it is not.

As observed in *Gardner v. Downtown Porsche Audi*, 180 Cal.App.3d 713, 716 (1986), "[t]raditionally the law has looked carefully and with some skepticism at those who attempt to contract away their legal liability for the commission of torts." This skepticism is codified in California Civil Code § 1668, which (unchanged since its adoption in 1872) provides that "[a]ll contracts which have for their object, directly or indirectly, to exempt anyone from responsibility for his own *fraud*, or *willful injury* to the person or property of another, or violation of law, whether willful or negligent, are against the policy of the law." Cal. Civ. Code § 1668 (italics added).

Although WeBoost recognizes that California courts have adopted the modern view that contracts exempting a party from liability for *ordinary negligence* are generally valid where no public interest is involved and no statute expressly prohibits it, courts have consistently held that there can be no exemption from liability for intentional wrong, gross negligence, or violation of law. See *Halliday v. Greene*, 244 Cal.App.2d 482, 488 (1966); *Farnham v. Superior Court (Sequoia Holdings, Inc.)* 60 Cal.App.4th 69, 71 (1997) (noting that "[c]ontractual releases of future liability for fraud and other intentional wrongs are invariably invalidated.")

Plaintiff has alleged a total of seven separate causes of action against LookSmart- only one of which- the fourth cause of action for Negligent Interference with Prospective Economic Advantage- is premised on proving *negligent*, as opposed to intentional, conduct.

Plaintiffs' third cause of action (fraudulent concealment), fifth cause of action (intentional interference with prospective economic advantage) and sixth cause of action (intentional interference with contractual relations) all allege that LookSmart acted intentionally, and as a result none of these claims can be dismissed based upon the language of Section 8. Nor can the amount of damages that Plaintiff is allowed to recover under these theories be limited.

Similarly, Plaintiff's seventh cause of action (violation of Cal. Bus & Prof. Code § 17200) is rooted in allegations of fraud, and as a result this claim, too, cannot reasonably be considered to arise from negligent conduct.

Although LookSmart's motion cites a host of California cases that it contends supports its argument that 6 of the 7 causes of action against it should be dismissed solely based upon the language of Section 8, these cases are unpersuasive. In *McCarn v. Pacific Bell Directory,* 3 Cal.App.4th 173, 181 (1992), the only issue before the court was whether a contractual provision between a small business owner and a telephone directory company limiting liability for errors and omissions in phone book advertising violated the public policy against releases for negligence in contracts involving the public interest. The court, finding that the contract at issue did not affect the *public interest*, affirmed the lower court's ruling of summary judgment. WeBoost does not contend that its agreement with LookSmart affects the public interest and therefore this case has no bearing on the present motion.

In *Appalachian Ins. Co. v. McDonnell Douglas Corp.*, 214 Cal.App.3d (1989), the only two causes of action asserted by the Plaintiff were those for negligence and strict liability, neither of which alleged intentional conduct by the defendant. Although the Court found that the exculpatory clause in that particular case protected the defendants from liability grounded in *negligence*, dismissal of the strict liability claim was based upon unrelated grounds.

In *CAZA Drilling (Calif.) Inc. v. TEG Oil & Gas U.S.A., Inc.*, 142 Cal.App.4th 453 (2006), the only causes of action asserted were for breach of contract and negligence and, again, no intentional torts were alleged. Other cases cited by LookSmart, including *Fritelli*

*v. 350 North Canon Drive, LP*, 202 Cal.All.4th 35, 44 (2011) and *Food Safety Net Services v. Eco Safe Systems USA*, 209 Cal.App.4th 1118, 1125 (2012) are equally silent as to the effect of exculpatory clauses relating to intentional conduct.

Again, what distinguishes the present case from the cited cases is that WeBoost's claims against LookSmart are grounded in allegations of fraud and other intentionally tortuous conduct. Specifically, WeBoost has alleged that LookSmart knowingly sold it fraudulent on-line traffic while attempting to pass it off for legitimate consumer traffic. Defendant cites no authority, because none exists, for the proposition that a party can shield itself from liability resulting from fraud or other intentional conduct by virtue of writing a one-sided contract of adhesion that purports to preclude such liability.

D. <u>Even Taking LookSmart's Terms and Conditions at Face Value, The Damages Sought By Plaintiffs Fall Within the Indemnification Exception.</u>

However, the Court need not even consider the enforceability of Section 8 if it finds that the damages sought by Plaintiff fall within the indemnification exception contained in Section 9 of LookSmart's Terms and Conditions. This exception applies here, and allows the very theories and damages alleged and prayed for by WeBoost. By its own terms, the exculpatory clause contained in Section 8 applies "[e]xcept with respect to obligations under Sections 9 and 12."

Section 9 provides, in relevant part, that "[e]ach party agrees to indemnify, defend, and hold harmless the other party . . . from any and all liability, damages and settlements due to third party claims or causes of action . . . arising out of or related to the indemnifying party's breach of any of its representations or warranties in this Agreement." Thus, if the damages sought by WeBoost arise from a "third party claim," which itself is "related to" "a breach of *any* of [LookSmart's] representations or warranties," Section 9 is implicated and Section 8 is inapplicable. This is precisely the situation here.

WeBoost has alleged that Google, a third-party, unilaterally deducted nearly $400,000 from its AdSense account (Complaint ¶¶ 21, 23-24.) These deductions are, in essence,

unilateral debits by Google from Plaintiff's virtual bank account, are the primary component of WeBoost's damages, and are a "third party claim."

The question then becomes whether these deductions are "related to" a breach of a representation by LookSmart. They are. In Section 5a of its Terms and Conditions, LookSmart represents that it "will invoice [WeBoost] for clicks on Advertising Content." The clear interpretation of this provision is that LookSmart will invoice WeBoost for legitimate clicks as opposed to those that were fraudulently generated. By invoicing WeBoost for fraudulent traffic, LookSmart has breached a representation in the agreement. And, it was this fraudulent traffic that led directly to the deductions by Google.

Thus, WeBoost submits that the exculpatory clause contained in Section 8 of the Terms and Conditions is not even implicated by the present action since each of the claims asserted by LookSmart fall within the Section 9 exception.

### E. A Motion to Dismiss Is Not The Proper Mechanism For Attempting to Limit Plaintiffs' Damages.

Although LookSmart does not seek to dismiss Plaintiff's cause of action for Breach of Contract, it does seek an order "limiting WeBoost's recovery, if any, to an amount less than or equal to $105,273.92," which is the amount paid by LookSmart to WeBoost to date pursuant to their on-line advertising arrangement. LookSmart bases this argument, like it's others, on the language of Section 8 of its Terms and Conditions. Regardless of the merits of this particular argument, it would be premature to impose this damages limitation at only the pleading stage of the proceedings.

A Rule 12(b)(6) motion is similar to the common law general demurrer—i.e., it tests the legal sufficiency of the *claim* or *claims* stated in the complaint. *Strom v. United States*, 641 F.3d 1051, 1067(9th Cir. 2011). For purposes of Rule 12(b)(6), "claim" means a set of facts that, if established, entitle the pleader to relief. *Bell Atlantic Corp. v. Twombly*, 550 U.S 544, 555 (2007).

Since LookSmart's argument with respect to WeBoost's breach of contract claim, even if successful, would not effectively dispose of the cause of action but would only limit the potential recovery, it is procedurally improper when considered as a motion to dismiss.

## IV. CONCLUSION

In conclusion, Plaintiff WeBoost Media, S.r.l. respectfully requests that the Court deny LookSmart, Ltd.'s motion to dismiss in its entirety. If the Court is inclined to grant any portion of LookSmart's motion, WeBoost respectfully requests that it be granted leave to amend to correct any perceived pleading deficiencies.

Dated: January 17, 2014    **HOLMES, TAYLOR & JONES LLP**


　　／s/ *Andrew B. Holmes*
Andrew B. Holmes
Attorneys for Plaintiff
WEBOOST MEDIA S.R.L.