United States District Court
For the Northern District of California

1
2
3
4
5
6                    IN THE UNITED STATES DISTRICT COURT
7                  FOR THE NORTHERN DISTRICT OF CALIFORNIA
8
                                    )  Case No. C 13-5304 SC
9                                   )
   WEBOOST MEDIA S.R.L.,            )  ORDER RE: MOTION TO DISMISS AND
10                                  )  MOTION FOR PARTIAL SUMMARY
            Plaintiff,              )  JUDGMENT
11                                  )
       v.                           )
12                                  )
   LOOKSMART LTD. and DOES 1-100,   )
13                                  )
            Defendants.             )
14                                  )
                                    )
15                                  )
                                    )
16 _____ )
17

18  **I.    INTRODUCTION**

19       Now before the Court is Defendant LookSmart Ltd.'s

20  ("Defendant") motion to dismiss or, in the alternative, for partial

21  summary judgment.  ECF No. 11 ("Mot."); ECF No. 1 Ex. A ("Compl.").

22  The motion is fully briefed.  ECF Nos. 13 ("Opp'n"), 14 ("Reply").

23  The Court finds it appropriate for decision without oral argument.

24  Civ. L.R. 7-1(b).  As explained below, the motion is GRANTED in

25  part and DENIED in part.

26  ///

27  ///

28  ///

**II.    BACKGROUND**

Defendant is a publicly traded online advertising company. Compl. ¶ 7. It acts as an intermediary between online "publishers," which provide content from which they hope to generate ad revenue, and "advertisers," which promote products online via ads placed on publishers' websites. <u>Id.</u> Intermediaries like Defendant help advertisers place ads on publishers' websites, in exchange for a fee. <u>See id.</u>

The online advertising model relevant to this case is called "pay-per-click." <u>Id.</u> In this model, advertisers place their ads on publishers' websites and are charged a fixed sum each time a user clicks the ad. <u>Id.</u> ¶ 9. Part of this "pay-per-click" fee is then paid to the publisher on whose website the ad appeared, and part goes to the intermediary that helped to place the ad. <u>Id.</u>

Plaintiff owns and operates an international network of websites. <u>Id.</u> ¶ 11. In the online advertising ecosystem, Plaintiff is primarily a publisher, and its primary source of income is the revenue generated through the placement of ads on its websites. <u>Id.</u> Plaintiff entered a contract with Defendant under which Defendant would act as both intermediary and publisher. <u>Id.</u> ¶ 17. Defendant, like Plaintiff, owns a network of websites, and as part of the contract it agreed to display ads promoting Plaintiff's website network on its own websites. <u>Id.</u> Plaintiff agreed to pay Defendant based on the total number of clicks on those ads, and Defendant agreed to invoice Plaintiff each month, listing the number of clicks and the total amount owed. <u>Id.</u> The price per click varied depending on the market, but it ranged between $0.01 and $0.05. <u>Id.</u>

<div style="text-align:left; font-weight:bold;">United States District Court<br>For the Northern District of California</div>

**United States District Court**
For the Northern District of California

1    Though it is not a party to this lawsuit, Google and its

2    businesses are highly relevant to this case.  Google is the biggest

3    intermediary in the pay-per-click advertising market.  <u>Id.</u> ¶ 10.

4    In this capacity it operates a service called Google AdSense.  <u>Id.</u>

5    Publishers use Google to help them place appropriate ads on their

6    websites, and per the usual publisher-advertiser-intermediary

7    relationship, Google and the publishers share pay-per-click

8    revenue.  <u>Id.</u>  Publishers usually receive between 51 and 68 percent

9    of this revenue, and Google takes the remainder.  <u>Id.</u>

10    Plaintiff was a Google AdSense customer.  <u>Id.</u> ¶ 12.  Google

11   was Plaintiff's most important intermediary partner before

12   Plaintiff contracted with Defendant.  <u>Id.</u>  As part of that

13   arrangement, Plaintiff received the standard 51 to 68 percent of

14   pay-per-click revenue, with Google taking the rest, though Google

15   was also able to deduct more money from Plaintiff's AdSense account

16   if it determined that ad clicks originating from Plaintiff's

17   websites were illegitimate.  <u>Id.</u>  These illegitimate clicks are

18   called "click fraud" in the online ad industry.  <u>Id.</u>

19    Click fraud is a type of fraud by which a person or computer

20   program initiates a "click" on an ad, solely to generate the fees

21   resulting from pay-per-click advertising models -- not to view the

22   ad's underlying content.  <u>Id.</u>  Advertisers get no benefit from this

23   behavior, since there is no chance for them to convert a click to a

24   sale, but the publishers and intermediaries still get paid per

25   click.  <u>Id.</u>  Click fraud is a risk for online advertising

26   publishers because, as Defendant noted in a recent 10-K filing,

27   publishers on whose sites a person or program initiates click fraud

28   must sometimes issue credits or refunds to advertisers or pay

United States District Court
For the Northern District of California

1  revenue share to distribution network partners.  Id. ¶ 14.  This

2  hurts the publishers' profitability and branding.  Id.

3       As Defendant stated in that 10-K, it had previously been

4  subject to advertiser complaints and litigation regarding click

5  fraud, and it anticipated continuing to respond to such behavior.

6  Id.  Some small percentage of click fraud is considered unavoidable

7  and tolerated within the pay-per-click ad industry, though

8  Plaintiff states that prior to its agreement with Defendant, its

9  monthly deductions for pay-per-click traffic that Google considered

10 illegitimate averaged less than .5 percent of the total pay-per-

11 click traffic generated on Plaintiff's websites.  Id. ¶ 16.

12      Plaintiff entered the contract with Defendant around October

13 31, 2011.  Id. ¶ 17.  As part of this contract, Plaintiff signed

14 Defendant's standard "Terms and Conditions" ("T&C").  Compl. Ex. A

15 (also called the "Agreement").  Between December 2011 and June

16 2012, Plaintiff paid Defendant $105,273.92, pursuant to seven

17 invoices.  Id. ¶ 18.  Throughout this time, Plaintiff believed it

18 was paying Defendant for legitimate pay-per-click traffic, not for

19 fraudulent clicks.  Id.

20      However, around May 2012, Plaintiff became aware that a

21 "significant portion" of the clicks for which Defendant was billing

22 were being identified by Google as click fraud.  Id. ¶ 19.  Between

23 April and July 2012, Google deducted nearly $250,000 from

24 Plaintiff's AdSense account due to suspicious click fraud activity,

25 substantially all of which came from websites affiliated with

26 Defendant.  Id.[1]  Then, around July 3, 2012, Google informed

27 _____

28 [1] The Complaint does not fully explain how the perpetrators of
   click fraud -- bot or human -- moved from Plaintiff's ads on
   Defendant's websites to AdSense-related ads on Plaintiff's

**United States District Court**
For the Northern District of California

Plaintiff that an additional $191,000 in gross revenue (the amount prior to Google taking its share) was being deducted from Plaintiff's AdSense account due to click fraud originating on Plaintiff's website www.pay-it-less.co.uk.  Id.  This deduction led to a loss of $130,000 for Plaintiff.  Id.  Plaintiff claims that "substantially all" of the fraudulent clicks from that site can be traced directly to traffic originating from websites owned or controlled by Defendant.  Id.  Between August and December 2012, Google deducted an additional $12,500 from Plaintiff's AdSense account as additional compensation for the unusually high volume of click-fraud traffic originating from Plaintiff's websites, substantially all of which was traceable to traffic originating from Defendant's websites.  Id. ¶ 23.

Eventually, Plaintiff's AdSense account was reduced to a negative balance, and in December 2012, Plaintiff abandoned the account.  Id. ¶ 26.  Plaintiff's business relationship with Google deteriorated, leading it to use less profitable pay-per-click intermediary alternatives, and only recently has Plaintiff begun to repair its relationship with Google, though its previous levels of usage and profit have yet to return.  Id. ¶ 27.

Plaintiff contends that Defendant had an incentive to generate click fraud traffic, because it bills Plaintiff based on the number of clicks generated on its websites.  Id. ¶ 21.  Plaintiff also states that even if Defendant was not directly responsible for

websites.  However, it appears that Plaintiff is alleging that Defendant incentivized click fraud on its own properties because of the billing relationship between Plaintiff and Defendant, and then whatever entity perpetrated that fraud continued to do so on the property linked from the ad, e.g., by moving from one of Plaintiff's ads on Defendant's sites to an AdSense-placed ad on one of Plaintiff's sites.

generating the click-fraud traffic at issue, it had a duty to take steps to detect click-fraud traffic on its own websites and then to reduce the number of clicks for which it billed Plaintiff. Id. ¶ 22.

Based on these facts, Plaintiff asserts the following causes of action against Defendant: (1) breach of contract, (2) breach of the covenant of good faith and fair dealing, (3) fraudulent concealment, (4-5) negligent and intentional interference with prospective economic advantage, (6) intentional interference with contractual relations, and (7) violation of California's Unfair Competition Law, Cal. Bus. & Prof. Code § 17200 et seq. Defendant now concedes the first cause of action, but argues that Plaintiff is still subject to the T&C's limitation of liability,[2] and moves to dismiss the other claims.

III. **LEGAL STANDARD**

A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) "tests the legal sufficiency of a claim." Navarro v. Block, 250 F.3d 729, 732 (9th Cir. 2001). "Dismissal can be based on the lack of a cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal theory." Balistreri v. Pacifica Police Dep't, 901 F.2d 696, 699 (9th Cir. 1988). "When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." Ashcroft v. Iqbal, 556 U.S. 662, 679 (2009). However, "the tenet that a court must accept as true all of the allegations contained in a complaint

---

[2] Reply at 4 n.4.

United States District Court
For the Northern District of California

1  is inapplicable to legal conclusions.  Threadbare recitals of the

2  elements of a cause of action, supported by mere conclusory

3  statements, do not suffice."  Id. (citing Bell Atl. Corp. v.

4  Twombly, 550 U.S. 544, 555 (2007)).

5       Claims sounding in fraud are subject to the heightened

6  pleading requirements of Federal Rule of Civil Procedure 9(b),

7  which requires that a plaintiff alleging fraud "must state with

8  particularity the circumstances constituting fraud."  See Kearns v.

9  Ford Motor Co., 567 F.3d 1120, 1124 (9th Cir. 2009).  "To satisfy

10  Rule 9(b), a pleading must identify the who, what, when, where, and

11  how of the misconduct charged, as well as what is false or

12  misleading about [the purportedly fraudulent] statement, and why it

13  is false."  United States ex rel Cafasso v. Gen. Dynamics C4 Sys.,

14  Inc., 637 F.3d 1047, 1055 (9th Cir. 2011) (quotation marks and

15  citations omitted).

16

17  **IV.   DISCUSSION**

18       Defendant contends that the T&C limits its liability to

19  Plaintiff.  Accordingly, it seeks to dismiss all of Plaintiff's

20  claims.  The relevant parts of T&C's limitation of liability clause

21  read:

22  (I)    Under no circumstances will either party be
liable to the other party, whether in contract,

23  tort or otherwise, for indirect, incidental,
consequential, special or exemplary damages (even

24  if such damages are foreseeable and whether or
not the indemnified party has been advised of the

25  possibility of such damages) arising from this
agreement; and

26  (II)   Neither party will be liable to the other party
for more than the total amount paid or payable

27  (plus applicable fees and costs) to [Defendant]
under this Agreement.

28  T&C § 8.  The T&C also contains an indemnification clause:

United States District Court
For the Northern District of California

> Each party agrees to indemnify, defend and hold harmless
> the other party . . . from any and all liability,
> damages and settlements due to third-party claims or
> causes of action, including reasonable legal fees and
> expenses (collectively "Liabilities") arising out of or
> related to the indemnifying party's breach of any of its
> representations or warranties in this Agreement.

Id. § 9.  Defendant argues that all of Plaintiff's claims except its breach of contract claim are barred by the T&C, as are all of Plaintiff's claimed damages beyond the $105,273.92 invoiced amount. Mot. at 6-7.  Defendant also requests summary judgment limiting the parties' liability to the total amount Plaintiff paid Defendant under their agreement.  Id. at 7 (citing Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986)); Reply at 2.

Plaintiff argues first that Defendant's interpretation of Section 8, which would limit Defendant's liability regardless of whether that liability arose under tort or contract law, is unenforceable under California Civil Code section 1668.  Opp'n at 5-6.  That section reads: "All contracts which have for their object, directly or indirectly, to exempt anyone from responsibility for his own fraud, or willful injury to the person or property of another, or violation of law, whether willful or negligent, are against the policy of the law."  Since all but one of the disputed claims (negligent interference) is an intentional tort, Plaintiff claims that Defendant's position renders Section 8 invalidated to the extent that Defendant seeks to use it to limit liability not based on damages under the contract itself (i.e., the amount payable to Defendant under the contract).  Id. at 5-6.

Plaintiff also argues that even if the T&C is taken to mean what Defendant says it does, the damages Plaintiff seeks fall

8

within Section 9's indemnification provision.  Id. at 7.  Plaintiff

contends that Google's deductions from Plaintiff's AdSense account

are third-party claims subject to indemnification from Defendant.

Id.

Finally, Plaintiff claims that a motion to dismiss is not the

proper mechanism for limiting its damages, since Rule 12(b)(6)

motions only refer to claims, not remedies.  Id. at 8-9.

**A.   The Economic Loss Rule**

First, Defendant responds that section 1668 does not bar

agreements that allocate risk for misrepresentations, including

fraudulent ones, if the "economic loss rule" applies.  Reply at 1.

The economic loss rule, in summary, "is that no tort cause of

action will lie where the breach of duty is nothing more than a

violation of a promise which undermines the expectations of the

parties to an agreement."  Oracle USA, Inc. v. XL Global Services,

Inc., C 09-00537 MHP, 2009 WL 2084154, at *4 (N.D. Cal. July 13,

2009).  This rule serves to prevent every breach of a contract from

giving rise to tort liability and the threat of punitive damages:

"Quite simply, the economic loss rule prevents the law of contract

and the law of tort from dissolving one into the other."  Robinson

Helicopter Co. v. Dana Corp., 34 Cal. 4th 979, 988 (Cal. 2004)

(internal quotation marks and brackets omitted).  Limiting recovery

to contract damages makes it easier for parties to "estimate in

advance the financial risks of their enterprise."  Freeman & Mills,

Inc. v. Belcher Oil Co., 11 Cal. 4th 85, 106 (Cal. 1995) (quoting

Applied Equip. Corp. v. Litton Saudi Arabia Ltd., 7 Cal. 4th 503,

515 (Cal. 1994)); Foley v. Interactive Data Corp., 47 Cal. 3d 654,

694 (Cal. 1988).  As a result, the rule is particularly applicable

**United States District Court**
For the Northern District of California

**United States District Court**
For the Northern District of California

1    when a party alleges "commercial activities that negligently or

2    inadvertently [went] awry."  <u>Robinson Helicopter</u>, 34 Cal. 4th at

3    991 n.7.  However, the economic loss rule can still bar fraud and

4    other intentional tort liability if those claims do not arise

5    independently of the breach of contract claims.  <u>See id.</u> at 990.

6         Defendant contends that the T&C establishes that payments are

7    due on a pay-per-click basis, and such charges would be determined

8    based only on Defendant's technology with disputes governed by

9    Defendant's reconciliation system.  Reply at 5 (citing T&C ¶ 6(c)).

10   According to Defendant, Plaintiff's intentional tort claims are all

11   attempts to "dissolve the law of contract and the law of tort into

12   the other" since regardless of Plaintiff's allegations, all claims

13   arise from Defendant's obligations under the T&C, and the parties

14   bargained for the possibility of such issues.  <u>Id.</u> at 5-6.

15        Defendant is correct.  In this case, Plaintiff's intentional

16   tort claims are barred by the economic loss rule.  Under the rule,

17   parties alleging fraud or deceit in connection with a contract must

18   establish tortious conduct independent of a breach of the contract

19   -- not just violation of a promise that undermines a party's

20   expectations under the contract.  <u>Robinson Helicopter</u>, 34 Cal. 4th

21   at 990.  Here, any duties Defendant owed to Plaintiff apart from

22   the general duty to act reasonably arose at the moment of contract

23   formation.  <u>See id.</u> at 991; <u>see also</u> <u>United Guar. Mortg. Indem. Co.</u>

24   <u>v. Countrywide Fin. Corp.</u>, 660 F. Supp. 2d 1163, 1184 (C.D. Cal.

25   2009)).  Defendant assumed no other duties.  <u>Cf.</u> <u>Robinson</u>

26   <u>Helicopter</u>, 34 Cal. 4th at 991 (economic loss rule did not apply

27   partly because the defendant separately issued affirmative

28   representations to the plaintiff).

1   Plaintiff has failed to allege any conduct that is independent
2   from the promises the parties made during the course of their
3   contractual relationship, since even the basis for Plaintiff's
4   intentional interference claims is that Defendant interfered with
5   Plaintiff's contracts and relationships by breaching its
6   representation, from Section 5(a) of the T&C, to invoice Plaintiff
7   only for legitimate clicks.  See Opp'n at 7-8; Compl. ¶¶ 44-58.
8   Likewise, the T&C accounts for the bases of Plaintiff's fraudulent
9   concealment and UCL fraud claim, since Defendant's obligation to
10  monitor pay-per-click traffic for which it invoiced Plaintiff arose
11  exclusively from the contract.  See United, 660 F. Supp. 2d at
12  1184; Food Safety Net Svcs. v. Eco Safe Sys. USA, Inc., 209 Cal.
13  App. 4th 1118, 1132 (Cal. Ct. App. 2012).  Plaintiff's negligent
14  interference claim is somewhat distinct from the above analysis
15  because it is based on negligence, not intent.  However, California
16  law holds that contracts exempting parties from liability for
17  ordinary negligence are valid if the public interest is not
18  involved and no statute prohibits such a contract.  See United, 660
19  F. Supp. 2d at 1180.

20  These two sophisticated parties reached a bargain allocating
21  the risks of doing business, and the provisions of their agreement
22  displace tort duties with regard to Defendant's obligations under
23  the contract.  See Reserver Ins. Co. v. Pisciotta, 30 Cal. 3d 800,
24  814 (Cal. 1982) ("It is axiomatic that absent a violation of public
25  policy, a statute, or a constitutional provision, the parties to a
26  private agreement may allocate risks in any manner they may
27  choose.").  Plaintiff allocated risk for its negligence claim per
28  the T&C, and its intentional tort claims are barred by the economic

11

**United States District Court**
For the Northern District of California

1    loss rule, per above.  Plaintiff's negligent and intentional

2    interference, fraudulent concealment, and UCL claims are all

3    DISMISSED.  Plaintiff has leave to amend these claims if it can

4    state facts indicating that the claims would not be subject to the

5    economic loss rule.

6         Finally, the parties did not brief the applicability of the

7    economic loss doctrine to breach of the implied covenant ("bad

8    faith") claims.  However, the Court declines to dismiss that claim

9    on economic loss grounds, since California law generally precludes

10   tort recovery for non-insurance bad faith claims in the absence of

11   a violation of an independent duty arising from tort law

12   principles.  Freeman & Mills, Inc. v. Belcher Oil Co., 11 Cal. 4th

13   85, 102 (Cal. 1995); Norcal Waste Sys., Inc. v. Apropos Tech.,

14   Inc., No. C-06-3410-CW, 2006 WL 2319085, at *7 (N.D. Cal. Aug. 10,

15   2006).  Plaintiff may still recover under contract law for that

16   claim.

17        **B.   <u>Contract Ambiguity</u>**

18        Plaintiff also contends that the T&C's limitation of liability

19   provision is ambiguous.  Opp'n at 4-5.  Its position is based on

20   Part I of Section 8's language excluding "indirect, incidental,

21   consequential, special or exemplary damages," compared to Part II's

22   limitation of either party's liability to the total amount paid or

23   payable under the contract.  Id.  According to Plaintiff, Defendant

24   interprets Part I to preclude either party from recovering any type

25   of damages, contract or tort, while Part II expressly provides for

26   a cap on damages, which would be internally inconsistent unless

27   Part I is not actually taken to preclude all damages, and Part II

28   is indeed just a cap.  Id.

**United States District Court**
For the Northern District of California

1    Plaintiff's argument is neither clear nor compelling.  The T&C

2    clearly does not read as prohibiting either party from recovering

3    any type of damages, just most types of damages, and only up to a

4    limit.  Direct damages up to the amount paid under the contract are

5    still allowed.  T&C ¶ 8.  This is not ambiguous or unusual.  See 11

6    Wayne Matus, Bus. & Comm. Lit. in Fed. Courts § 130:23 (3d ed.)

7    ("[P]arties commonly seek to manage risk by excluding all but

8    direct damages (i.e., damages that would place the nonbreaching

9    party in the position it would have been in if the breaching party

10   had performed) and specifically excluding incidental, indirect,

11   special, consequential, exemplary and punitive damages.").

12   Plaintiff could therefore obtain direct damages from Defendant

13   in a breach of contract action.  In any event, regardless of

14   whether Plaintiff is ultimately able to recover on a tort or

15   contract claim, Section 8 would cap Plaintiff's damages to the

16   amount it paid under the contract.

17   **C.    Indemnification**

18   Regardless of Section 8's enforceability or the meaning of the

19   limitations clause, Plaintiff also argues that Section 9 of the

20   contract, which provides for indemnification in the event of

21   liability, damages, and settlements due to third-party claims or

22   causes of action, permits Plaintiff's theories and damages based on

23   Google's deductions from Plaintiff's AdSense account.  Opp'n at 7–

24   8.  Plaintiff states that Google's deductions from Plaintiff's

25   AdSense account "are, in essence, unilateral debits by Google from

26   Plaintiff's virtual bank account, are the primary component of

27   [Plaintiff's damages], and are a 'third-party claim.'"  Id.  Since

28   Section 5(a) permits Defendant to invoice Plaintiff for ad clicks,

1   Plaintiff asserts that this permission must only apply to non-

2   fraudulent clicks, so Defendant breached its representations under

3   the T&C, directly leading to Google's deductions.  Id. at 8.

4        Plaintiff is wrong.  Taken as true, it is not clear that the

5   pleadings establish that Google's deductions constitute a claim,

6   and they certainly do not indicate that Google brought a cause of

7   action against Plaintiff.  In context, it is not clear that "claim"

8   is a broad enough term to include account deductions made by a

9   third party based on what Plaintiff alleges to have been

10  Defendant's fraudulent activity -- the fact that the provision

11  provides for indemnification in the event of liability, damages,

12  and settlements suggests that the word "claim" does not apply to

13  every loss related to the contract, such as a routine account

14  deduction.  Even if that were so, as noted above, all of

15  Plaintiff's claims except breach of contract and breach of the

16  implied covenant are barred by the economic loss rule, and the

17  amount and type of Plaintiff's damages are both capped by the T&C's

18  limitation on liability.

19       **D.    Defendant's Alternative Motion for Partial Summary**

20             **Judgment**

21       Defendant's alternative motion for partial summary judgment is

22  DENIED without prejudice, because the Court cannot determine what

23  facts Defendant relied on for this motion, and Plaintiff did not

24  address the motion in its opposition brief.  Moreover, Defendant

25  moved in the alternative to its motion to dismiss, and given the

26  posture of the case at this point, Defendant has not made clear

27  what it intended to accomplish by moving in the alternative.

28

**V.   <u>CONCLUSION</u>**

As explained above, the Court GRANTS Defendant LookSmart Ltd.'s motion to dismiss Plaintiff WeBoost Media S.R.L.'s complaint.

Plaintiff has leave to amend its tort claims if it can plead facts stating that the claims are not subject to the economic loss rule.  If Plaintiff chooses to file an amended complaint, it must do so within thirty (30) days of this Order's signature date. Otherwise the deficient claims may be dismissed with prejudice.

IT IS SO ORDERED.

Dated: February 28, 2014            _____

                                    UNITED STATES DISTRICT JUDGE

**United States District Court**
For the Northern District of California