**HOLMES, TAYLOR & JONES LLP**
Matthew D. Taylor (SBN 220032)
E-mail: matthew.taylor@htjlaw.com
Andrew B. Holmes (SBN 185401)
E-mail: abholmes@htjlaw.com
801 S. Figueroa Street, Suite 2170
Los Angeles, California 90017
Telephone: (213) 985-2200

Attorneys for Plaintiff WEBOOST MEDIA S.R.L.

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

### SAN FRANCISCO DIVISION

| | |
|---|---|
| WEBOOST MEDIA S.R.L., a Società a responsabilità limitata,<br><br>Plaintiff,<br><br>v.<br><br>LOOKSMART LTD., a Delaware corporation, and DOES 1 through 100,<br><br>Defendants. | Case No.: 3:13-cv-05304 SC<br><br>**FIRST AMENDED COMPLAINT FOR:**<br><br>**1.) BREACH OF CONTRACT**<br><br>**2.) BREACH OF THE COVENANT OF GOOD FAITH AND FAIR DEALING**<br><br>**3.) FRAUDULENT CONCEALMENT**<br><br>**4.) NEGLIGENT INTERFERENCE WITH PROSPECTIVE ECONOMIC ADVANTAGE**<br><br>**5.) INTENTIONAL INTERFERENCE WITH PROSPECTIVE ECONOMIC ADVANTAGE**<br><br>**6.) INTENTIONAL INTERFERENCE WITH CONTRACTUAL RELATIONS**<br><br>**7.) VIOLATION OF CAL. BUS. & PROF. CODE § 17200** |

Plaintiff WeBoost Media S.r.l., by and through its counsel of record, alleges as follows:

## THE PARTIES

1. Plaintiff WeBoost Media S.r.l. ("WeBoost Media") is a *Società a responsabilità limitata*, organized and existing under the laws of Italy, with its principal place of business in Rome, Italy. WeBoost Media is the successor in interest to WeBoost S.r.l ("WeBoost") through a merger completed on April 12, 2013.

2. Defendant LookSmart, Ltd. ("LookSmart") is a corporation organized and existing under the laws of Delaware, with its principal place of business in San Francisco County, California.

3. The true names and capacities of defendants Does 1-100 are presently unknown to Plaintiff, and Plaintiff will seek leave of court to amend this complaint to allege such names and capacities as soon as they are ascertained.

## JURISDICTION AND VENUE

4. Plaintiff is informed and believes, and on that basis alleges, that this Court has jurisdiction over Defendant LookSmart by virtue of the facts that LookSmart (1) is registered to do business in the State of California; (2) does business in the State of California and, more particularly, in this judicial district; (3) entered into a contract with Plaintiff to be performed in this judicial district and (4) committed a wrongful breach of contract in this judicial district; and (5) that WeBoost and LookSmart contractually agreed to consent to the exclusive jurisdiction of the state and federal courts located in San Francisco County, California.

5. Venue is proper in San Francisco County because, *inter alia*, (1) the contract at issues was made and to be performed in this County; (2) Defendants' breach occurred in this County; (3) Plaintiff's cause of action arose in this County; and (4) the Parties contractually agreed that San Francisco County would be the exclusive jurisdiction to resolve any disputes arising from the economic relationship described herein.

6. Jurisdiction in this matter is unlimited because the amount in controversy exceeds $25,000.

## FACTUAL ALLEGATIONS

7. Defendant LookSmart is a publicly traded online advertising company. Among other things, LookSmart is in the business of acting as an intermediary between online "publishers" (companies that create and maintain online content from which they desire to generate advertising revenue) and online "advertisers" (companies seeking to promote their products online by means of "pay-per-click" advertising.)

8. In addition to serving as an intermediary, LookSmart also itself acts as an online publisher by maintaining its own network of affiliate websites, which it uses to display advertisements from other companies in order to generate revenue. As part of its business relationship with WeBoost, giving rise to the present lawsuit, LookSmart acted both as publisher and intermediary.

9. "Pay-per-click" is an internet advertising model used to direct online consumer traffic to commercial websites where, it is hoped, consumers will ultimately purchase products and services. Website operators, acting as publishers, display clickable links from advertisers. Each time someone viewing the website clicks on the link, the advertiser is charged a fixed sum of money. A portion of this "pay-per-click" fee is then paid to the publisher from whose website the click originated with the intermediary (the company that placed the advertisement) receiving the remainder.

10. The biggest intermediary in the pay-per-click advertising market is Google, which operates Google AdSense. Generally speaking, online publishers employ Google to locate and place appropriate on-line advertisements on their websites. In exchange, any "pay-per-click" revenues that are generated when a customer clicks on one of these advertisements are shared between the publisher and Google. According to Google's website, the standard terms of its AdSense agreement provides that publishers receive between 51% and 68% of this advertising revenue, depending on the AdSense product utilized, with Google receiving the remainder.

11.   Plaintiff WeBoost, which is based in Rome, Italy, owns and operates an international network of websites.  WeBoost's primary source of income is the revenue it generates through the placement of advertisements on its websites.  In other words, WeBoost is what's known in the online advertising world as a "publisher."  Many of the websites that WeBoost operates are intended to assist on-line shoppers in comparing prices across a variety of on-line retailers.  Such websites often contain links directly to the retailer selling a particular product.  When a consumer clicks on a particular link, a "pay-per-click" fee is generated which is then divided between WeBoost and the intermediary that placed the advertisement.

12.   Prior to entering into its business relationship with LookSmart, Google was by far WeBoost's most important advertising intermediary and Google AdSense was the primary means by which WeBoost generated advertising revenue from its various website properties.  Consistent with Google's standard terms, WeBoost's contract with Google provided that WeBoost would receive between 51% and 68% of the revenue generated from pay-per-click advertisements appearing on WeBoost websites.  This agreement further allowed Google to make deductions from WeBoost's AdSense account to the extent it determined that the clicks originating on WeBoost's sites were illegitimate, or what's known in the on-line advertising industry as "click fraud."

13.   "Click-fraud" is a form of fraud by which a person, automated script or computer program initiates a "click" on an online advertisement by imitating a legitimate online consumer.  Clicks generated by click-fraud do not truly reflect a potential customer who is actually interested in the product being advertised but rather are initiated for the sole purpose of generating the fees resulting from "pay-per-click" advertising.

14.   LookSmart is acutely aware of the risks that click-fraud presents to the on-line advertising business.  In its most recent 10-K filing, LookSmart specifically identified click fraud as one of the significant risks facing its business:

> Invalid clicks are an ongoing problem for the Internet search advertising industry, and we are exposed to the risk of invalid clicks on our search advertising customers' text advertisements coming from within our

distribution network. Invalid clicks occur when a person or robotic software causes a click on a paid listing to occur for some reason other than to view the underlying content. Invalid clicks are commonly referred to as "click fraud". . .

. . . We have in the past been subject to advertiser complaints and litigation regarding invalid clicks, and we may be subject to search advertising customer complaints, claims, litigation or inquiries in the future. We have from time to time credited invoices or refunded revenue to our customers due to invalid traffic, and we expect to continue to do so in the future. If our systems to detect invalid traffic are insufficient, or if we find new evidence of past invalid clicks, we may have to issue credits or refunds retroactively to our search advertisers, and we may still have to pay revenue share to our distribution network partners. This could negatively affect our profitability and hurt our brand . . . (April 1, 2013 10-K at pg. 10.)

15.  Beginning in approximately December, 2008 and continuing for a period of approximately four years, WeBoost built a strong and profitable partnership with Google which was based largely on the legitimacy of the "pay-per-click" traffic generated on WeBoost websites and the absence of significant "click-fraud" traffic.  Immediately prior to entering into its agreement with LookSmart, WeBoost generated approximately 57% of its total online advertising revenue through Google AdSense.

16.  While a certain small percentage of click fraud is considered unavoidable and tolerated within the on-line pay-per-click advertising industry, prior to entering into its agreement with LookSmart in the fall of 2011, the monthly deductions made by Google to WeBoost's AdSense account, which reflected the amount of pay-per-click traffic that Google considered illegitimate, averaged less than .5% of total pay-per-click traffic generated on WeBoost's websites.

17.  On or about October 31, 2011, WeBoost and LookSmart entered into an agreement by which LookSmart agreed to serve as both a publisher and intermediary with respect to WeBoost advertisements.  Specifically, LookSmart and WeBoost agreed that LookSmart would display clickable advertisements promoting various WeBoost websites on LookSmart's own family of websites.  WeBoost was to pay LookSmart based upon the total number of clicks on these advertisements, with LookSmart sending WeBoost monthly invoices detailing the total number of clicks generated by these advertisements and the total amount owing as a result.  The price paid by WeBoost for

each click varied based upon fluctuating market conditions but generally ranged between $.01 and $.05. As part of this transaction, WeBoost executed a copy of LookSmart's standard "Terms and Conditions." A copy of this agreement is attached hereto as Exhibit A.

18. Between approximately December 2011 and June 2012 WeBoost paid LookSmart a total of $105,273.92 pursuant to seven (7) separate invoices that were sent to it by LookSmart. At all times, WeBoost believed that it was paying LookSmart for legitimate, non-fraudulent pay-per-click traffic that had originated on various websites owned and operated by WeBoost. A true and correct copy of the seven (7) invoices that were paid by WeBoost is attached as Exhibit B.

19. However, beginning in approximately May, 2012, WeBoost first became aware that a significant portion of the clicks that LookSmart was billing it for did not appear to be legitimate and were being identified by Google as illegitimate "click fraud."

20. Between April 2012 and July 2012, Google deducted nearly $250,000 from WeBoost's AdSense account due to suspicious "click-fraud" activity, substantially all of which originated from LookSmart affiliated websites. Moreover, on or about July 3, 2012, Google notified WeBoost that an additional $191,000 in gross-revenue (the amount prior to Google taking its share) was being deducted from WeBoost's AdSense account due to suspicious "click-fraud" activity originating on a particular WeBoost website-www.pay-it-less.co.uk. Based upon the WeBoost's agreement with Google, this deduction led directly to an additional loss of approximately $130,000 by WeBoost.

21. WeBoost is informed and believes and based thereon alleges that the source of substantially all of this "click fraud" traffic was LookSmart, itself. Substantially all of the fraudulent clicks generated on www.pay-it-less.co.uk can be traced directly to traffic originating from websites owned and controlled by LookSmart. Moreover, LookSmart has a strong financial incentive to generate click fraud traffic due to the fact that the amount it bills WeBoost is based upon the number of clicks generated on its websites.

The more traffic LookSmart generated for WeBoost, legitimate or otherwise, the more money it received.

22.  WeBoost is informed and believes and based thereon alleges that LookSmart intentionally fabricated the "click fraud" traffic at issue by either itself creating or directing the creation of a series of bogus websites that appeared, on their face, to be legitimate websites relating to legitimate businesses.  In fact, such websites were nothing more than decoys, designed to provide cover for LookSmart's fraudulent activities.

23.  While the fraudulent websites created by LookSmart are too numerous to list in their entirety, they include, without limitation, the following:

- http://getnewznow.com
- http://www.searchlistingpro.net
- http://mysnooper.com
- http://tubeteams.com
- http://topdomaintoday.com
- http://bestdomainfranchise.com
- http://newslinkernow.com
- http://resultman.com
- http://wrldfind.com
- http://crushspecialz.com
- http://search.moneylizard.co.uk
- http://tracfind.com
- http://search.toptravellingtips.com
- http://search.musicforher.com
- http://search.youblogged.com

24.  After creating these bogus websites, LookSmart initiated automated software processes designed to make it appear as if legitimate on-line consumers were visiting these bogus websites and clicking on links directing them to various websites owned and

operated by WeBoost, thus generating a "click" for which LookSmart would subsequently bill WeBoost.  In fact, on-line consumers were not visiting the bogus sites.

25.  Not only were there no actual consumers visiting these sites, but the bogus websites never actually displayed advertising links to WeBoost sites.

26.  Moreover, upon further examination, many of these bogus sites contain duplicative content appearing to advertise bogus companies.  For example, four of the websites listed above: search.moneylizard.co.uk, search.musicforher.com, search.toptravellingtips.com and search.youblogged.com all display content relating to Guardian Services, LLC, supposedly a "leader in online asset management" based in an Eden, North Carolina strip mall.  A true and correct copy of the web pages displayed on these four sites is attached hereto as Exhibit C.  The address provided for Guardian Services houses a pawnshop, two Mexican restaurants but no "online asset management" company.  Telephone calls to the phone number provided for Guardian Services go unanswered.

27.  Others of these websites- http://getnewznow.com, http://tracfind.com, and http://crushspecialz.com appear to house identical internet search engines.  A true and correct copy of the identical home pages appearing on these three sites is attached hereto as Exhibit D.  However, these websites, too, appear to be bogus upon further examination.  Not only do these sites contain no advertisements on which a consumer might click, but they do not actually function as internet search engines of any kind.

28.  In fact, the majority of the bogus websites created by LookSmart contain the following characteristics- they are housed on obscure URLs that bear little logical connection to the content contained on the sites, the volume of content contained on the sites is minimal and the ownership of the sites has been effectively hidden in an attempt to obscure LookSmart's involvement.

29.  At all relevant times, LookSmart actively concealed from WeBoost the fact that it had created a network of bogus websites through which it intended to route click fraud for which it intended to invoice WeBoost as well as the fact that it intended to

initiate automated software processes by which such fraudulent traffic would be routed to WeBoost's own sites.

30.  Plaintiff is informed and believes that these bogus websites were created by LookSmart prior to its entering into a business relationship with WeBoost and that LookSmart never intended to provide WeBoost with legitimate on-line advertising services.  Had WeBoost been aware of the true nature of LookSmart's activities, it would never have entered into its business relationship with LookSmart in the first place and/or would have terminated such relationship immediately upon becoming aware of such facts.

31.  LookSmart's conduct, as more fully described herein, went far beyond the Terms and Conditions contained in Exhibit A, which contemplated a straightforward business relationship by which LookSmart would place legitimate advertisements on legitimate websites.  As such, LookSmart's conduct is independent from the promises made during the course of their contractual relationship and gives rise to independent tort liability.

32.  To the extent that LookSmart, itself, is not directly responsible for generating the "click-fraud" traffic at issue, LookSmart had a duty and responsibility to take all reasonable and necessary steps to detect "click-fraud" traffic originating on its websites, to notify WeBoost of such "click-fraud" traffic in a timely manner and to appropriately reduce the amount of clicks for which it was billing WeBoost on a monthly basis to ensure that WeBoost was not being billed for fraudulent traffic.  WeBoost is informed and believes that based thereon alleges that LookSmart did none of these things.

33.  In addition to the deductions described above, between August 2012 and December 2012, Google deducted additional sums from WeBoost's AdSense account totaling approximately $12,500 as additional compensation for the unusually high volume of "click fraud" traffic that had originated from WeBoost's websites, substantially all of which could again be directly traced to fraudulent traffic originating from LookSmart's own websites.

34. Thus, in total, the fraudulent traffic WeBoost purchased from LookSmart led to nearly $400,000 in direct losses to WeBoost in the form of unilateral deductions by Google to WeBoost's AdSense account.

35. Prior to doing business with LookSmart, WeBoost had never been subjected to substantial deductions or other punitive measures taken by Google or any other purchaser of WeBoost's "pay-per-click" traffic due to "click-fraud" activity. Rather, the only deductions WeBoost had experienced were routine monthly adjustments that averaged less than .5% of WeBoost's total pay-per-click traffic.

36. In addition to these direct, out-of-pocket damages, the sale of fraudulent traffic by WeBoost has significantly damaged WeBoost's business relationship with Google, which was by far WeBoost's most significant business partner. As a result of the high volume of "click fraud" appearing on WeBoost's websites, almost all of which could be directly traced from LookSmart, WeBoost's AdSense account came to have a significantly negative balance which forced on December 2012 WeBoost to abandon using this account.

37. The deterioration of this business relationship with Google has forced WeBoost to utilize alternative pay-per-click intermediaries which has significantly decreased the profitability of its business operations. WeBoost has only recently begun to rebuild its relationship with Google and has yet to obtain the levels of usage and profit with Google that it had obtained prior to entering into its relationship with LookSmart.

**FIRST CAUSE OF ACTION**

**(Breach of Contract Against Defendant LookSmart and Does 1-20)**

38. Plaintiff hereby incorporates, as though fully set forth herein, the allegations contained in paragraphs 1 through 37.

39. On or about October 31, 2011, WeBoost and LookSmart entered into an agreement by which LookSmart agreed to serve as both a publisher and intermediary with respect to WeBoost advertisements. Specifically, LookSmart agreed to display

clickable advertisements promoting various WeBoost websites on LookSmart's own family of websites.  LookSmart was to provide WeBoost with monthly invoices billing WeBoost based upon the total number of clicks generated by these advertisements.  The price paid by WeBoost to LookSmart for each click varied based upon fluctuating market conditions but generally ranged between $.01 and $.05.   As part of this transaction, WeBoost executed a copy of LookSmart's standard "Terms and Conditions."  A copy of this agreement is attached hereto as Exhibit A.

40.  This Agreement provided that LookSmart would invoice WeBoost monthly based upon "clicks on Advertising content."  WeBoost understood this representation to mean that it would only be invoiced for legitimate clicks on its advertising content and not for illegitimate clicks arising from "click-fraud."

41.  WeBoost has performed all conditions, covenants and promises required on his part to be performed in accordance with the terms and conditions of this Agreement.

42.  LookSmart has breached the Agreement by generating and billing WeBoost for illegitimate "click-fraud" traffic in addition to clicks that may have been initiated by legitimate prospective customers.

43.  As a direct and proximate result of Defendants' breach of contract, WeBoost has suffered damages in an amount to be determined at trial.


## SECOND CAUSE OF ACTION

### (Breach of Covenant of Good Faith And Fair Dealing

### Against LookSmart and Does 1-100)

44.  Plaintiff hereby incorporates, as though fully set forth herein, the allegations contained in paragraphs 1 through 43.

45.  Implied in the Agreement between WeBoost and LookSmart described above is a covenant of good faith and fair dealing.  The covenant provides that no party will do anything that will have the effect of impairing, destroying or injuring the rights of the other party to receive the benefits of their agreement.  The law implies a covenant in all

agreements that each party will do all things reasonably contemplated by the terms of the agreement to accomplish its purpose.

46.   By performing the acts described above, and specifically by providing WeBoost with online advertising traffic arising from illegitimate "click-fraud" rather than from legitimate prospective customer, LookSmart has breached the covenant of good faith and fair dealing by violating the spirit of the Agreement.

47.   As a direct and proximate result of LookSmart's breach of the covenant of good faith and fair dealing, WeBoost has suffered damages in an amount to be determined according to proof at trial.

## THIRD CAUSE OF ACTION

### (Fraudulent Concealment

### Against LookSmart and Does 1-100)

48.   Plaintiff hereby incorporates, as though fully set forth herein, the allegations contained in paragraphs 1 through 47.

49.   LookSmart actively concealed from WeBoost the fact that a significant portion of the pay-per-click traffic that was being generated on LookSmart's websites and for which WeBoost was paying LookSmart was not legitimate pay-per-click traffic at all but rather illegitimate "click-fraud."

50.   LookSmart further actively concealed from WeBoost the fact that LookSmart had itself created and/or directed the creation of a network of fraudulent websites, which LookSmart then used as decoys through which to use automated software processes to route "click-fraud" for which it subsequently billed WeBoost.

51.   WeBoost was unaware of these facts and had WeBoost been aware of the true nature of LookSmart's activities, it would not have entered into its business relationship with LookSmart in the first place and/or would have terminated such relationship immediately upon becoming aware of such facts.

52.   LookSmart intended to deceive WeBoost by concealing these facts.

53. WeBoost reasonably relied upon LookSmart's deception in the good faith belief that it was paying LookSmart for legitimate pay-per-click traffic.

54. As a direct and proximate result of LookSmart's concealment of this information, WeBoost has suffered damages in an amount to be determined at trial.

## FOURTH CAUSE OF ACTION

### (Negligent Interference With Prospective Economic Advantage
### Against LookSmart and Does 1-100)

55. Plaintiff hereby incorporates, as though fully set forth herein, the allegations contained in paragraphs 1 through 54.

56. At all relevant times, WeBoost and Google were in an economic relationship that was likely to have resulted in a future economic benefit to WeBoost.

57. LookSmart knew or should have known of WeBoost's existing relationship with Google which WeBoost used to generating advertising revenue from its family of websites.

58. LookSmart knew or should have known that the economic relationship between Google and WeBoost would be disrupted if LookSmart failed to act with reasonable care.

59. LookSmart failed to act with reasonable care.

60. As more fully described above, LookSmart engaged in wrongful conduct by fabricating "click fraud" in order to increase the payments that were purportedly owed to it by WeBoost.

61. As a proximate result of LookSmart's actions, WeBoost's economic relationship with Google was disrupted.

62. As a proximate result of LookSmart's actions, WeBoost has suffered damages in an amount that will be determined according to proof at trial.

**FIFTH CAUSE OF ACTION**

**(Intentional Interference With Prospective Economic Advantage**

**Against LookSmart and Does 1-100)**

63.    Plaintiff hereby incorporates, as though fully set forth herein, the allegations contained in paragraphs 1 through 62.

64.    At all relevant times, WeBoost and Google were in an economic relationship that was likely to have resulted in a future economic benefit to WeBoost.

65.    LookSmart knew of WeBoost's existing economic relationship with Google which WeBoost used to generating advertising revenue from its family of websites.

66.    LookSmart intended to disrupt the economic relationship between Google and WeBoost.

67.    As more fully described above, LookSmart engaged in wrongful conduct by fabricating "click fraud" in order to increase the payments that were purportedly owed to it by WeBoost.

68.    As a proximate result of LookSmart's actions, WeBoost's economic relationship with Google was disrupted.

69.    As a proximate result of LookSmart's actions, WeBoost has suffered damages in an amount that will be determined according to proof at trial.


**SIXTH CAUSE OF ACTION**

**(Intentional Interference With Contractual Relations**

**Against LookSmart and Does 1-100)**

70.    Plaintiff hereby incorporates, as though fully set forth herein, the allegations contained in paragraphs 1 through 69.

71.    WeBoost and Google had entered into a contract by which they had agreed to share the advertising revenues generated by Google placing advertisements on various WeBoost websites.

72.    LookSmart knew of WeBoost's existing contract with Google.

73.     LookSmart intended to disrupt the contract between WeBoost and Google economic relationship between Google and WeBoost.

74.     LookSmart's conduct, as more fully described above, prevented WeBoost from fully performing under its contract with Google and/or made performance of such contract more expensive or difficult.

75.     As a proximate result of LookSmart's actions, WeBoost has suffered damages in an amount that will be determined according to proof at trial.

## <u>SEVENTH CAUSE OF ACTION</u>

**(Violation of Cal. Bus. & Prof Code §17200**

**Against LookSmart and Does 1-100)**

76.     Plaintiff hereby incorporates, as though fully set forth herein, the allegations contained in paragraphs 1 through 75.

77.     Pursuant to §§ 17200 et seq. of the California Business and Professions Code, unfair business practices include any unlawful, unfair or fraudulent business practice.  The fraudulent and unlawful conduct of LookSmart as alleged herein is an unlawful, unfair and fraudulent practice within the provisions of § 17200 et seq. of the California Business and Professions Code, and, accordingly, constitutes a violation of §§ 17200 et seq. of the California Business and Professions Code.

78.     Upon information and belief, LookSmart has a business practice of generating fraudulent pay-per-click traffic known as "click-fraud" and of billing its customers for such illegitimate traffic and such business practice is unlawful, unfair and fraudulent and violates California law as alleged herein.

79.     As a direct and proximate result of the unfair business practices of LookSmart as herein alleged, WeBoost incurred damages in an amount that will be determined according to proof at trial.

## PUNITIVE DAMAGES

LookSmart's conduct as alleged herein was malicious, oppressive, and perpetrated with a conscious and reckless disregard for WeBoost's interests and welfare, thereby justifying the imposition of punitive damages in an amount sufficient to punish and to make an example of LookSmart as to deter future wrongful conduct.

## PRAYER FOR RELIEF

WHERFORE, Plaintiff prays judgment against Defendant as follows:

1. Compensatory damages in an amount sufficient to compensate WeBoost for its monetary losses;

2. Restitution;

3. Exemplary damages;

4. Pre-judgment and post-judgment interest, as collectable by law;

5. Attorneys fees and court costs, as collectable by law; and

6. Any other relief that the Court deems proper.

## DEMAND FOR JURY TRIAL

Pursuant to Rule 38 of the Federal Rules of Civil Procedure, WeBoost demands trial by jury in this action of all issues so triable.

DATED:   March 28, 2014                    **HOLMES, TAYLOR & JONES LLP**

By:    /s/ Matthew D. Taylor_____
Matthew D. Taylor
Attorneys for Plaintiff WEBOOST MEDIA S.R.L

# Exhibit A



**look smart**
SEARCH MARKETING

Demand Quality. Expect Results.

## TERMS AND CONDITIONS (as of July 22, 2009) - ADS (COST PER CLICK)

### 1. Introduction

These Terms and Conditions are entered into by you ("Advertiser") and LookSmart, Ltd. ("LookSmart") regarding the display and distribution of advertisement(s) by LookSmart ("Advertisements") These Terms and Conditions together with any executed insertion order (an "Insertion Order") will be known as the "Agreement". The display and distribution of Advertisements will also be subject to the policies and requirements set forth in the LookSmart Advertiser Center, currently located at https://adcenter.looksmart.com/help/faq#terms, as modified from time to time by LookSmart. By continuing to allow LookSmart to display and distribute Advertisements after such modified Terms and Conditions have been posted, you agree to these Terms and Conditions, as modified.

### 2. Advertisements and Advertising Content

LookSmart will display the Advertisements, text links, graphical links, or other advertising content provided or approved by Advertiser together with the related keywords (the "Advertising Content"). Advertiser agrees that its Advertisements will conform to LookSmart's specifications and editorial guidelines located at https://adcenter.looksmart.com/help/faq#guidelines.

Advertiser is solely responsible for creating the Advertising Content and Advertiser represents that it will choose keywords that do not violate any third party's trademarks, other intellectual property rights or other rights and/or will obtain licenses to use any third party trademarks as keywords. Advertiser grants to LookSmart and members of the LookSmart Network (as defined below) (i) the right to display, perform, transmit and promote the Advertising Content and to make internal copies as necessary to perform the foregoing; and (ii) users of LookSmart's distribution network members' websites (collectively, the "LookSmart Network") the right to access and use the Advertising Content and any content and/or services directly linked to the Advertising Content. LookSmart and LookSmart Network members may reject or remove any particular Advertisement or Advertising Content for any or no reason.

### 3. Distribution

Advertiser understands that the Advertisements may appear on various site(s) within the LookSmart Network. The breadth of distribution of the Advertising Content may change during the term of this Agreement for any reason or no reason, including that LookSmart may change the members of the LookSmart Network from time to time without notice, and LookSmart may adopt or discontinue one or more modes of distribution or may change or discontinue sites, site pages or methods or modes of advertisement delivery. Because of the variety of types of distribution on the LookSmart Network and its frequent changes, we cannot guarantee that your Advertisement(s) will appear in any particular type of placement, or position, or that it will be displayed in any particular context or in response to any particular behavior. LookSmart will discount your bid(s) to the greatest extent possible while still achieving the highest possible position for your Advertisements (given your bid amount) on the LookSmart Network, if possible. LookSmart cannot ensure the correct bid pricing to achieve the highest possible position (given your bid amount). In all cases LookSmart will not exceed Advertiser's maximum bid(s). With respect to keyword-targeted Advertisements, Advertising Content may appear for the specific keywords Advertiser selects, as well as for variations on those keywords, as determined by LookSmart's matching technology.

### 4. Term; Cancellation or Termination

For accounts with an Insertion Order, the term of this Agreement will be set forth in the Insertion Order. If there is no Insertion Order, the term will end when terminated by either party in accordance with the terms and conditions of this Agreement. Unless otherwise set forth in the relevant Insertion Order, either party may terminate the Agreement at any time for any reason or no reason upon giving written notice to the other party, with such termination to be effective as soon as LookSmart can remove all of Advertising Content from the LookSmart Network, but no later than five (5) business days after a party gives written notice. LookSmart may terminate this Agreement immediately with or without notice to Advertiser (i) if LookSmart is unable to successfully charge Advertiser's credit card for any amount described in Section 5, for credit card accounts; or (ii) if any amount invoiced to Advertiser has not been paid when due, for invoice accounts.

### 5. Billing; Payment

#### a. Invoice Accounts

LookSmart will invoice Advertiser monthly for clicks on Advertising Content. Payment in full will be due thirty (30) days after the date of the invoice. If LookSmart, in its sole discretion, determines that Advertiser's credit condition warrants, LookSmart may require additional information and/or advance payment. If Advertiser wishes to increase or exceed the budget amount in an approved Insertion Order, Advertiser will submit an electronic mail message to LookSmart to document Advertiser's agreement to such increase.

#### b. Credit Card Accounts

Advertiser must maintain a valid credit card in its online account. Advertiser authorizes LookSmart to charge its credit card for all charges to its account, including any recurring payments. Advertiser understands that this authorization is valid until the effective time of termination of this Agreement. Advertiser is responsible for maintaining up-to-date credit card information in its account. If Advertiser's credit card expires, Advertiser will continue to be responsible for payment of charged amounts until Advertiser either changes its credit card information or terminates the Agreement. Advertiser agrees to retain, either by printing or otherwise saving, a copy of this Agreement, which provides the terms of this authorization. LookSmart will charge amounts to Advertiser's credit card based on number of clicks on its Advertisements as determined by LookSmart's click tracking technology. If LookSmart is unable to charge Advertiser's credit card because Advertiser's credit card is no longer valid, or for any other reason, LookSmart may in its sole discretion (i) reduce Advertiser's campaign budgets so that Advertiser's remaining account budget is

# look.smart
### S E A R C H   M A R K E T I N G
**Demand Quality. Expect Results.**

less than the remaining account balance; (ii) suspend Advertiser's Advertisements from the LookSmart Network; or (iii) terminate this Agreement in accordance with Section 4.

**c. All Accounts**
All fees described in this Agreement exclude any and all sales, use, property, license, value added, excise or similar tax (and any related duties, tariffs, imposts and similar charges) that may be due as a result of the transactions contemplated by this Agreement. Advertiser will be responsible for paying all such taxes and charges. Advertiser will have thirty (30) business days from the date of an invoice or charge to dispute that invoice or charge; after that time Advertiser will be deemed to have waived any objections to the invoice or charge. Invoices and charges will be determined solely based on LookSmart's click tracking technology. Advertiser may use a third party to track clicks on Advertisements. In the event that the third party's measurements for clicks on Advertisements differ from those tracked by LookSmart by more than ten (10) percent over an invoiced or charged period, within the thirty (30) day period following the end of such period LookSmart and Advertiser will participate in a reconciliation effort between the third party and LookSmart regarding the discrepancy, make a good faith effort to resolve such discrepancy and, if any changes are made to LookSmart's tracking as a result, amend the invoice or credit the account accordingly. Refunds (if any) are at the discretion of LookSmart and will be granted only in the form of advertising credit on the LookSmart Network. Advertiser will dispute any invoice in accordance with this section, and agrees not to dispute any charges with its credit card company or otherwise initiate chargeback proceedings if such dispute or chargeback would cause Advertiser to be in violation of this section.

**6. Collections**
In the event of any legal action to collect amounts owed by Advertiser under this Agreement, LookSmart will be entitled to reimbursement for all costs incurred, including reasonable court costs and attorney's fees and expenses.

**7. Online Account**
LookSmart will provide a password-protected online account to allow Advertiser to monitor the performance of campaigns and make changes to elements of campaigns. Advertiser is solely responsible for controlling access to the password-protected account and for maintaining the confidentiality of the password, and will be required to pay for any charges or traffic fees incurred as a result of changes made through the online account.

**8. Limitation of Liability**
EXCEPT WITH RESPECT TO OBLIGATIONS UNDER SECTIONS 9 and 12 BELOW, (I) UNDER NO CIRCUMSTANCES WILL EITHER PARTY BE LIABLE TO THE OTHER PARTY, WHETHER IN CONTRACT, TORT OR OTHERWISE, FOR INDIRECT, INCIDENTAL, CONSEQUENTIAL, SPECIAL OR EXEMPLARY DAMAGES (EVEN IF SUCH DAMAGES ARE FORESEEABLE, AND WHETHER OR NOT THE INDEMNIFIED PARTY HAS BEEN ADVISED OF THE POSSIBILITY OF SUCH DAMAGES) ARISING FROM THIS AGREEMENT AND (II) NEITHER PARTY WILL BE LIABLE TO THE OTHER PARTY FOR MORE

THAN THE TOTAL AMOUNT PAID OR PAYABLE (PLUS APPLICABLE FEES AND COSTS) TO LOOKSMART UNDER THIS AGREEMENT.

**9. Indemnification**
Each party agrees to indemnify, defend and hold harmless the other party, its subsidiaries, affiliates, partners, officers, directors, employees and agents, from any and all liability, damages and settlements due to third party claims or causes of action, including reasonable legal fees and expenses (collectively "Liabilities"), arising out of or related to the indemnifying party's breach of any of its representations or warranties in this Agreement. Advertiser agrees to indemnify, defend and hold harmless LookSmart, its subsidiaries, affiliates, partners, officers, directors, employees and agents, from any Liabilities arising from all content or material on any website associated with any Advertising Content, Advertiser's website(s) and Advertiser's order processing, billing, fulfillment, shipment, collection and other customer support associated with any products or services offered, sold or licensed through any website associated with any Advertising Content.

**10. Representations and Warranties**
Advertiser represents and warrants that (i) Advertiser holds the necessary corporate power, permits and rights to grant all right granted to LookSmart under this Agreement; (ii) neither the use, reproduction, distribution, or transmission of the Advertising Content, nor any material or service available on or through Advertiser's website will (a) violate any foreign, federal, state or local law or regulation or any rights of any third party, (b) contain any material that is harmful, abusive, hateful, obscene or threatening nor (c) constitute false or fraudulent advertisement and that a reasonable basis exists for all claims concerning the performance of products and services offered; (iii) the Advertising Content complies with LookSmart's advertising guidelines (https://adcenter.looksmart.com/help/faq#guidelines); (iv) Advertiser's execution of this Agreement, and its performance of obligations and duties hereunder, will not violate any agreement to which Advertiser is a party or is otherwise bound; and (v) Advertiser possesses all authorizations, approvals, consents, licenses, permits, certificates or other rights and permissions necessary to display its website(s) and purchase, display and distribute (and allow others to display and distribute) Advertising Content for such website(s).

**11. LookSmart Representations and Warranties**
LookSmart represents and warrants that it holds the necessary rights to use the LookSmart Network for display and reproduction of the Advertising Content for the purpose of this Agreement. LOOKSMART MAKES NO OTHER REPRESENTATIONS, AND HEREBY EXPRESSLY DISCLAIMS, ALL WARRANTIES, EXPRESS OR IMPLIED, REGARDING LOOKSMART'S SERVICES OR ANY PORTION THEREOF, INCLUDING ANY IMPLIED WARRANTY OF MERCHANTABILITY, NONINFRINGEMENT OR FITNESS FOR A PARTICULAR PURPOSE AND ANY IMPLIED WARRANTIES ARISING FROM COURSE OF DEALING OR COURSE OF PERFORMANCE. Without limiting the generality of the foregoing, LookSmart specifically disclaims any warranty regarding (i) the number of persons who will access the Advertising Content and (ii)



**SEARCH MARKETING**

**Demand Quality. Expect Results**

any benefit Advertiser might obtain from including the Advertising Content within the LookSmart Network. The performance estimates, if any, on the Insertion Order are not guarantees, and actual performance may be higher or lower than the estimates provided. LookSmart cannot warrant that the display of the Advertising Content or the link to the advertiser web content will be uninterrupted or error-free. LookSmart cannot guarantee that an Advertisement will be displayed in response to any given keyword search. LookSmart specifically disclaims any warranty regarding the location and prominence of Advertisements within the LookSmart Network, including within any search results displayed thereon.

**12. Confidentiality**
The terms and conditions of this Agreement, as well as any click-through or user data derived from this Agreement or its performance, are confidential to LookSmart, and Advertiser agrees not to disclose them to any third party under any circumstances, except as required by law and with prior written notice to LookSmart. Neither party will issue any press release or public announcement of the terms or existence of this Agreement without the prior written consent of the other party, except that LookSmart may reference Advertiser as a client and include Advertiser's name in marketing materials.

**13. Jurisdiction; Choice of Law**
The parties irrevocably consent to the exclusive jurisdiction of the state and federal courts located in San Francisco County, California in connection with any action arising under this Agreement. This Agreement will be interpreted, construed and enforced in all respects in accordance with laws of California, without regard to its conflicts of laws provisions or to the actual state or country of incorporation or residence of the parties.

**14. Miscellaneous**
In the event of any express conflict between the provisions of the Insertion Order and these Terms and Conditions, the provisions of the Insertion Order will apply. LookSmart will not be liable for delay or default in displaying Advertisements if such delay or default is caused by conditions beyond its reasonable control including without limitation casualty, network or telecoms failures and acts of God. In the event that any provision of this Agreement conflicts with the law under which this Agreement is to be construed, or if any such provision is held invalid by a court with jurisdiction over the parties to this Agreement, such provision will be deemed to be restated to reflect as nearly as possible the original intentions of the parties in accordance with applicable law, and the remainder of this Agreement will remain in full force and effect. The failure of either party to insist upon or enforce strict performance by the other party, of any provision of this Agreement, or to exercise any rights under this Agreement, will not be construed as a waiver or relinquishment of such party's right to enforce any such provision or right in any other instance. Advertiser may not assign this Agreement, in whole or in part. LookSmart and Advertiser are independent contractors, and neither LookSmart nor Advertiser is an agent, representative or partner of the other. Except as set forth in Section 1 above, this Agreement may only be modified, or any rights under it waived, by a written document or online agreement executed by both parties.

If Advertiser and LookSmart have signed a separate agreement for the delivery of relevant advertising that is still in effect, then in the event of any express conflict between the provisions of that other agreement and these Terms and Conditions, such provisions of this Agreement will govern.

| COMPANY: WEBOOST S.r.l. | LookSmart, Ltd. |
|---|---|
| By: ALESSANDRO CAVALLO | By: |
| Signature: | Signature: |
| Title: CEO | Title: |
| Date: | Date: 31/10/2001 |

WEBOOST s.r.l.
V.le Bruno Buozzi 102
00197 ROMA

# Exhibit B

# looksmart

**Invoice**

(415) 348-7564
billing@looksmart.net

| WeBoost |
| --- |
| Alessandro Cavallo |
| Viale Bruno Buozzi 102 |
| Rome 00197 |
| Italy |

| WeBoost |
| --- |
| Alessandro Cavallo |
| Viale Bruno Buozzi 102 |
| Rome 00197 |
| Italy |

| Invoice No. | PO No. | Customer No. | Sales Rep | Invoice Date | Due Date | Account ID |
| --- | --- | --- | --- | --- | --- | --- |
| INV0052307 | | 1288411 | | 11/30/11 | 12/30/11 | |

| Clicks | Product | CPC | Cost |
| --- | --- | --- | --- |
| 97163 | November 2011–Looklistings:WeBoost | 0.04000 | 4,061.58 |

| | |
| --- | --- |
| Subtotal | $4,061.58 |
| Agency Discount | $0.00 |
| Other | 0.00 |
| **Total Due** | **$4,061.58** |

**REMIT ADDRESS:**
LookSmart, Ltd.
P.O. Box 7298
San Francisco, CA
94120-7298

**BILLING AND PAYMENTS:**
To pay by credit card, please call: (415) 348-7564
(Please do not send credit card information by email)

For billing questions, please email: billing@looksmart.net

INV0052307
1288411

**WIRE INSTRUCTIONS:**
City National Bank, San Francisco, CA
Account No: 432-626008
ABA or Routing No.: 122-016-066

# looksmart

**Invoice**

(415) 348-7564
billing@looksmart.net

| WeBoost |
| Alessandro Cavallo |
| Viale Bruno Buozzi 102 |
| Rome 00197 |
| Italy |

| WeBoost |
| Alessandro Cavallo |
| Viale Bruno Buozzi 102 |
| Rome 00197 |
| Italy |

| Invoice No. | PO No. | Customer No. | Sales Rep | Invoice Date | Due Date | Account ID |
|---|---|---|---|---|---|---|
| INV0052376 | | 1288411 | | 12/31/11 | 01/30/12 | |

| Clicks | Product | | CPC | Cost |
|---|---|---|---|---|
| 1160792 | December 2011—Looklistings:WeBoost | | 0.02000 | 23,479.17 |

| | |
|---|---|
| **REMIT ADDRESS:** | |
| LookSmart, Ltd. | |
| P.O. Box 7298 | |
| San Francisco, CA | |
| 94120-7298 | |

| | |
|---|---|
| Subtotal | $23,479.17 |
| Agency Discount | $0.00 |
| Other | 0.00 |
| **Total Due** | **$23,479.17** |

**BILLING AND PAYMENTS:**
To pay by credit card, please call: (415) 348-7564
(Please do not send credit card information by email)

For billing questions, please email: billing@looksmart.net

INV0052376
1288411

**WIRE INSTRUCTIONS:**
City National Bank, San Francisco, CA
Account No: 432-626008
ABA or Routing No.: 122-016-066

# looksmart

**Invoice**

(415) 348-7564
billing@looksmart.net

WeBoost
Alessandro Cavallo
Viale Bruno Buozzi 102
Rome 00197
Italy

WeBoost
Alessandro Cavallo
Viale Bruno Buozzi 102
Rome 00197
Italy

| Invoice No. | PO No. | Customer No. | Sales Rep | Invoice Date | Due Date | Account ID |
|---|---|---|---|---|---|---|
| INV0052461 | | 1288411 | | 01/31/12 | 03/01/12 | |

| Clicks | Product | CPC | Cost |
|---|---|---|---|
| 2327695 | January 2012--Looklistings:WeBoost | 0.01000 | 23,284.91 |

|  |  |
|---|---|
| *Subtotal* | $23,284.91 |
| *Agency Discount* | $0.00 |
| *Other* | 0.00 |
| *Total Due* | **$23,284.91** |

**REMIT ADDRESS:**
LookSmart, Ltd.
P.O. Box 7298
San Francisco, CA
94120-7298

**BILLING AND PAYMENTS:**
To pay by credit card, please call: (415) 348-7564
(Please do not send credit card information by email)

For billing questions, please email: billing@looksmart.net

INV0052461
1288411

**WIRE INSTRUCTIONS:**
City National Bank, San Francisco, CA
Account No: 432-626008
ABA or Routing No.: 122-016-066

# looksmart

**Invoice**

(415) 348-7564
billing@looksmart.net

| WeBoost |
| --- |
| Alessandro Cavallo |
| Viale Bruno Buozzi 102 |
| Rome 00197 |
| Italy |

| WeBoost |
| --- |
| Alessandro Cavallo |
| Viale Bruno Buozzi 102 |
| Rome 00197 |
| Italy |

| Invoice No. | PO No. | Customer No. | Sales Rep | Invoice Date | Due Date | Account ID |
| --- | --- | --- | --- | --- | --- | --- |
| INV0052518 | | 1288411 | | 02/29/12 | 03/30/12 | |

| Clicks | Product | | | CPC | Cost |
| --- | --- | --- | --- | --- | --- |
| 1551739 | February 2012–Looklistings:WeBoost | | | 0.01000 | 15,519.95 |

| | | |
| --- | --- | --- |
| | Subtotal | $15,519.95 |
| | Agency Discount | $0.00 |
| | Other | 0.00 |
| | **Total Due** | **$15,519.95** |

**REMIT ADDRESS:**
LookSmart, Ltd.
P.O. Box 7298
San Francisco, CA
94120-7298

**BILLING AND PAYMENTS:**
To pay by credit card, please call: (415) 348-7564
(Please do not send credit card information by email)

For billing questions, please email: billing@looksmart.net

INV0052518
1288411

**WIRE INSTRUCTIONS:**
City National Bank, San Francisco, CA
Account No: 432-626008
ABA or Routing No.: 122-016-066

# looksmart

**Invoice**

(415) 348-7564
billing@looksmart.net

| WeBoost | WeBoost |
|---|---|
| Alessandro Cavallo | Alessandro Cavallo |
| Viale Bruno Buozzi 102 | Viale Bruno Buozzi 102 |
| Rome 00197 | Rome 00197 |
| Italy | Italy |

| Invoice No. | PO No. | Customer No. | Sales Rep | Invoice Date | Due Date | Account ID |
|---|---|---|---|---|---|---|
| INV0052566 | | 1288411 | | 03/31/12 | 04/30/12 | |

| Clicks | Product | | CPC | Cost |
|---|---|---|---|---|
| 1797165 | March 2012–Looklistings:WeBoost | | 0.01000 | 17,978.41 |

| | |
|---|---|
| Subtotal | $17,978.41 |
| Agency Discount | $0.00 |
| Other | 0.00 |
| **Total Due** | **$17,978.41** |

**REMIT ADDRESS:**
LookSmart, Ltd.
P.O. Box 7298
San Francisco, CA
94120-7298

**BILLING AND PAYMENTS:**
To pay by credit card, please call: (415) 348-7564
(Please do not send credit card information by email)

For billing questions, please email: billing@looksmart.net

INV0052566
1288411

**WIRE INSTRUCTIONS:**
City National Bank, San Francisco, CA
Account No: 432-626008
ABA or Routing No.: 122-016-066

# looksmart

**Invoice**

(415) 348-7564
billing@looksmart.net

| | |
|---|---|
| WeBoost<br>Alessandro Cavallo<br>Viale Bruno Buozzi 102<br>Rome 00197<br>Italy | WeBoost<br>Alessandro Cavallo<br>Viale Bruno Buozzi 102<br>Rome 00197<br>Italy |

| Invoice No. | PO No. | Customer No. | Sales Rep | Invoice Date | Due Date | Account ID |
|---|---|---|---|---|---|---|
| INV0052644 | | 1288411 | | 04/30/12 | 05/30/12 | |

| Clicks | Product | | CPC | Cost |
|---|---|---|---|---|
| 1217301 | April 2012–Looklistings:WeBoost | | 0.01000 | 12,179.37 |

| | | |
|---|---|---|
| | Subtotal | $12,179.37 |
| | Agency Discount | $0.00 |
| | Other | 0.00 |
| | **Total Due** | **$12,179.37** |

**REMIT ADDRESS:**
LookSmart, Ltd.
55 2nd Street, 7th Floor
San Francisco, CA
94105

**BILLING AND PAYMENTS:**
To pay by credit card, please call: (415) 348-7573
(Please do not send credit card information by email)

For billing questions, please email: billing@looksmart.net

INV0052644
1288411

**WIRE INSTRUCTIONS:**
City National Bank, San Francisco, CA
Account No: 432-626008
ABA or Routing No.: 122-016-066

# looksmart

**Invoice**

(415) 348-7564
billing@looksmart.net

| | | |
|---|---|---|
| WeBoost<br>Alessandro Cavallo<br>Viale Bruno Buozzi 102<br>Rome 00197<br>Italy | | WeBoost<br>Alessandro Cavallo<br>Viale Bruno Buozzi 102<br>Rome 00197<br>Italy |

| Invoice No. | PO No. | Customer No. | Sales Rep | Invoice Date | Due Date | Account ID |
|---|---|---|---|---|---|---|
| INV0052710 | | 1288411 | | 05/31/12 | 06/30/12 | |

| Clicks | Product | | CPC | Cost |
|---|---|---|---|---|
| 876494 | May 2012–Looklistings:WeBoost | | 0.01000 | 8,770.54 |

| | |
|---|---|
| Subtotal | $8,770.54 |
| Agency Discount | $0.00 |
| Other | 0.00 |
| **Total Due** | **$8,770.54** |

**REMIT ADDRESS:**
LookSmart, Ltd.
55 2nd Street, 7th Floor
San Francisco, CA
94105

**BILLING AND PAYMENTS:**
To pay by credit card, please call: (415) 348-7573
(Please do not send credit card information by email)

For billing questions, please email: billing@looksmart.net

INV0052710
1288411

**WIRE INSTRUCTIONS:**
City National Bank, San Francisco, CA
Account No: 432-626008
ABA or Routing No.: 122-016-066

# Exhibit C

**Guardian Services** offers technical solutions for both asset management companies and real estate professionals. Specifically tailored for field asset management companies, this state-of-the-art web based system provides clients with a user friendly interface that is much more cost effective and efficient than other property management systems on the market. With decades of experience in the field service and asset management industry, Guardian Services is a time tested and a proven solution for managing large asset portfolios.

**Services Available:**



**Online Asset Management**

Property Management and Field Service Platform



**Report Tracker Software**

Stream line field operations with real time data flow



**Technical Support Services**

Training support for custom services and products

# GUARDIAN SERVICES

### A leader in online asset management.

**Guardian Services** has extensive experience implementing software solutions within the property field service industry. We have strong technical backgrounds in the use of PHP, web site development, SQL database languages, network security, and UNIX / Linux operating systems.

**Our experience**, platforms, and software solutions are a result of servicing contract holders for the U.S. Department of Housing and Urban Development. Additionally, we have designed and implemented solutions that service a broad spectrum of lending intuitions. Recent developments in the real estate sector have challenged our team to produce customized solutions within small time constraints. As a result, Guardian Services has developed tools designed for rapid creation and deployment of custom reports, transfer methods, and secure communications over the internet.



© 2010 Guardian Services, LLC

Services | Company | **Contact**

The brief information found on this web site is just the tip of the iceburg when it comes to the abilities and features Guardian has to offer. The true benefits of utilizing the Guardian system will be clearly evident only after months of increased profits while using this system. After researching other solutions, consider scheduling a demonstration of our platform.

We welcome the opportunity to demonstrate the benefits of using the Guardian platform, how it works, and the numerous features designed to increase performance while reducing unnecessary expense.

Please email us for prompt assistance by one of our professional customer service representatives.



**Guardian Services, LLC**
698 S. Linden Drive Suite 112, Eden, NC 27288
(336) 627-9998

**Email: contact@guardianams.com**

© 2010 Guardian Services, LLC

# Exhibit D

# Fast Search Engine

Search for : [_____] [Search]

## Arts
- Music
- Movies
- Television
- Radio
- Concerts

## Home
- Family
- Pets
- Garden
- Homeowners
- Consumers

## Business
- Stock
- Market
- Finance
- Jobs
- Industrie

## Science
- Psychology
- Biology
- Electronic
- Mathematics
- Atomic Energy

## Computers
- Software
- Hardware
- Networking
- Computer Games
- Internet

## Games
- Online Games
- Casino Online
- Online Gambling
- Video Games
- Role-playing

## News
- World news
- Horoscope
- Weather
- Newspappers
- Events

## Sports
- Football
- Hockey
- Basketball
- Winter Games
- Soccer

## Health
- Medicine
- Fitness
- Relaxation
- Pharmacies
- Stop Smoking