**RIMAC MARTIN**, P.C.
WILLIAM REILLY SBN 177550
GRANT INGRAM SBN 242785
1051 Divisadero Street
San Francisco, CA 94115
Telephone: (415) 561-8440
Facsimile: (415) 561-8430

Attorneys for Defendant
LOOKSMART LTD.

## UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

## SAN FRANCISCO DIVISION

| | |
|---|---|
| WEBOOST MEDIA S.R.L., a Societa a responsabilita limitata, <br><br> Plaintiffs, <br><br> v. <br><br> LOOKSMART LTD., a Delaware corporation, and DOES 1 through 100, <br><br> Defendants. | ) Case No.: 3:13-cv-05304 SC <br> ) <br> ) **DEFENDANTS' MOTION TO** <br> ) **DISMISS AND FOR PARTIAL** <br> ) **SUMMARY JUDGMENT** <br> ) <br> ) Date: June 6, 2014 <br> ) Time: 10:00 a.m. <br> ) Loc: Courtroom 1, 17th Floor <br> ) <br> ) <br> ) <br> ) |

# TABLE OF CONTENTS

I. INTRODUCTION ............................................................................................. 4

II. FACTS ......................................................................................................... 5

III. LEGAL STANDARDS ................................................................................ 10

   A. Motion to Dismiss ................................................................................ 10

   B. Summary Judgment ............................................................................. 11

IV. ARGUMENT .............................................................................................. 12

   A. The Economic Loss Rule Bars Plaintiff's Claims For Tort Relief ............... 12

   B. The T&C is Not Ambiguous and its Indemnification Provision Does Not
      Save Plaintiff's Claims ........................................................................ 15

   C. The Court Should Enter Partial Summary Judgment Limiting LookSmart's
      Liability ............................................................................................... 15

V. CONCLUSION ............................................................................................ 15

DEFENDANT'S MOTION TO DISMISS AND FOR PARTIAL SUMMARY JUDGMENT
Case No. 3:13-cv-05304 SC

**Cases**

*Ashcroft v. Iqbal*

    129 S.Ct. 1937, 1949-50 (2009) ............................................................................... 11

*Bell Atlantic Corp. v. Twombly,*

    550 U.S. 554, 570 (2007) ......................................................................................... 11

*Benton v. Merrill Lynch & Co.*

    524 F.3d 866, 870 ..................................................................................................... 11

*Celotex Corp. v. Catrett*

    477 U.S. 317, 323 (1986) ................................................................................... 12, 13

*Lujan v. Nat'l Wildlife Fed'n*

    497 U.S. 871, 888 (1990) ......................................................................................... 12

*Marder v. Lopez*

    450 F.3d 445, 448 (9th Cir. 2006) ........................................................................... 12

*Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*

    475 U.S. 574, 587 (1986) ......................................................................................... 13

*Reserver Ins. Co. v. Pisciotta*

    30 Cal. 3d 800, 814 (Cal. 1982) .............................................................................. 14

*Robinson Helicopter*

    34 Cal. 4th at 990 ..................................................................................................... 13

*Stac Electronics*

    89 F.3d at 1405 n. 4 .................................................................................................. 12

*T.W. Elec. Serv., Inc. v. Pacific Elec. Contractors Ass'n*

    809 F.2d 626, 631 n. 3 (9th Cir.1987) ..................................................................... 13

*Twombly*

    550 U.S. at 555) ....................................................................................................... 11

DEFENDANT'S MOTION TO DISMISS AND FOR PARTIAL SUMMARY JUDGMENT
Case No. 3:13-cv-05304 SC

*United Guar. Mortg. Indem. Co. v. Countrywide Fin. Corp.*

    660 F. Supp. 2d 1163, 1184 (C.D. Cal. 2009)...................................................13, 14

*United States v. Ritchie*

    342 F.3d 903, 908 (9th Cir.2003)....................................................................12

*Van Buskirk v. Cable News Network, Inc.*

    284 F.3d 977, 980 (9th Cir.2002)....................................................................12

**Statutes**

Cal. Bus. & Prof. Code

    § 17200 ......................................................................................5, 6, 11, 17

Fed.R.Civ.P.

    56(c) ..........................................................................................................12

**Rules**

Rule 12(b)(6) ...............................................................................................11, 12

DEFENDANT'S MOTION TO DISMISS AND FOR PARTIAL SUMMARY JUDGMENT
Case No. 3:13-cv-05304 SC

# MEMORANDUM OF POINTS AND AUTHORITIES

## I.    INTRODUCTION

It its original complaint, Plaintiff WEBOOST MEDIA S.R.L. ("WeBoost") stated causes of action against defendant LOOKSMART LTD. ("LookSmart") for Breach of Contract, Breach of the Covenant of Good Faith and Fair Dealing, Fraudulent Concealment, Negligent Interference With Prospective Economic Advantage, Intentional Interference With Prospective Economic Advantage, Intentional Interference With Contractual Relations and Violation of Cal. Bus. & Prof. Code § 17200 ("UCL").

The terms and conditions of the contract ("T&C") that WeBoost alleged these causes of action arose from limits the parties' recoverable damages as follows "UNDER NO CIRCUMSTANCES WILL EITHER PARTY BE LIABLE TO THE OTHER PARTY, WHETHER IN CONTRACT, TORT OR OTHERWISE, FOR INDIRECT, INCIDENTAL, CONSEQUENTIAL, SPECIAL OR EXEMPLARY DAMAGES. *See* Complaint Ex. A, Pg. 2 and First Amended Complaint ("FAC") Ex. A, Pg. 2. Furthermore, the contract limits the parties' liability to "THE TOTAL AMOUNT PAID OR PAYABLE . . . TO LOOKSMART UNDER THIS AGREEMENT."

LookSmart filed a motion to dismiss the original complaint and in the alternative for partial summary judgment. This Court granted in part LookSmart's motion and dismissed WeBoost's negligent and intentional interference, fraudulent concealment, and UCL claims, finding that they were barred by the economic loss rule. Further, this Court ruled that "regardless of whether Plaintiff is ultimately able to recover on a tort or contract claim, Section 8 would cap Plaintiff's damages to the amount it paid under the contract." February 28, 2014 Order 13:13. This Court granted WeBoost "leave to amend these claims if it can state facts indicating

1   that the claims would not be subject to the economic loss rule." *Id.* @ 12:3.

2        Ignoring this Court's Order and the economic loss rule, WeBoost filed a

3   First Amended Complaint ("FAC") stating the same causes of action and no new

4   facts indicating that the claims would not be subject to the economic loss rule.

5   Plaintiff's FAC does include some new paragraphs. *See* FAC 22-31, 50-51, 60 &

6   67. But, these purported new "click fraud" allegations are merely a repackaging of

7   the same old "click fraud" allegations and do not arise independently of the breach

8   of contract claims. The basis of every allegation is that LookSmart breached its

9   **contractual** representation to invoice Plaintiff only for legitimate clicks. Even if

10   these new allegations were true (which they are not), LookSmart's obligations

11   regarding pay-per-click traffic arose exclusively from the contract. These two

12   sophisticated parties reached a bargain allocating the risks of doing business,

13   expressly including provisions for "click fraud" in the contract and the provisions

14   that displace tort duties with regard to LookSmart's obligations under the contract.

15        Accordingly, by this motion LookSmart seeks to dismiss with prejudice

16   WeBoost's causes of action for Fraudulent Concealment, Negligent Interference

17   With Prospective Economic Advantage, Intentional Interference With Prospective

18   Economic Advantage, Intentional Interference With Contractual Relations and

19   Violation of Cal. Bus. & Prof. Code § 17200. Further, LookSmart seeks a partial

20   summary judgment Order limiting the parties' liability to the total amount

21   WeBoost paid LookSmart under the contract.

22   **II.    FACTS**

23        Defendant is a publicly traded online advertising company. FAC ¶ 7[1]. It acts

24   as an intermediary between online "publishers," which provide content from which

25

26   ―――――――――――

[1] Please note that this Facts Section virtually repeats the "Background" facts stated by the Court
27   in its February 28, 2014 Order because the FAC is virtually identical to the original complaint.
Where new facts are alleged in the FAC, it is noted in this Fact Section.

28
DEFENDANT'S MOTION TO DISMISS AND FOR PARTIAL SUMMARY JUDGMENT
Case No. 3:13-cv-05304 SC

they hope to generate ad revenue, and "advertisers," which promote products online via ads placed on publishers' websites. *Id.* Intermediaries like Defendant help advertisers place ads on publishers' websites, in exchange for a fee. *See Id.* In addition to serving as an intermediary, LookSmart maintains its own network of affiliate websites, which it uses to display advertisements from other companies in order to generate revenue. *Id.* ¶ 8. As part of its business relationship with WeBoost, LookSmart acted both as publisher and intermediary. *Id.*

The online advertising model relevant to this case is called "pay-per-click." *Id.* ¶ 7. In this model, advertisers place their ads on publishers' websites and are charged a fixed sum each time a user clicks the ad. *Id.* ¶ 9. Part of this "pay-per-click" fee is then paid to the publisher on whose website the ad appeared, and part goes to the intermediary that helped to place the ad. *Id.*

Plaintiff owns and operates an international network of websites. *Id.* ¶ 11. In the online advertising ecosystem, Plaintiff is primarily a publisher, and its primary source of income is the revenue generated through the placement of ads on its websites. *Id.* Plaintiff entered a contract with Defendant under which Defendant would act as both intermediary and publisher. *Id.* ¶ 17. Defendant, like Plaintiff, owns a network of websites, and as part of the contract it agreed to display ads promoting Plaintiff's website network on its own websites. *Id.* Plaintiff agreed to pay Defendant based on the total number of clicks on those ads, and Defendant agreed to invoice Plaintiff each month, listing the number of clicks and the total amount owed. *Id.* The price per click varied depending on the market, but it ranged between $0.01 and $0.05. *Id.*

Though it is not a party to this lawsuit, Google and its businesses are highly relevant to this case. Google is the biggest intermediary in the pay-per-click advertising market. *Id.* ¶ 10. In this capacity it operates a service called Google AdSense. *Id.* Publishers use Google to help them place appropriate ads on their

6

websites, and per the usual publisher-advertiser-intermediary relationship, Google
and the publishers share pay-per-click revenue. *Id.* Publishers usually receive
between 51 and 68 percent of this revenue, and Google takes the remainder. *Id.*
Plaintiff was a Google AdSense customer. *Id.* ¶ 12. Google was Plaintiff's most
important intermediary partner before Plaintiff contracted with Defendant. *Id.* As
part of that arrangement, Plaintiff received the standard 51 to 68 percent of pay-
per-click revenue, with Google taking the rest, though Google was also able to
deduct more money from Plaintiff's AdSense account if it determined that ad clicks
originating from Plaintiff's websites were illegitimate. *Id.* These illegitimate clicks
are called "click fraud" in the online ad industry. *Id.*

      Click fraud is a type of fraud by which a person or computer program
initiates a "click" on an ad, solely to generate the fees resulting from pay-per-click
advertising models -- not to view the ad's underlying content. *Id.* ¶ 13. Advertisers
get no benefit from this behavior, since there is no chance for them to convert a
click to a sale, but the publishers and intermediaries still get paid per click. *Id.*
Click fraud is a risk for online advertising publishers because, as Defendant noted
in a recent 10-K filing, publishers on whose sites a person or program initiates
click fraud must sometimes issue credits or refunds to advertisers or pay revenue
share to distribution network partners. *Id.* ¶ 14. This hurts the publishers'
profitability and branding. *Id.*

      As Defendant stated in that 10-K, it had previously been subject to advertiser
complaints and litigation regarding click fraud, and it anticipated continuing to
respond to such behavior. *Id.* Some small percentage of click fraud is considered
unavoidable and tolerated within the pay-per-click ad industry, though Plaintiff
states that prior to its agreement with Defendant, its monthly deductions for pay-
per-click traffic that Google considered illegitimate averaged less than .5 percent
of the total pay-per-click traffic generated on Plaintiff's websites. *Id.* ¶ 16.

7

Plaintiff entered the contract with Defendant around October 31, 2011. *Id.* ¶ 17. As part of this contract, Plaintiff signed Defendant's standard "Terms and Conditions" ("T&C"). FAC. Ex. A (also called the "Agreement"). Between December 2011 and June 2012, Plaintiff paid Defendant $105,273.92, pursuant to seven invoices. *Id.* ¶ 18. Throughout this time, Plaintiff believed it was paying Defendant for legitimate pay-per-click traffic, not for fraudulent clicks. *Id.* However, around May 2012, Plaintiff became aware that a "significant portion" of the clicks for which Defendant was billing were being identified by Google as click fraud. *Id.* ¶ 19. Between April and July 2012, Google deducted nearly $250,000 from Plaintiff's AdSense account due to suspicious click fraud activity, substantially all of which came from websites affiliated with Defendant. *Id.*[2]

Then, around July 3, 2012, Google informed Plaintiff that an additional $191,000 in gross revenue (the amount prior to Google taking its share) was being deducted from Plaintiff's AdSense account due to click fraud originating on Plaintiff's website www.pay-it-less.co.uk. *Id.* This deduction led to a loss of $130,000 for Plaintiff. *Id.* Plaintiff claims that "substantially all" of the fraudulent clicks from that site can be traced directly to traffic originating from websites owned or controlled by Defendant. *Id.* Between August and December 2012, Google deducted an additional $12,500 from Plaintiff's AdSense account as additional compensation for the unusually high volume of click-fraud traffic originating from Plaintiff's websites, substantially all of which was traceable to traffic originating from Defendant's websites. *Id.* ¶¶ 21, 33.

---

[2] What Plaintiff fails to note is that it was an arbitrager. Plaintiff turned around and sold the clicks that it bought from LookSmart for $105,273.92, *Id.* ¶ 18 to Google for a substantial profit. Per the allegations, Google deducted $380,000 from WeBoost's AdSense account due to suspicious click fraud activity, substantially all of which came from websites affiliated with Defendant. *Id.* ¶ 19.

DEFENDANT'S MOTION TO DISMISS AND FOR PARTIAL SUMMARY JUDGMENT
Case No. 3:13-cv-05304 SC

1    Eventually, Plaintiff's AdSense account was reduced to a negative balance,

2    and in December 2012, Plaintiff abandoned the account. *Id.* ¶ 36.  Plaintiff's

3    business relationship with Google deteriorated, leading it to use less profitable pay-

4    per-click intermediary alternatives, and only recently has Plaintiff begun to repair

5    its relationship with Google, though its previous levels of usage and profit have yet

6    to return. *Id.* ¶ 37.

7        Plaintiff contends that Defendant had an incentive to generate click fraud

8    traffic, because it bills Plaintiff based on the number of clicks **generated on its**

9    **websites**. *Id.* ¶ 21. Plaintiff also states that even if Defendant was not directly

10   responsible for generating the click-fraud traffic at issue, it had a duty to take steps

11   to detect click-fraud traffic on its own websites and then to reduce the number of

12   clicks for which it billed Plaintiff. *Id.* ¶ 32.

13       Plaintiff's only new factual allegations in the FAC are included Paragraphs

14   22-31.  In Paragraph 22, Plaintiff again alleges that LookSmart generated "click

15   fraud" traffic on its websites.  See *Id.* ¶¶ 7, 8, 17, 21, 22 & 32.  However, now

16   Plaintiff alleges that the "click fraud" traffic was generated by specific LookSmart

17   websites and that these were "bogus websites" designed only to generate "click

18   fraud" traffic. *Id.* ¶¶ 23-28.  Further, Plaintiff alleges that these bogus websites

19   were concealed from Plaintiff and existed prior to the execution of its October 31,

20   2011 contract with LookSmart. *Id.* ¶¶ 29-30.  Plaintiff includes the conclusory

21   allegation that LookSmart's conduct is independent of their contractual

22   relationship and gives rise to independent tort liability. *Id.* ¶ 31.

23       Based on these facts, Plaintiff again asserts the following causes of action

24   against Defendant: (1) breach of contract, (2) breach of the covenant of good faith

25   and fair dealing, (3) fraudulent concealment, (4-5) negligent and intentional

26   interference with prospective economic advantage, (6) intentional interference with

27

28
DEFENDANT'S MOTION TO DISMISS AND FOR PARTIAL SUMMARY JUDGMENT
Case No. 3:13-cv-05304 SC

contractual relations, and (7) violation of California's Unfair Competition Law, Cal. Bus. & Prof. Code § 17200 et seq.

## III. LEGAL STANDARDS

### A. Motion to Dismiss

A complaint must be dismissed under Federal Rule 12(b)(6) for failure to state a claim upon which relief can be granted if it fails to plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly,* 550 U.S. 554, 570 (2007). While the federal rules do not require a heightened pleading of specifics, "a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Id.* at 555. In other words, "[f]actual allegations must be enough to raise a right to relief above the speculative level . . . ." *Id.*

Courts will liberally construe the complaint in the light most favorable to the plaintiff and accept the factual allegations as true. *See Id.* at 555. However, courts "'are not bound to accept as true a legal conclusion couched as a factual allegation.'" *Ashcroft v. Iqbal,* 129 S.Ct. 1937, 1949-50 (2009) (quoting *Twombly,* 550 U.S. at 555). Further, "[w]here the allegations show on the face of the complaint there is some insuperable bar to relief, dismissal under Rule 12(b)(6) is appropriate." *Benton v. Merrill Lynch & Co.,* 524 F.3d 866, 870 (8th Cir.2008) (citation omitted). When considering a motion to dismiss, a court can "begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth." *Id.* Legal conclusions must be supported by factual allegations to survive a motion to dismiss. *Id.*

Additionally, because Rule 12(b)(6) focuses on the "sufficiency" of a claim rather than the claim's substantive merits, "a court may [typically] look only at the face of the complaint to decide a motion to dismiss." *Van Buskirk v. Cable News*

10

*Network, Inc.*, 284 F.3d 977, 980 (9th Cir.2002). However, when the complaint is accompanied by attached documents, or refers to documents which are central to the claim, such documents are deemed part of the complaint and are properly considered in evaluating the merits of a Rule 12(b)(6) motion. *Stac Electronics*, 89 F.3d at 1405 n. 4. "The court may treat such a document as 'part of the complaint, and thus may assume that its contents are true for purposes of a motion to dismiss under Rule 12(b)(6).'" *Marder v. Lopez*, 450 F.3d 445, 448 (9th Cir. 2006) (quoting *United States v. Ritchie*, 342 F.3d 903, 908 (9th Cir.2003).

**B. Summary Judgment**

Summary judgment is appropriate where "there is no genuine issue as to any material fact" and "the moving party is entitled to a judgment as a matter of law. Fed.R.Civ.P. 56(c). The moving party has the initial burden of identifying relevant portions of the record that demonstrate the absence of a fact or facts necessary for one or more essential elements of each cause of action upon which the moving party seeks judgment. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).

If the moving party sustains its burden, the nonmoving party must then identify specific facts, drawn from materials on file, that demonstrate that there is a dispute as to material facts on the elements that the moving party has contested. *See* Fed.R.Civ.P. 56(c). The nonmoving party must not simply rely on the pleadings and must do more than make conclusory allegations in an affidavit. *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 888 (1990). Summary judgment must be granted for the moving party if the nonmoving party "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex* at 322.

In light of the facts presented by the nonmoving party, along with any undisputed facts, the Court must decide whether the moving party is entitled to judgment as a matter of law. *See T.W. Elec. Serv., Inc. v. Pacific Elec. Contractors*

11

*Ass'n*, 809 F.2d 626, 631 n. 3 (9th Cir.1987). "[T]he inferences to be drawn from the underlying facts . . . must be viewed in the light most favorable to the party opposing the motion." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). Summary judgment for the moving party is proper when a rational trier of fact would not be able to find for the nonmoving party on the claim or claims at issue. *Id.*

## IV.   ARGUMENT

### A. The Economic Loss Rule Bars Plaintiff's Claims For Tort Relief

In relevant part, this Court ruled as follows:

> Plaintiff's intentional tort claims are barred by the economic loss rule. Under the rule, parties alleging fraud or deceit in connection with a contract must establish tortious conduct independent of a breach of the contract -- not just violation of a promise that undermines a party's expectations under the contract. *Robinson Helicopter*, 34 Cal. 4th at 990. Here, any duties Defendant owed to Plaintiff apart from the general duty to act reasonably arose at the moment of contract formation. See *Id.* at 991; see also *United Guar. Mortg. Indem. Co. v. Countrywide Fin. Corp.*, 660 F. Supp. 2d 1163, 1184 (C.D. Cal. 2009). Defendant assumed no other duties. Cf. *Robinson Helicopter*, 34 Cal. 4th at 991 (economic loss rule did not apply partly because the defendant separately issued affirmative representations to the plaintiff).
>
> Plaintiff has failed to allege any conduct that is independent from the promises the parties made during the course of their contractual relationship, since even the basis for Plaintiff's intentional interference claims is that Defendant interfered with Plaintiff's contracts and relationships by breaching its representation, from Section 5(a) of the T&C, to invoice Plaintiff only for legitimate clicks. See Opp'n at 7-8; Compl. ¶¶ 44-58. Likewise, the T&C accounts for the bases of Plaintiff's fraudulent concealment and UCL fraud claim, since

12

Defendant's obligation to monitor pay-per-click traffic for which it invoiced Plaintiff arose exclusively from the contract. See *United*, 660 F. Supp. 2d at 1184; *Food Safety Net Svcs. v. Eco Safe Sys. USA, Inc.*, 209 Cal. App. 4th 1118, 1132 (Cal. Ct. App. 2012). Plaintiff's negligent interference claim is somewhat distinct from the above analysis because it is based on negligence, not intent. However, California law holds that contracts exempting parties from liability for ordinary negligence are valid if the public interest is not involved and no statute prohibits such a contract. See *United*, 660 F. Supp. 2d at 1180.

These two sophisticated parties reached a bargain allocating the risks of doing business, and the provisions of their agreement displace tort duties with regard to Defendant's obligations under the contract. See *Reserver Ins. Co. v. Pisciotta*, 30 Cal. 3d 800, 814 (Cal. 1982) ("It is axiomatic that absent a violation of public policy, a statute, or a constitutional provision, the parties to a private agreement may allocate risks in any manner they may choose."). Plaintiff allocated risk for its negligence claim per the T&C, and its intentional tort claims are barred by the economic loss rule, per above. Plaintiff's negligent and intentional interference, fraudulent concealment, and UCL claims are all DISMISSED. Plaintiff has leave to amend these claims if it can state facts indicating that the claims would not be subject to the economic loss rule.

February 28, 2014 Order 10:15-12:5.[3]

Plaintiff has failed to state new facts indicating that the alleged tort claims would not be subject to the economic loss rule. Plaintiff's FAC does include some new paragraphs. *See* FAC 22-31, 50-51, 60 & 67. Plaintiff's only new factual allegations in the FAC are included Paragraphs 22-31. In Paragraph 22, Plaintiff

---

[3] For the sake of brevity, LookSmart incorporates the February 28, 2014 Order as stated in full herein.

DEFENDANT'S MOTION TO DISMISS AND FOR PARTIAL SUMMARY JUDGMENT
Case No. 3:13-cv-05304 SC

again alleges that LookSmart generated "click fraud" traffic on its websites. See *Id.* ¶¶ 7, 8, 17, 21, 22 & 32. However, now Plaintiff alleges that the "click fraud" traffic was generated by **specific** LookSmart websites and that these were "bogus websites" designed only to generate "click fraud" traffic. *Id.* ¶¶ 23-28. Further, Plaintiff alleges that these bogus websites were concealed from Plaintiff and existed prior to the execution of its October 31, 2011 contract with LookSmart. *Id.* ¶¶ 29-30. Plaintiff includes the conclusory allegation that LookSmart's conduct is independent of their contractual relationship and gives rise to independent tort liability. *Id.* ¶ 31. Plaintiff summarizes these purportedly new allegations by stating "LookSmart engaged in wrongful conduct by fabricating 'click fraud' in order to increase the payments that were purportedly owed by WeBoost." *Id.* ¶¶ 60, 67.

These purported new "click fraud" allegations are merely a repackaging of the same old "click fraud" allegations and are subject to the economic loss rule because they do not arise independently of the breach of contract claims. Plaintiff previously alleged that LookSmart operated its own websites and generated "click fraud" traffic on its websites. See Complaint ¶¶ 7, 8, 17, 21, & 22 and February 28, 2014 Order 2:21-23, 5:3, 5:7-13 ("additional $191,000 in gross revenue . . . was being deducted from Plaintiff's AdSense account due to click fraud originating on **Plaintiff's** website" "'substantially all' of the fraudulent clicks from that site can be traced directly to traffic originating from websites owned or controlled by Defendant" " all of which was traceable to traffic originating from Defendant's websites"). The basis of every allegation is that LookSmart breached its **contractual** representation to invoice Plaintiff only for legitimate clicks. Even if these new allegations were true (which they are not), LookSmart's obligations regarding pay-per-click traffic arose exclusively from the contract. These two sophisticated parties reached a bargain allocating the risks of doing business,

14

expressly including provisions for what Plaintiff alleges is "click fraud" in the contract[4] and the provisions that displace tort duties with regard to LookSmart's obligations under the contract. Plaintiff's tort claims are barred by the economic loss rule and the T&C.

### B. The T&C is Not Ambiguous and its Indemnification Provision Does Not Save Plaintiff's Claims

For the sake of brevity, LookSmart incorporates the February 28, 2014 Order from 12:18 through 14:18 as stated in full herein.

### C. The Court Should Enter Partial Summary Judgment Limiting LookSmart's Liability

This Court ruled that "regardless of whether Plaintiff is ultimately able to recover on a tort or contract claim, Section 8 would cap Plaintiff's damages to the amount it paid under the contract." February 28, 2014 Order 13:13. Based upon that ruling, the T&C and the fact that Plaintiff has pleaded that Plaintiff paid Defendant $105,273.92, pursuant to seven invoices FAC ¶ 18, LookSmart respectfully request that the Court issue a partial summary judgment order limiting WeBoost's recovery, if any, to an amount less than or equal to $105,273.92.

## V. CONCLUSION

Based upon the foregoing, LookSmart respectfully requests that the Court dismiss with prejudice WeBoost's causes of action for Fraudulent Concealment,

---

[4] The T&C establishes that the pay-per-click "charges will be determined solely based on LookSmart's click tracking technology." *See* FAC Ex. A, Pg. 3 Section C, "All Accounts". Furthermore, the T&C contemplates challenging the pay-per-click charges that are invoiced by LookSmart and has a reconciliation system in place to do so. *Id.* WeBoost did not utilize the reconciliation system. Instead, it filed this action and alleged that what "WeBoost was paying LookSmart [for] was not legitimate pay-per-click traffic at all but rather illegitimate 'click-fraud'." *See* FAC ¶ 49. This allegation forms the basis of WeBoost's breach of contract claim. *Id.* Furthermore, this same allegation of illegitimate pay-per-click charges, which WeBoost calls "click fraud", is the basis of every cause of action stated by WeBoost. *See* Complaint ¶¶ 40, 42, 46, 49, 60, 67, 74 and 78.

15

Negligent Interference With Prospective Economic Advantage, Intentional

Interference With Prospective Economic Advantage, Intentional Interference With

Contractual Relations and Violation of Cal. Bus. & Prof. Code § 17200, and issue

a partial summary judgment order limiting WeBoost's recovery, if any, to an

amount less than or equal to $105,273.92.

**RIMAC MARTIN, P.C.**

Dated: May 2, 2014

By:  */s/ William Reilly*
WILLIAM REILLY
Attorneys for Defendant
LOOKSMART LTD

DEFENDANT'S MOTION TO DISMISS AND FOR PARTIAL SUMMARY JUDGMENT
Case No. 3:13-cv-05304 SC

# CERTIFICATE OF SERVICE

I am employed in the County of San Francisco, State of California. I am over the age of 18 and not a party to the within action. My business address is 1051 Divisadero Street, San Francisco, California 94115.

On May 2, 2014, the following document is being filed electronically and will be available for viewing and downloading from the Court's CM/ECF system:

***DEFENDANTS' MOTION TO DISMISS AND FOR PARTIAL SUMMARY JUDGMENT***

The Notice of Electronic Case Filing Automatically generated by the system and sent to all parties entitled to service under the Federal Rules of Civil Procedure and the Local Rules of the United States District Court, Northern District of California, who have consented to electronic service shall constitute service of the filed document to all such parties.

Executed on May 2, 2014 at San Francisco, California.

I declare under penalty of perjury that I am employed in the office of a member of the bar of this Court at whose direction the service was made and that the foregoing is true and correct.

| | |
|---|---|
| Robin A. Hale | */s/ Robin A. Hale* |
| (Type or print name) | (Signature) |