**HOLMES, TAYLOR & JONES LLP**
Matthew D. Taylor (SBN 220032)
E-mail: matthew.taylor@htjlaw.com
Andrew B. Holmes (SBN 185401)
E-mail: abholmes@htjlaw.com
801 S. Figueroa Street, Suite 2170
Los Angeles, California 90017
Telephone: (213) 985-2200

Attorneys for Plaintiff WEBOOST MEDIA S.R.L.

# UNITED STATES DISTRICT COURT

# NORTHERN DISTRICT OF CALIFORNIA

# SAN FRANCISCO DIVISION

| | |
|---|---|
| WEBOOST MEDIA S.R.L., a Società a responsabilità limitata,<br><br>Plaintiff,<br><br>v.<br><br>LOOKSMART LTD., a Delaware corporation, and DOES 1 through 100. | Case No. 3:13-CV-05304 SC<br><br>[Hon. Samuel Conti]<br><br>**PLAINTIFF'S OPPOSITION TO MOTION TO DISMISS AND FOR PARTIAL SUMMARY JUDGMENT**<br><br>Hearing Date: June 6, 2014<br>Trial Time: 10:00 a.m.<br>Courtroom: 1 (17th Floor) |

## MEMORANDUM OF POINTS AND AUTHORITIES

## I. INTRODUCTION

Defendant's latest motion to dismiss argues that none of the newly added allegations in Plaintiff's First Amended Complaint ("FAC") take it beyond the reach of the economic loss rule, which states that a tort action cannot lie where the allegedly tortious conduct amounts to nothing more than a breach of contract in disguise. On that basis, Defendant argues that all of Plaintiff's claims, excluding its first cause of action for breach of contract and second cause of action for breach of the covenant of good faith and fair dealing, should be dismissed. Plaintiff disagrees.

Although the Court's earlier ruling held that the economic loss rule precluded Plaintiff's tort claims, as previously alleged, because "Plaintiff ha[d] failed to allege any conduct that is independent from the promises the parties made during the course of their contractual relationship," WeBoost's FAC corrects this perceived deficiency by alleging conduct which goes far beyond what was contemplated by the agreement between the parties.

Specifically, the FAC alleges that LookSmart fraudulently fabricated the phantom "pay-per-click" traffic for which it later billed WeBoost by creating a series of fraudulent websites (*i.e.* websites not intended to promote actual businesses or for other legitimate business purposes), which it then used to generate bogus "clicks" for which it subsequently billed Plaintiff. Plaintiff contends that these bogus websites, as well as the bogus traffic LookSmart routed through such sites, were fabricated by LookSmart for the purpose of defrauding Plaintiff. Such conduct falls well outside the scope of the Terms and Conditions agreement, which contemplated a legitimate business relationship in which LookSmart would merely place ads, on WeBoost's behalf, on its network of websites, and then bill WeBoost for clicks generated by legitimate on-line consumers.

The present situation is analogous to that in which a disreputable art dealer creates a forgery and then sells it to an unsuspecting buyer who believes it to be a valuable

original. Regardless of whether or not the dealer and buyer entered into a contract setting forth the terms of the sale, the knowing sale of a forged painting to an unsuspecting buyer amounts to fraud and not merely a breach of contract. Similarly, creating a forged "click" and then selling it to an unsuspecting buyer such as WeBoost, is also fraud.

## II. FACTUAL OVERVIEW

Plaintiff WeBoost Media, S.r.l. ("WeBoost) is an on-line advertising company based in Rome, Italy. (FAC ¶ 1.) On or about October 31, 2011, WeBoost entered into a commercial relationship with defendant LookSmart, Ltd. ("LookSmart"), also an online advertiser, by which LookSmart agreed to use its own family of websites to display clickable advertisements promoting various WeBoost websites. (FAC ¶ 17.)

WeBoost agreed to pay LookSmart a "pay-per-click" fee based upon the total number of clicks generated on LookSmart sites, with LookSmart sending WeBoost monthly invoices detailing the total number of clicks generated by these advertisements and the total amount owing as a result. (*Id*.) The price paid by WeBoost for each click varied based upon fluctuating market conditions but generally ranged between $.01 and $.05. (*Id*.) As part of this transaction, WeBoost executed a copy of LookSmart's standard "Terms and Conditions." (*Id*.) This agreement provided, in part, that "LookSmart [would] display the Advertisements . . .or other advertising content provided or approved by [WeBoost]" (FAC, Exh. A at § 2) "on various site(s) within the LookSmart Network" (FAC, Exh. A at § 3.)

Between approximately December 2011 and June 2012 WeBoost paid LookSmart a total of $105,273.92 pursuant to seven (7) separate invoices that were sent to it by LookSmart. (Complaint ¶ 18.) At all times, WeBoost believed that it was paying LookSmart for legitimate, non-fraudulent "pay-per-click" traffic that had originated on various websites owned and operated by WeBoost. (*Id*.) In fact, the vast majority of pay-per-click traffic that WeBoost purchased from LookSmart was ultimately determined

to be "click-fraud" traffic, which WeBoost alleges was fabricated by LookSmart, itself. (FAC ¶¶ 20-25.)

"Click-fraud" is a form of fraud by which a person, automated script or computer program initiates a "click" on an online advertisement by imitating a legitimate online consumer. (FAC ¶ 13.) Clicks generated by click-fraud do not truly reflect a potential customer who is actually interested in the product being advertised but rather are initiated for the sole purpose of generating the fees resulting from "pay-per-click" advertising. (*Id*.) The FAC alleges that LookSmart intentionally fabricated a series of bogus websites which, on their face, appeared designed to promote legitimate businesses but were, in fact, decoys designed to provide cover for LookSmart's fraudulent activities. (FAC ¶¶ 22-23.) The FAC further alleges that LookSmart used these websites to generate artificial "clicks" for which it later billed WeBoost. (FAC ¶ 24.)

Section 8 of LookSmart's standard "Terms and Conditions" provided, in relevant part, that:

> EXCEPT WITH RESPECT TO OBLIGATIONS UNDER SECTIONS 9 AND 12 BELOW, (I) UNDER NO CIRCUMSTANCES WILL EITHER PARTY BE LIABLE TO THE OTHER PARTY, WHETHER IN CONTRACT, TORT OR OTHERWISE, FOR INDIRECT, INCIDENTAL, CONSEQUENTIAL, SPECIAL OR EXEMPLARY DAMAGES (EVEN IF SUCH DAMAGES ARE FORESEEABLE, AND WHETHER OR NOTE THE INDEMNIFIED PARTY HAS BEEN ADVISED OF THE POSSIBILTY OF SUCH DAMAGES) ARISING FROM THIS AGREEMENT AND (II) NEITHER PARTY WILL BE LIABLE TO THE OTHER PARTY FOR MORE THAN THE TOTAL AMOUNT PAID OR PAYABLE (PLUS APPLICABLE FEES AND COSTS) TO LOOKSMART UNDER THIS AGREEMENT.

### III. ARGUMENT

#### A. Legal Standard On a Motion to Dismiss.

The Federal Rules of Civil Procedure govern the sufficiency of a pleading in federal actions, even those based on diversity jurisdiction. *FSLIC v. Texas Real Estate Counselors, Inc.* 955 F.2d 261, 269–270 (5th Cir. 1992).

Pleadings in federal courts "must be construed so as to do justice." Fed. Rule Civ.

Proc. 8(e). A complaint is sufficient if it gives the defendant "fair notice of what the ... claim is and the grounds upon which it rests." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). The Federal Rules are designed to minimize disputes over pleading technicalities. See *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (noting that "Rule 8 marks a notable and generous departure from the hyper-technical, code-pleading regime of a prior era."). In determining the sufficiency of a pleading, allegations of material fact are taken as true and construed in the light most favorable to the pleader. See *Erickson v. Pardus*, 551 U.S. 89, 94 (2007). "Each allegation must be simple, concise, and direct. No technical form is required." Fed. Rule Civ. Proc. 8(d)(1).

### B. The Economic Loss Rule Does Not Preclude WeBoost From Asserting Its Tort Claims, As Currently Pled.

Notwithstanding Defendant's argument to the contrary, Plaintiff's FAC does not merely repackage the same set of factual allegations and ignore the Court's February 28th Order. Instead, Plaintiff has significantly amended its prior pleading to specify the manner in which the "click fraud" at issue originated. As presently alleged, WeBoost's tort claims are not precluded by the economic loss rule since the FAC alleges intentional and deceptive conduct by WeBoost which goes well beyond the legitimate business activity contemplated by the Terms and Conditions agreement.

"[T]he distinction between tort and contract is well grounded in common law, and divergent objectives underlie the remedies created in the two areas. Whereas contract actions are created to enforce the intentions of the parties to the agreement, tort law is primarily designed to vindicate 'social policy.' " *Hunter v. Up–Right, Inc.*, 6 Cal.4th 1174, 1180 (1993). The economic loss rule requires a party "to recover in contract for purely economic loss due to disappointed expectations, **unless he can demonstrate harm above and beyond a broken contractual promise**." *Robinson Helicopter Co. v. Dana Corp.*, 34 Cal. 4th 979, 988 (Cal. 2004) (emphasis added). "Quite simply, the

economic loss rule prevents the law of contract and the law of tort from dissolving one into the other." *Id.*

Nonetheless, there are various situations where relationships partially governed by contract can also give rise to tort liability. For example, California courts have permitted tort damages in contract cases where a breach of duty directly causes physical injury (*Fuentes v. Perez*, 66 Cal.App.3d 163, 168 (1977)); for breach of the covenant of good faith and fair dealing in insurance contracts (*Crisci v. Security Ins. Co.*, 66 Cal.2d 425, 433–434 (1967)); for wrongful discharge in violation of fundamental public policy (*Tameny v. Atlantic Richfield Co.*, 27 Cal.3d 167, 175–176 (1980)); where the contract was fraudulently induced. (*Las Palmas Associates v. Las Palmas Center Associates*, 235 Cal.App.3d 1220, 1238–1239 (1991) and where one party commits a fraud during the performance of the contract. *Harris v. Atlantic Richfield*, 14 Cal.App.4th 70, 78 (1993).

In the present case, Plaintiff has alleged that LookSmart sold it illegitimate "click fraud" rather than actual "clicks" it had bargained for, thus breaching the Terms and Conditions agreement. If that were as far as Plaintiff's allegations went, it could not state a claim for fraud independent from the contract. However, Plaintiff's allegations go beyond that. Plaintiff further alleges that LookSmart, itself, manufactured the very "click-fraud" at issue by first creating a series of bogus websites to serve as cover for its activities and then by generating bogus clicks that it routed through such websites. (FAC ¶¶ 22-25.)

WeBoost further alleges that LookSmart actively concealed its fraudulent activities and that had WeBoost been aware of the true nature of LookSmart's activities, it never would have entered into the Terms and Conditions agreement in the first place. (FAC ¶ 30.) Thus, WeBoost has alleged both fraudulent concealment prior to entering into the contract, as well as ongoing fraudulent concealment during the course of the parties' business relationship.

Moreover, LookSmart's alleged conduct, which is by its very nature both

intentional and deceptive, goes far beyond the sort of activity contemplated by the written agreement between the parties. The Terms and Conditions agreement contemplates a business relationship in which "LookSmart [would] display the Advertisements . . .or other advertising content provided or approved by [WeBoost] . . ." "on various site(s) within the LookSmart Network" (FAC, Exh. A at §§ 2-3.) What it clearly does not contemplate is a situation in which LookSmart would fabricate phony websites along with phony "clicks" in an attempt to defraud Plaintiff. Thus, the allegedly tortious conduct by LookSmart goes far beyond what was contemplated and covered by the terms of the contract between the parties. As such, the economic loss rule should not apply.

> C. <u>Assuming That The Court Does Not Find Plaintiff's Tort Claims To Be Precluded By The Economic Loss Rule, Plaintiff's Intentional Tort Damages Not Be Limited By Section 8 Of The Terms And Conditions Agreement.</u>

In its February 28 ruling on Defendant's earlier motion to dismiss, the Court did not reach the issue of whether Plaintiff could seek damages in excess of the limitations set forth in section 8 of the Terms and Conditions agreement *from its intentional tort claims* since it held that Plaintiff was precluded from bringing such claims in the first place under the economic loss rule. Assuming the Court finds that the economic loss rule no longer bars Plaintiffs' intentional tort claims, as presently pled, Plaintiff should be allowed to pursue these damages arising from such claims above and beyond the limitations set forth in Section 8 of the Terms and Conditions agreement.

Plaintiff briefed this issue extensively in its earlier Opposition and will not repeat itself here, other than to state that California Civil Code § 1668 provides that "[a]ll contracts which have for their object, directly or indirectly, to exempt anyone from responsibility for his own *fraud*, or *willful injury* to the person or property of another, or violation of law, whether willful or negligent, are against the policy of the law." This

statute has been consistently interpreted to prevent parties from contractually shielding themselves from liability arising from fraud or other intentional torts.[1]  As a result, should Plaintiff's intentional tort claims be allowed to continue, such claims should not be subject to the limitations of Section 8.

### D. LookSmart's Motion For Partial Summary Judgment Should Be Denied.

In addition to seeking dismissal of five of Plaintiff's seven causes of action pursuant to Rule 12(b)(6), LookSmart also seeks an order of "partial summary judgment" limiting LookSmart's liability to an amount not exceeding $105,273.92, which is the amount WeBoost alleges it has paid LookSmart to date.  This motion is inappropriate for several reasons.

First, there would appear to be no statutory basis for a summary judgment order limiting damages.  Fed. Rule Civ. Proc. 56(a) permits summary judgment with respect to a particular "claim or defense- or . . .part of each claim or defense."  In this case, the judgment sought- one limiting damages to a particular amount, would neither dispose of a particular claim or defense nor would it dispose of any particular element of a claim or defense.

Secondly, LookSmart's motion for summary judgment would appear to add nothing of value to its motion to dismiss.  If the Court rules that the economic loss rule no longer precludes Plaintiff from asserting its tort claims, then, as discussed above, an order limiting Plaintiff's damages would be improper.  However, if the Court rules that Plaintiff's tort claims remain precluded, Plaintiff concedes that its recoverable damages arising under its first and second causes of action will be subject to the limitations set forth in Section 8.  Either way, a partial motion for summary judgment is neither

---

[1] Plaintiff concedes that should the Court allow its fourth cause of action for negligent interference with prospective economic advantage to survive, any damages arising from such claim will be subject to the limitations set forth in Section 8 of the Terms and Conditions agreement.

necessary nor helpful to resolving the key issues before the Court..

Finally, in its February 28, 2014 Order, the Court denied Defendant's earlier motion for partial summary judgment without prejudice, noting, *inter alia*, that "the Court cannot determine what facts Defendants relied on for this motion" and that "Defendant ha[d] not made clear what it intended to accomplish by moving in the alternative." (2/28/14 Order at pg 14: 21-27.) These questions remain unanswered.

## IV. CONCLUSION

In conclusion, WeBoost's First Amended Complaint adds significant detail as to the alleged basis for tort liability against defendant LookSmart, Ltd. WeBoost has alleged that LookSmart did far more than simply breach the standard Terms and Conditions agreement to which the parties agreed. The FAC contends that LookSmart, itself, is responsible both for fabricating the bogus websites through which the click fraud traffic was routed and creating the bogus "click fraud" traffic for which it subsequently billed WeBoost. Such allegations create an independent basis for tort liability since they allege harm entirely independent form the contract between the parties. As a result, WeBoost's tort claims should not be barred by the economic loss rule.

Should the Court agree that Plaintiff's tort claims are allowed to proceed, any attempt to limit damages arising from Plaintiff's intentional torts is improper under California Civil Code § 1668.

DATED: May 16, 2014 **HOLMES, TAYLOR & JONES LLP**

By: /s/ Matthew D. Taylor
Matthew D. Taylor
Attorneys for Plaintiff WEBOOST MEDIA S.R.L