United States District Court
For the Northern District of California

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

|  |  |
|---|---|
| WEBOOST MEDIA S.R.L.,<br><br>          Plaintiff,<br><br>     v.<br><br>LOOKSMART LTD. and DOES 1-100,<br><br>          Defendants. | ) Case No. C 13-5304 SC<br>)<br>) ORDER GRANTING IN PART AND<br>) DENYING IN PART MOTION TO<br>) DISMISS, AND DENYING MOTION FOR<br>) PARTIAL SUMMARY JUDGMENT<br>)<br>)<br>)<br>)<br>) |

## I.   INTRODUCTION

Now before the Court are Defendant LookSmart Ltd.'s ("Defendant") combined motions to dismiss Plaintiff WeBoost Media S.R.L.'s first amended complaint under Federal Rule of Civil Procedure 12(b)(6) and for partial summary judgment under Rule 56. ECF Nos. 17 ("FAC"), 24 ("Mot.").  The motions are fully briefed. ECF Nos. 25 ("Opp'n"), 26 ("Reply").  The Court finds them appropriate for decision without oral argument.  Civ. L.R. 7-1(b). As explained below, Defendant's motion to dismiss is GRANTED in part and DENIED in part, and its motion for partial summary judgment is DENIED.

///

///

**II.    BACKGROUND**

    **A.    The Parties and the Pay-Per-Click Ad Industry**

    Defendant acts as an intermediary between online "publishers," which provide content from which they hope to generate ad revenue, and "advertisers," which pay to place ads for goods or services on publishers' websites.  FAC ¶ 7.  Intermediaries like Defendant help advertisers place ads on publishers' websites, in exchange for a fee.  See id.

    The online advertising model relevant to this case is called "pay-per-click."  Id.  In this model, advertisers place their ads on publishers' websites and are charged a fixed sum each time a user clicks the ad.  Id. ¶ 9.  Part of this "pay-per-click" fee is then paid to the publisher on whose website the ad appeared, and part goes to the intermediary that helped to place the ad.  Id.

    Plaintiff owns and operates an international network of websites.  Id. ¶ 11.  In the online advertising ecosystem, Plaintiff is primarily a publisher, and its primary source of income is the revenue generated through the placement of ads on its websites.  Id.  Plaintiff entered a contract with Defendant under which Defendant would act as both intermediary and publisher.  Id. ¶ 17.  Defendant, like Plaintiff, owns a network of websites, and as part of the contract, it agreed to display ads promoting Plaintiff's website network on its own websites.  Id.  Plaintiff agreed to pay Defendant based on the total number of clicks on those ads, based on Defendant's monthly invoices listing the number of clicks and the total amount owed.  Id.  The price per click varied depending on the market, but it ranged between $0.01 and $0.05.  Id.

**United States District Court**
For the Northern District of California

Though it is not a party to this lawsuit, Google and its businesses are highly relevant to this case.  Google is the biggest intermediary in the pay-per-click advertising market.  Id. ¶ 10.  In this capacity it operates a service called Google AdSense.  Id.  Plaintiff was a Google AdSense customer.  Id. ¶ 12.  Google was Plaintiff's most important intermediary partner before Plaintiff contracted with Defendant.  Id.  As part of that contractual arrangement, Plaintiff acted as a publisher, using Google to locate and place appropriate online ads on Plaintiff's network of websites.  Id.  Under its contract with Google, Plaintiff received 51 to 68 percent of pay-per-click revenue generated from clicks on the AdSense ads that Google placed on Plaintiff's websites.  Id.  Google took the remainder, though it was also permitted by contract to deduct more money from Plaintiff's AdSense account if it determined that ad clicks originating from Plaintiff's websites were illegitimate.  Id.  These illegitimate clicks are called "click fraud" in the online ad industry.  Id.

"Click fraud" is when a person or computer program clicks on an online ad solely to generate the fees resulting from pay-per-click advertising models -- not to view the ad's underlying content.  Id.  Advertisers get no benefit from this behavior, since the fraudulent clicker does not engage with whatever the advertiser is offering (e.g., the perpetrator of click fraud does not buy the product advertised), but the publishers and intermediaries still get paid per click.  Id.  Click fraud is a risk for online advertising publishers because, as Defendant noted in a recent 10-K filing, publishers on whose sites click fraud is perpetrated must sometimes issue credits or refunds to advertisers or pay revenue

**United States District Court**
For the Northern District of California

1   share to distribution network partners.  Id. ¶ 14.  This hurts the

2   publishers' profitability and branding.  Id.

3        As Defendant stated in that 10-K, it had previously been

4   subject to advertiser complaints and litigation regarding click

5   fraud, and it anticipated continuing to respond to such behavior.

6   Id.  Some small percentage of click fraud is considered unavoidable

7   and is tolerated within the pay-per-click ad industry, though

8   Plaintiff states that prior to its agreement with Defendant, its

9   monthly deductions for pay-per-click traffic that Google considered

10  illegitimate averaged less than .5 percent of the total pay-per-

11  click traffic generated on Plaintiff's websites.  Id. ¶ 16.

12       Plaintiff entered the contract with Defendant around October

13  31, 2011.  Id. ¶ 17.  As part of this contract, Plaintiff signed

14  Defendant's standard "Terms and Conditions" ("T&C").  ECF No. 1 Ex.

15  A ("Compl.") Ex. A (also called the "Agreement").  Between December

16  2011 and June 2012, Plaintiff paid Defendant $105,273.92, pursuant

17  to seven invoices.  Id. ¶ 18.  Throughout this time, Plaintiff

18  believed it was paying Defendant for legitimate pay-per-click

19  traffic, not for fraudulent clicks.  Id.

20       However, around May 2012, Plaintiff became aware that a

21  "significant portion" of the clicks for which Defendant was billing

22  were being identified by Google as click fraud.  Id. ¶ 19.  Between

23  April and July 2012, Google deducted nearly $250,000 from

24  Plaintiff's AdSense account due to suspicious click fraud activity,

25  substantially all of which came to Plaintiff's websites from

26  websites affiliated with Defendant.  Id.  Then, around July 3,

27  2012, Google informed Plaintiff that an additional $191,000 in

28  gross revenue (the amount prior to Google taking its share) was

being deducted from Plaintiff's AdSense account due to click fraud originating on Plaintiff's website www.pay-it-less.co.uk.  Id. ¶ 20.  This deduction led to a loss of $130,000 for Plaintiff.  Id. Between August and December 2012, Google deducted an additional $12,500 from Plaintiff's AdSense account as additional compensation for the unusually high volume of click-fraud traffic originating from Plaintiff's websites, substantially all of which Plaintiff maintains was traceable to Defendant's websites or conduct.  Id. ¶ 23.

Eventually, Plaintiff's AdSense account was reduced to a negative balance, and in December 2012, Plaintiff abandoned the account.  Id. ¶ 26.  Plaintiff's business relationship with Google deteriorated, leading it to use less profitable pay-per-click intermediary alternatives, and only recently has Plaintiff begun to repair its relationship with Google, though its previous levels of usage and profit have yet to return.  Id. ¶ 27.

**B.   Procedural History and Plaintiff's New Allegations**

Based on the facts described above, Plaintiff asserted the following causes of action against Defendant: (1) breach of contract, (2) breach of the covenant of good faith and fair dealing, (3) fraudulent concealment, (4-5) negligent and intentional interference with prospective economic advantage, (6) intentional interference with contractual relations, and (7) violation of California's Unfair Competition Law, Cal. Bus. & Prof. Code § 17200 et seq.  Defendant conceded the first cause of action, but argued that Plaintiff is still subject to the T&C's limitation of liability for every claim.  Defendant moved to dismiss all of Plaintiff's claims except the conceded breach of contract claims,

United States District Court
For the Northern District of California

5

**United States District Court**
For the Northern District of California

1   arguing in part that California's economic loss doctrine (discussed

2   in more legal detail below) barred tort claims that were merely

3   breach of contract claims in disguise.

4       The Court agreed, since Plaintiff's tort claims as pled did

5   not rest on any allegations or duties independent of Plaintiff's

6   contract claim.  The Court held those claims barred by the economic

7   loss doctrine.[1]  The Court also agreed that, absent tort liability

8   that could trigger a legal exception to the limitation on liability

9   clause, Plaintiff's damages were limited by the T&C to direct

10  damages based on Plaintiff's contractual payments.  The Court gave

11  Plaintiff leave to amend its complaint to explain how its tort

12  claims could avoid the economic loss rule's bar, which could

13  potentially effect the T&C's limitation of liability clause.

14      Plaintiff's FAC now provides more detail to the original

15  complaint's allegation that "substantially all" of the traffic that

16  Google identified as click fraud was associated with Defendant's

17  websites.  The Court noted in the February 28 Order that the

18  circumstances of this allegation were unclear.  See ECF No. 16

19  ("Feb. 28 Order") at 4 n.1.  Plaintiff's FAC now alleges in some

20  detail that Defendant actually created a series of "bogus websites"

21  that were, in truth, "nothing more than decoys, designed to provide

22  cover for [Defendant's] fraudulent activities."  FAC ¶¶ 21-23.

23  According to Plaintiff, most of these websites actually contained

24  "duplicative content appearing to advertise bogus companies," like

25  purportedly fake asset management companies.  Id. ¶ 26.  Some of

26  the websites apparently contained nothing but non-functional

27
    _____

28  [1] The Court held that both Plaintiff's breach of contract and
    breach of the implied covenant claims survived, treating the latter
    as a contract claim.  Feb. 28 Order at 12.

1   "search engines," with no advertisements shown.   Id. ¶¶ 25-28.

2       Plaintiff alleges, further, that Defendant itself "initiated

3   automated software processes designed to make it appear as if

4   legitimate on-line consumers were visiting these bogus websites"

5   and then clicking ads, for which Defendant would charge Plaintiff.

6   Id. ¶ 24.   The point of Plaintiff's new allegations, compared to

7   the original complaint, is that Defendant did not just allow

8   Plaintiff to be billed for click fraud.   Rather, Defendant

9   engineered the click fraud itself, so that it could charge

10  Plaintiff more money and potentially disrupt Plaintiff's

11  arrangement with Google by allowing its automated processes to

12  proceed from Defendant's properties to Plaintiff's, where they

13  generated clicks on Plaintiff's Google ads.   Even so, Plaintiff

14  also asserts that to the extent that Defendant itself is not

15  responsible for generating all or part of the fraudulent traffic,

16  it should have taken steps to detect fraudulent traffic and notify

17  Plaintiff of it in a timely way.   Id. ¶ 32.

18      Based on these facts, Plaintiff asserts its seven causes of

19  action anew.   It contends that its tort claims are based on duties

20  that arose independently of those created by contract, thereby

21  avoiding the economic loss rule: (1) breach of contract, (2) breach

22  of the covenant of good faith and fair dealing, (3) fraudulent

23  concealment, (4-5) negligent and intentional interference with

24  prospective economic advantage, (6) intentional interference with

25  contractual relations, and (7) violation of California's Unfair

26  Competition Law ("UCL"), Cal. Bus. & Prof. Code § 17200 et seq.

27  ///

28  ///

III.   **LEGAL STANDARD**

     **A.**  **Motion to Dismiss**

     A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) "tests the legal sufficiency of a claim." Navarro v. Block, 250 F.3d 729, 732 (9th Cir. 2001).  "Dismissal can be based on the lack of a cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal theory." Balistreri v. Pacifica Police Dep't, 901 F.2d 696, 699 (9th Cir. 1988).  "When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." Ashcroft v. Iqbal, 556 U.S. 662, 679 (2009).  However, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions.  Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Id. (citing Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007)).

     Claims sounding in fraud are subject to the heightened pleading requirements of Federal Rule of Civil Procedure 9(b), which requires that a plaintiff alleging fraud "must state with particularity the circumstances constituting fraud." See Kearns v. Ford Motor Co., 567 F.3d 1120, 1124 (9th Cir. 2009).  "To satisfy Rule 9(b), a pleading must identify the who, what, when, where, and how of the misconduct charged, as well as what is false or misleading about [the purportedly fraudulent] statement, and why it is false." United States ex rel Cafasso v. Gen. Dynamics C4 Sys., Inc., 637 F.3d 1047, 1055 (9th Cir. 2011) (quotation marks and citations omitted).

**United States District Court**
For the Northern District of California

United States District Court
For the Northern District of California

  B.   **Summary Judgment**

Entry of summary judgment is proper "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).   Summary judgment should be granted if the evidence would require a directed verdict for the moving party. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 251 (1986).   The moving party bears the initial burdens of production and persuasion. Nissan Fire & Marine Ins. Co., Ltd. v. Fritz Companies, Inc., 210 F.3d 1099, 1102 (9th Cir. 2000).

IV.   **DISCUSSION**

  A.   **Contradictions in Plaintiff's FAC**

As a preliminary matter, Plaintiff asserts in an apparent contradiction that "the bogus websites never actually displayed advertising links to [Plaintiff's] sites," even though Plaintiff's claims are based on Defendant charging it for allegedly fraudulent clicks on Plaintiff's advertisements. Compare FAC ¶ 25 (stating that none of Defendant's fraudulent websites displayed Plaintiff's ads), with FAC ¶ 17 (affirming that the parties agreed to show Plaintiff's ads on Defendant's sites, and Plaintiff would pay Defendant for each click on Plaintiff's ads).

However, drawing all reasonable inferences in Plaintiff's favor, Murphy v. Schneider Nat'l, 362 F.3d 1133, 1138 (9th Cir. 2004), the Court finds that Plaintiff must mean that at least some of Defendant's allegedly fraudulent clicks were not directed through Plaintiff's ads on Defendant's sites, but were nevertheless directed through Defendant-owned properties and billed to Plaintiff

as clicks under the T&C.  The invoices Plaintiff provides, for

example, leave no doubt that Defendant actually invoiced Plaintiff

for clicks, and that Plaintiff allegedly paid.  The technical

question of how Defendant generated, counted, or directed those

clicks is less clear from the pleadings, but the Court is able to

infer from Plaintiff's allegations and incorporated evidence that

Plaintiff's allegations on these points are plausible.  Neither

party addresses these apparent inconsistencies at this stage, but

discovery could clarify matters.

**B.   <u>The Economic Loss Rule</u>**

Defendant's sole argument in favor of dismissal is that the

economic loss rule bars Plaintiff's tort claims because they are

not independent of Plaintiff's breach of contract claims.  Reply at

1.

The economic loss rule, in summary, "is that no tort cause of

action will lie where the breach of duty is nothing more than a

violation of a promise which undermines the expectations of the

parties to an agreement." <u>Oracle USA, Inc. v. XL Global Services,</u>

<u>Inc.</u>, C 09-00537 MHP, 2009 WL 2084154, at *4 (N.D. Cal. July 13,

2009).  This rule serves to prevent every breach of a contract from

giving rise to tort liability and the threat of punitive damages:

"Quite simply, the economic loss rule prevents the law of contract

and the law of tort from dissolving one into the other." <u>Robinson</u>

<u>Helicopter Co. v. Dana Corp.</u>, 34 Cal. 4th 979, 988 (Cal. 2004)

(internal quotation marks and brackets omitted).  California has

historically distinguished tort and contract law based on each body

of law's purpose and remedies.  <u>See</u> <u>Hunter v. Up-Right, Inc.</u>, 6

Cal. 4th 1174, 1180 (Cal. 1993).  "Whereas contract actions are

**United States District Court**
For the Northern District of California

1  created to enforce the intentions of the parties to the agreement,

2  tort law is primarily designed to vindicate 'social policy.'"

3  Foley v. Interactive Data Corp., 47 Cal. 3d 654, 683 (Cal. 1988)

4  (citing William Prosser, Law of Torts 613 (4th ed. 1971)).

5       Limiting recovery to contract damages makes it easier for

6  parties to "estimate in advance the financial risks of their

7  enterprise."  Freeman & Mills, Inc. v. Belcher Oil Co., 11 Cal. 4th

8  85, 106 (Cal. 1995) (quoting Applied Equip. Corp. v. Litton Saudi

9  Arabia Ltd., 7 Cal. 4th 503, 515 (Cal. 1994)).  As a result, the

10 rule is particularly applicable when a party alleges "commercial

11 activities that negligently or inadvertently [went] awry."

12 Robinson Helicopter, 34 Cal. 4th at 991 n.7.  However, the economic

13 loss rule can still bar fraud and other intentional tort liability

14 if those claims do not arise independently of the breach of

15 contract claims.  See id. at 990.

16      Defendant contends, as it did in its briefs on the first

17 complaint, that the T&C establishes that payments are due on a pay-

18 per-click basis, and that such charges would be determined based

19 only on Defendant's technology with disputes governed by

20 Defendant's reconciliation system.  Reply at 5.  As Defendant

21 describes the contract, these dispute-resolution provisions plus

22 the T&C's limitation of liability clause prove that the parties

23 specifically allocated the risk for click fraud, whatever its

24 source.  Therefore, Defendant maintains that Plaintiff's FAC's

25 intentional tort claims fail for the same reason they did in the

26 February 28 Order: they are based on the same allegations of breach

27 of contract via illegitimate pay-per-click charges, and Defendant

28 could not have assumed any duties related to click fraud that did

**United States District Court**
For the Northern District of California

1  not arise from the parties' contract.  Id. at 5.  Accordingly,
2  Defendant concludes that all of Plaintiff's tort claims, including
3  fraudulent concealment, are barred by the economic loss doctrine.
4  Id. at 5-6.

5      In its February 28 Order, the Court held that "any duties
6  Defendant owed to Plaintiff apart from the general duty to act
7  reasonably arose at the moment of contract formation."  Feb. 28
8  Order at 10 (citing Robinson Helicopter, 34 Cal. 4th at 991.  This
9  holding was based on the fact that Plaintiff's original complaint's
10 tort claims were based on Plaintiff's having been charged for
11 "illegitimate" third-party clicks to which Defendant was either
12 willfully blind or negligent in preventing.

13     Plaintiff's FAC, as opposed to its original complaint,
14 explains Plaintiff's view of the difference between (1) contract
15 and tort claims based on illegitimate clicks charged under the T&C
16 due to Defendant's insufficient prevention of, or willful blindness
17 to, fraudulent clicks, which the T&C anticipated and for which it
18 allocated risk; and (2) tort claims based on the Defendant's
19 alleged manipulation of its own advertising technology system to
20 charge Plaintiff for fraudulent clicks and to direct fraudulent
21 traffic through Plaintiff's Google ads, coupled with Defendant's
22 alleged fraudulent concealment of its misdoings.  This requires the
23 Court to examine Plaintiff's allegations more closely than either
24 party's brief seems to anticipate.

25          i.   **Fraudulent Concealment**

26     Plaintiff alleges that Defendant alone knew the truth about
27 its "bogus" websites and click-fraud bots.  FAC ¶¶ 22-30.
28 Plaintiff further states that it would not have entered the T&C had

**United States District Court**
For the Northern District of California

1  it known the truth about Defendant's operation.  Id. ¶¶ 30, 50-51.

2  Plaintiff's fraudulent concealment theory is essentially that

3  Defendant induced Plaintiff to enter the contract, see id. ¶ 22-30,

4  but then hid the fact that it was charging Plaintiff for worthless

5  clicks that would never convert to legitimate ad clicks on

6  Plaintiff's Google ads.[2]

7       To establish a claim for fraudulent concealment, a plaintiff

8  must allege that: (1) the defendant concealed or suppressed a

9  material fact, (2) the defendant was under a duty to disclose the

10 fact to the plaintiff, (3) the defendant intentionally concealed or

11 suppressed the fact with the intent to defraud the plaintiff, (4)

12 the plaintiff was unaware of the fact and would not have acted as

13 she did if she had known of the concealed or suppressed fact, and

14 (5) as a result of the concealment or suppression of the fact, the

15 plaintiff sustained damage.  Hahn v. Mirda, 147 Cal. App. 4th 740,

16 748 (Cal. Ct. App. 2007).  "In all averments of fraud or mistake,

17 the circumstances constituting fraud or mistake shall be stated

18 with particularity."  Fed. R. Civ. P. 9(b).  A complaint meets this

19 standard if it alleges "the time, place, and content of the alleged

20 fraudulent misrepresentation or omission; the identity of the

21 person engaged in the fraud; and 'the circumstances indicating

22

23 [2] Defendant asserts that Plaintiff was engaged in "click arbitrage"
   with its Google AdSense program.  See MTD at 8 n.2.  That is,
24 Plaintiff was purportedly paying Defendant to send traffic to
   Plaintiff's sites, after which at least some of that traffic would
25 click through to ads Plaintiff published through Google AdSense.
   See id.  Supposing that the AdSense revenue Plaintiff obtained was
26 greater than what it paid to Defendant for traffic, Plaintiff could
   be said to have "arbitraged" clicks.  If that were the case, the
27 alleged click-fraud traffic for which it paid would not be so
   worthless (at least until Google detected the click fraud and
28 docked Plaintiff's account).  This is a factual inquiry that the
   Court cannot evaluate in this Order.

1   falseness' of 'the manner in which [the] representations [or

2   omissions] were false and misleading.'"   Genna v. Digital Link

3   Corp., 25 F. Supp. 2d 1032, 1038 (N.D. Cal. 1997) (brackets in

4   original) (quoting In re GlenFed Sec. Litig., 42 F.3d 1541, 1547-58

5   n.7 (9th Cir. 1994)).

6        The Court finds that Plaintiff's fraudulent concealment claims

7   are barred by the economic loss rule.   Plaintiff's fraud claim, as

8   pled, is based on Defendant's charging Plaintiff for fraudulent

9   clicks (either produced or merely permitted by Defendant) and

10  Defendant's operation of sham websites.   FAC ¶¶ 49-54.   This is

11  exactly what Plaintiff pled as to its breach of contract claims,

12  but with the addition of fraudulent intent and concealment:

13  "[Defendant] has breached the Agreement by generating and billing

14  [Plaintiff] for illegitimate 'click-fraud' traffic in addition to

15  clicks that may have been initiated by legitimate prospective

16  customers."   Id. ¶ 42 (stating Plaintiff's breach of contract

17  claim).   "In the absence of an independent tort, punitive damages

18  may not be awarded for breach of contract 'even where the

19  defendant's conduct in breaching the contract was wilful,

20  fraudulent, or malicious.'"   Applied Equip. Corp., 7 Cal. 4th at

21  516 (quoting Myers Bdlg. Indus., Ltd. v. Interface Tech., Inc., 13

22  Cal. App. 4th 949, 959 (Cal. Ct. App. 1993)).

23       Further, to the extent that Plaintiff asserts that its

24  fraudulent concealment claim should be interpreted as a fraudulent

25  inducement claim, see Opp'n at 5, the Court finds that Plaintiff's

26  FAC fails to meet Rule 9(b)'s heightened pleading requirements.

27  The FAC fails to explain with requisite specificity how Plaintiff

28

1   relied on any of Defendant's misrepresentations or omissions at the

2   time the parties entered the T&C.

3       Plaintiff's fraudulent concealment claim is accordingly

4   DISMISSED with leave to amend.  If Plaintiff re-pleads this cause

5   of action, it must explain how it is distinct from its breach of

6   contract claims.  To the extent that Plaintiff must alter its

7   breach of contract claims to explain how the tort and contract

8   claims are independent, it may do so.  Plaintiff also has leave to

9   amend its fraudulent concealment claim to plead it as a claim for

10  fraudulent inducement.  Regardless of the choice Plaintiff makes,

11  it must meet the heightened requirements of Rule 9(b).

12          **ii.**   **Negligent and Intentional Interference with**

13              **Contractual and Potential Economic Relations**

14      The parties do not brief any issue concerning Plaintiff's

15  negligent and intentional interference claims -- intentional

16  interference with contractual relations, and negligent and

17  intentional interference with prospective economic advantage --

18  except to the extent that Defendant claims they are all precluded

19  under the economic loss rule.  The gist of these claims, as

20  amended, is that Defendant knew of Plaintiff's relationship with

21  Google, but directed fraudulent traffic to Plaintiff's websites

22  knowing that it would result in deductions from Plaintiff's AdSense

23  account and possible damage to Plaintiff's professional

24  relationship with Google.  As explained below, the Court finds that

25  these claims survive the economic loss rule because they do not

26  seek only to recover Plaintiff's contractual expectations from

27  Defendant.  They arise entirely independently of the T&C.

28

**United States District Court**
For the Northern District of California

To plead a claim for intentional interference with contractual relations, a plaintiff must allege the following elements: (1) the existence of a valid contract between the plaintiff and a third party; (2) the defendant's knowledge of that contract; (3) the defendant's intentional acts designed to induce a breach or disruption of the contractual relationship; (4) actual breach or disruption of the contractual relationship; and (5) resulting damage. Reeves v. Hanlon, 33 Cal. 4th 1140, 1148 (Cal. 2004).

The elements of the intentional interference with prospective economic advantage tort are similar: (1) an economic relationship between the plaintiff and some third party, with the probability of future economic benefit to the plaintiff; (2) the defendant's knowledge of the relationship; (3) intentional acts on the part of the defendant designed to disrupt the relationship; (4) actual disruption of the relationship; and (5) economic harm to the plaintiff proximately caused by the acts of the defendant. Korea Supply Co. v. Lockheed Martin Co., 29 Cal. 4th 1134, 1153 (Cal. 2003). The only different element in a negligent interference with prospective economic advantage claim is that the plaintiff must allege that the defendant owed a special or general duty of care. J'Aire Corp. v. Gregory, 24 Cal. 3d 799, 803-04 (Cal. 1979).

As an additional pleading requirement, California Supreme Court has explained that the torts of negligent and intentional interference with prospective economic advantage additionally require plaintiffs to prove that "[d]efendant not only knowingly interfered with the plaintiff's expectancy, but engaged in conduct that was wrongful by some legal measure other than the fact of

interference itself."[3]  <u>Della Penna v. Toyota Motor Sales, USA,</u>

<u>Inc.</u>, 11 Cal. 4th 376, 393 (Cal. 1995).  In explaining the meaning

of "wrongful acts," that decision upheld the plaintiff's jury

instruction which defined "wrongful acts" as conduct "outside the

realm of legitimate business transactions" and that "[w]rongfulness

may lie in the method used or by virtue of an improper motive."

<u>Id.</u> at 380 n.1 (Mosk, J., concurring).  The point of this

requirement is to distinguish actionable "interference" with

prospective economic relationships from non-actionable competitive

conduct.  <u>See</u> <u>id.</u> at 392 (Mosk, J., concurring).

     The Court finds that Plaintiff's claims for intentional

interference with contractual and prospective economic relations

are sufficiently independent of Plaintiff's breach of contract

claim.  They avoid being barred by either the economic loss rule or

<u>Della Penna</u>'s requirement that a plaintiff plead "wrongful acts."

     Plaintiff has pled that it had existing contractual relations

and prospective economic relations with Google, and that Defendant

knew it but intentionally directed click-fraud traffic through

Plaintiff's websites toward Plaintiff's Google AdSense ads.

Concerning the disrupted relationships, Plaintiff alleges that it

lost money due to Google's click-fraud deductions, such that its

performance under its contract with Google became more expensive,

and also that its future relationship with Google was jeopardized

and has still not recovered.  Plaintiff also alleges specific

monetary losses related to Defendant's conduct.  As a pleading

---

[3] This holding also applies to the tort of intentional interference
with prospective contractual relations, but Plaintiff only pled
intentional interference with existing contractual relations.

United States District Court
For the Northern District of California

**United States District Court**
For the Northern District of California

matter, Plaintiff's FAC states claims for intentional interference with contractual and prospective economic relations.

As to Defendant's argument that Plaintiff's intentional interference claims are barred by the economic loss rule, the Court finds that Plaintiff's intentional interference claims are based on the click-fraud traffic that Defendant purportedly directed onto Plaintiff's own sites and through the Google AdSense ads that Plaintiff published.  These factual differences can serve as the bases for torts even absent a contractual relationship between Plaintiff and Defendant, such that they are independent of Plaintiff's breach of contract claim, thereby avoiding the economic loss rule's bar.  See Erlich v. Menezes, 21 Cal. 4th 543, 551 (Cal. 1999) (explaining that in cases finding tort damages appropriate when a breach of contract concerning the same activity is also alleged, "the duty that gives rise to tort liability is either completely independent of the contract or arises from conduct which is both intentional and intended to cause harm").  Plaintiff's breach of contract claim is legally and analytically distinct from Plaintiff's intentional interference claims, which are independent of the parties' obligations under the T&C and were intended to cause harm.  Id.

The Court also finds that, as to Plaintiff's intentional interference with prospective economic advantage claim, Plaintiff has sufficiently pled that the wrongful conduct on which it bases its intentional interference claim is distinct from the interference itself.  See Della Penna, 11 Cal. 4th at 392-93. Plaintiff alleged that Defendant's generation and direction of click-fraud traffic through Plaintiff's websites to the AdSense-

**United States District Court**
For the Northern District of California

hosted ads was both malicious and commercially useless, since those actions only served to enrich Defendant while depriving both Plaintiff and Google of useful commerce.  See FAC ¶¶ 22-30. Further, the underlying "interference" is essentially based on Plaintiff's fraud claim, which is barred by the economic loss rule but is otherwise adequate to indicate that Defendant's behavior is based on unlawful conduct.  See Korea Supply, 29 Cal. 4th at 1158 (explaining that an "independently wrongful" act must be proscribed by, among other things, some common law or other determinable legal standard).  Plaintiff's allegations satisfy the "improper motive" and "outside the realm of legitimate business transactions" tests for wrongful acts as explained in Della Penna.

The Court therefore finds that Plaintiff's intentional interference claims survive Defendant's motion to dismiss based on the economic loss rule, to the extent that they are based on Defendant's direction of click-fraud traffic past Plaintiff's ads on Defendant's own site toward the Google AdSense ads that Plaintiff hosted.  Defendant's motion to dismiss those claims is DENIED.  The Court notes that, given the economic loss rule and the structure of the pay-per-click ad market in general, this is a narrow ruling, supported by Plaintiff's specific allegations in this case.  Whether Plaintiff can prove its claims will be the subject of a different motion.

Plaintiff's negligent interference with prospective economic advantage is somewhat different from the above torts, as it requires Plaintiff to plead that Defendant owed it a duty of care. It did so, albeit in a conclusory fashion, FAC ¶ 59, but Defendant did not challenge it on pleading grounds.  Defendant only raised a

1  general motion to dismiss as to the economic loss rule, and
2  Plaintiff did not further explain its allegations in its opposition
3  brief.  Even so, given California's general reticence to grant
4  purely economic relief for negligence claims in breach of contract
5  cases, see Erlich, 21 Cal. 4th at 553-54, and Plaintiff's failure
6  to explain how this general duty is different from Defendant's
7  contractual duties, the Court DISMISSES Plaintiff's negligent
8  interference with prospective economic advantage claim.  See id.
9  (instructing courts faced with issues like this one to focus on
10 intentional conduct rather than permit every negligent breach to
11 give rise to tort damages).

12      Since Plaintiff has already had leave to amend its negligent
13 interference with prospective economic advantage claim, and it has
14 not indicated that further amendment would cure the defect, the
15 Court finds that amendment would be futile.  Dismissal is therefore
16 WITH PREJUDICE.

17      **iii.    UCL Claims**

18      The UCL prohibits unfair competition, including "any unlawful,
19 unfair or fraudulent business act."  Cal. Bus. & Prof. Code §
20 17200.  "Because [section 17200] is written in the disjunctive, it
21 establishes three varieties of unfair competition -- acts or
22 practices which are unlawful, or unfair, or fraudulent." Berryman
23 v. Merit Prop. Mgmt., Inc., 152 Cal. App. 4th 1544, 1554 (Cal. Ct.
24 App. 2007).

25      Defendant did not specifically move to dismiss Plaintiff's UCL
26 claim in this round of briefing, nor did Plaintiff specifically
27 defend its allegations, despite the UCL claim's apparently
28 conclusory pleading.  In its February 28 Order, the Court dismissed

**United States District Court**
For the Northern District of California

1   Plaintiff's UCL claims to the extent that they were predicated on

2   claims barred by the economic loss rule.  To the extent Plaintiff's

3   UCL claims are based on Plaintiff's intentional interference or

4   breach of contract claims, they survive at this stage.  To the

5   extent they are based on Plaintiff's claims precluded by the

6   economic loss rule, they are DISMISSED WITH LEAVE TO AMEND.  If

7   Plaintiff chooses to amend either its UCL claims or claims that it

8   contends are the predicates to its UCL claims, Plaintiff must

9   account both for the amendment guidelines provided above and the

10  fact that the UCL's three-part structure commends specific

11  allegations as to each prong.

12      **C.    Limitation of Liability**

13      With at least a few of the FAC's intentional tort claims no

14  longer precluded, the Court must revisit the effect of the T&C's

15  limitation of liability clause.  In the February 28 Order, the

16  Court held that for breach of contract or negligence claims,

17  Plaintiff's damages would be capped by the T&C's limitation of

18  liability clause, and that the parties had agreed to limit any

19  potential damages to direct contractual damages.  Now the situation

20  is different.  The relevant contractual language reads:

21

22      (I)    Under no circumstances will either party be
           liable to the other party, whether in contract,
23         tort or otherwise, for indirect, incidental,
           consequential, special or exemplary damages (even
24         if such damages are foreseeable and whether or
           not the indemnified party has been advised of the
25         possibility of such damages) arising from this
           agreement; and

26  ///

27  ///

28  ///

21

United States District Court
For the Northern District of California

1   (II)   Neither party will be liable to the other party
2          for more than the total amount paid or payable
           (plus applicable fees and costs) to [Defendant]
3          under this Agreement.

4   T&C § 8.

5        Plaintiff argues that the limitation of liability clause is

6   precluded as to Plaintiff's intentional tort claims under

7   California Civil Code section 1668.  Opp'n at 6.  Section 1668

8   reads: "All contracts which have for their object, directly or

9   indirectly, to exempt anyone from responsibility for his own fraud,

10  or willful injury to the person or property of another, or

11  violation of law, whether willful or negligent, are against the

12  policy of the law."  Since all but one of the disputed claims

13  (negligent interference) is an intentional tort, Plaintiff claims

14  that Defendant's position renders Section 8 invalidated to the

15  extent that Defendant seeks to use it to limit liability for future

16  intentional torts.  Id. at 6-7.

17       Defendant's reply suggests that regardless of which tort

18  claims survived, Plaintiff's damages would be limited to the amount

19  paid under the contract per the T&C's limitation of liability

20  clause.  Reply at 6.  That would have been true on the claims that

21  survived the February 28 Order -- both breach of contract claims --

22  and would also be true for negligence torts, but it is not

23  necessarily true for all intentional torts, as discussed below.

24  The Court's holding on this issue from the February 28 Order was

25  made specifically in the context of the economic loss rule's

26  barring Plaintiff's blended tort-contract claims.

27       The Court finds that section 1668 renders the T&C's limitation

28  of liability unenforceable to the extent that it would insulate

**United States District Court**
For the Northern District of California

1   Defendant from intentional tort liability.   "[Contractual] releases

2   of future liability for fraud and other intentional wrongs are

3   invariably invalidated."   <u>Farnham v. Super. Ct.</u>, 60 Cal. App. 4th

4   69, 71 (Cal. Ct. App. 1997); <u>see also</u> <u>McQuirk v. Donnelley</u>, 189

5   F.3d 793, 796 (9th Cir. 1999) (quoting the rule from <u>Farnham</u>).

6   Defendant's only response to Plaintiff's citation of this rule is

7   to refer to the February 28 Order, which, as noted above, addressed

8   these claims under a different posture.   Defendant does not

9   otherwise address section 1668.   The Court finds nothing in the

10  pleadings or briefs that would override the conclusion that section

11  1668 invalidates the T&C's limitation of liability as it concerns

12  Plaintiff's intentional interference claims.   However, the

13  limitation still applies to Plaintiff's breach of contract claims,

14  as Plaintiff concedes.   Opp'n at 7 & n.1.

15      Defendant's motion to dismiss based on the T&C's limitation of

16  liability clause is accordingly DENIED IN PART.   The T&C's

17  limitation of liability does not extend to Plaintiff's intentional

18  interference torts.   Since Defendant's alternative motion for

19  partial summary judgment is based on the same arguments, that

20  motion is DENIED.   Defendant failed to carry its burden to show

21  that there is no genuine issue of material fact concerning the

22  application of the limitation of liability clause to Plaintiff's

23  claims.

24  ///

25  ///

26  ///

27  ///

28  ///

23

**United States District Court**
For the Northern District of California

1  **V.     CONCLUSION**

2       As explained above, Defendant LookSmart Ltd.'s motion to

3  dismiss Plaintiff WeBoost Media S.R.L.'s first amended complaint is

4  GRANTED in part and DENIED in part.  Its motion for partial summary

5  judgment is DENIED.

6       Plaintiff has leave to amend its fraud claims (and, if

7  necessary, its contract claims) either to explain how its

8  fraudulent concealment theory avoids being barred by the economic

9  loss rule, to reframe its fraud theory in terms of fraudulent

10 inducement, or both.  Plaintiff also has leave to amend its UCL

11 claim to the extent it is dismissed as vague or based on dismissed

12 predicate claims.

13      If Plaintiff chooses to amend its pleadings, it must do so

14 within thirty days of this Order's signature date, or the deficient

15 claims may be dismissed with prejudice.

16

17      IT IS SO ORDERED.

18

19      Dated: June 12, 2014            _____

20                                      UNITED STATES DISTRICT JUDGE

21

22

23

24

25

26

27

28